**EXHIBIT "1"**

**The New York Times** Reprints

This copy is for your personal, noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears next to any article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this article now.



February 5, 2012

# By Revealing Man's Past, Lawyer Tests Court Secrecy

**By BENJAMIN WEISER**

In May 2010, a civil racketeering lawsuit was filed accusing a group of people associated with a New York investment firm of stealing millions of dollars from investors.

The allegation was almost commonplace; the response was anything but.

The lawsuit was hurled into secretive chaos, largely because it disclosed the hidden past of one of the businessmen being sued. The man, according to documents attached to the lawsuit, had not only pleaded guilty in an organized crime case in Brooklyn, but had also become a cooperating witness for prosecutors, helping them put away dangerous criminals — something neither he nor the government had ever meant to reveal publicly.

Judges reacted quickly. In Manhattan, where the complaint was filed, a federal judge ordered the documents placed under seal. And in Federal District Court in Brooklyn, where the businessman's criminal case was already secret, Judge I. Leo Glasser held hearings to investigate how the materials had been obtained, and imposed a strict order barring further dissemination of their contents.

"Something very bad and perhaps despicable was done by the use of those documents," Judge Glasser said at a court hearing in mid-2010. Divulging their contents, he added in a different hearing, could seriously endanger the cooperating witness and "significantly affect" matters of national security.

The dispute is considered so sensitive that courts have substituted the name John Doe for the businessman, and Richard Roe for the lawyer who filed the case, Frederick M. Oberlander.

The case has spurred a strenuous debate among the lawyers and judges involved. Some believed that Mr. Oberlander was being reckless and unethical, while others cast him as an aggressive advocate on behalf of fraud victims.

Mr. Oberlander said the information about the businessman, which he said he had received from a "classic whistleblower," was evidence that he had concealed his criminal record,

violating his fiduciary obligation to investors.

Records show that a federal appeals court panel also reviewed the matter and, after receiving sealed legal briefs and holding a closed oral argument, strongly affirmed the secrecy: "Judge Glasser, who had presided over Doe's criminal case and was therefore familiar with the extent of Doe's cooperation and his assistance in obtaining the convictions of myriad violent criminals, explicitly entered a finding that releasing proof of Doe's cooperation would cause him irreparable harm and would put his safety at risk."

Details of the dispute between John Doe and Richard Roe were pieced together through a review of public documents, including appellate orders and a transcript of the 2010 hearings before Judge Glasser. The judge said in the proceeding that the transcript was not sealed, but he agreed to a request by the businessman's lawyer that a pseudonym be used.

Because of safety concerns raised in the case, John Doe is not being identified in this article. His lawyers declined to comment, as did prosecutors. Mr. Oberlander agreed to be interviewed, although he would not discuss sealed aspects of the case.

Mr. Oberlander, 56, said he had been preparing the lawsuit on behalf of two clients who had financial interests in the firm where John Doe worked. Mr. Oberlander testified before Judge Glasser that the firm's principals, including John Doe, had stolen millions of dollars from Mr. Oberlander's clients and millions more from others, through embezzlement and fraud. John Doe has denied the allegations.

In early 2010, Mr. Oberlander testified, a former employee of the firm provided him materials, saying that he had obtained them lawfully while working there.

The materials included John Doe's cooperation agreement with prosecutors and a document known as a presentence report, which may include personal data, like names and addresses of a defendant's family members.

Mr. Oberlander said the former employee told him, "Use this information — make it public."

The former employee has written that he obtained the materials from a computer server the businessman had asked him to copy and not a court file, and that he was unaware of any order barring him "from disseminating the documents to anyone."

But the businessman has offered a sharply different version of events. In his own lawsuit, filed under the same Doe pseudonym, he charged that the former employee, whom he characterized as a disgruntled junior analyst who had been fired, stole "private and confidential documents" that contained "highly sensitive information," placing him "at great

personal risk."

Although the businessman did not describe the sensitive information, he stressed that its value was "measured not in dollars but in the amount of harm" that disclosure would cause.

Mr. Oberlander contended in interviews that the court secrecy had kept investors from learning about the businessman's criminal record, which he said should have been disclosed. The secrecy also kept any victims of the businessman's earlier criminal activity from obtaining restitution, Mr. Oberlander said.

Paul G. Cassell, a former federal judge who teaches law at the University of Utah and specializes in victims' rights, contributed to a legal brief in support of the lawyer's position.

He said the secrecy of the businessman's conviction was "a huge issue for victims," in part because it prevented them from even knowing they might have a right to restitution.

Professor Cassell said of Richard Roe: "He's challenging the power and ability of the courts to run a secret criminal docket. I think he's stumbled onto something here that raises profound issues about how crime victims and cooperators are going to be treated in our federal criminal justice system."

But the businessman charged in his suit that Mr. Oberlander had tried to extort a settlement by "threatening to go public with everything" if a deal was not reached.

The businessman contended that Mr. Oberlander had e-mailed a former counsel to the investment firm, attaching copies of the materials, and offering choices like "I file publicly today" or "I file under seal today." Mr. Oberlander denied before Judge Glasser that the e-mail was a demand for money in exchange for not filing publicly.

Judge Glasser ultimately concluded that Mr. Oberlander "knowingly and intentionally flouted" a court order by "unilaterally deciding" to disclose the information in the businessman's sealed case, according to the account given in the appellate orders.

The appeals panel, citing what it called Mr. Oberlander's "extraordinary provocations," also took the unusual step of having a second judge appointed to oversee compliance with secrecy orders in the case, and it has suggested that one of the sealed documents was of "dubious utility" to Mr. Oberlander except as a "tool to intimidate and harass Doe by subjecting him to danger."

A complicating factor in the case has been a somewhat haphazard approach to secrecy. Some years ago, for example, prosecutors issued a news release disclosing the businessman's guilty plea under his actual name. And his cooperation with the government has been cited in a news

report.

"This is a case unlike any I've ever been in," said David A. Schulz, a leading First Amendment lawyer who said his firm was retained for a time by Richard Roe after the appeals panel issued its broad secrecy order.

The order effectively "barred our client from disclosing information in his possession to anyone, even in a court pleading," Mr. Schulz said. He added, "Our client believed the order raised significant First Amendment concerns, and we agreed."

Two legal ethics professors suggested that the courts' reaction to Mr. Oberlander's approach was not surprising. Stephen Gillers of New York University said Mr. Oberlander had used "Rambo tactics," and could have cited the Doe conviction without mentioning his cooperation or attaching the sealed materials.

Steven Lubet of Northwestern University said he saw "a clash of values."

"The government obviously wants to keep its cooperators safe, and other people want to be able to assert their claims in court," he said. But, he added, the courts were "very concerned about the nature of the information, and in the age of the Internet, partial disclosure is risky in ways that it was not before."

Mr. Oberlander, who said he had consulted with his own ethics expert, asserted that he was ethically obligated to use the material on behalf of his clients once it came into his possession.

In the 2010 hearings, Mr. Oberlander's lawyer, Richard E. Lerner, argued before Judge Glasser that the secrecy order on his client was an unconstitutional prior restraint. "We will fight this to the end," he said.

But the businessman's lawyer, Kelly A. Moore, dismissed the idea that free speech was at issue. She told the judge that Mr. Oberlander should have known that the documents had been part of a sealed court file.

He had no "greater First Amendment right to put a man's life in danger by publishing stolen and sealed confidential documents than if he walked into a crowded theater and shouted fire," she said.

# By Revealing Man's Past, Lawyer Tests Court Secrecy

By BENJAMIN WEISER

In May 2010, a civil racketeering lawsuit was filed accusing a group of people associated with a New York investment firm of stealing millions of dollars from investors.

The allegation was almost commonplace; the response was anything but.

The lawsuit was hurled into secretive chaos, largely because it disclosed the hidden past of one of the businessmen being sued. The man, according to documents attached to the lawsuit, had not only pleaded guilty in an organized crime case in Brooklyn, but had also become a cooperating witness for prosecutors, helping them put away dangerous criminals — something neither he nor the government had ever meant to reveal publicly.

Judges reacted quickly. In Manhattan, where the complaint was filed, a federal judge ordered the documents placed under seal. And in Federal District Court in Brooklyn, where the businessman's criminal case was already secret, Judge I. Leo Glasser held hearings to investigate how the materials had been obtained, and imposed a strict order barring further dissemination of their contents.

"Something very bad and perhaps despicable was done by the use of those documents," Judge Glasser said at a court hearing in mid-2010. Divulging their contents, he added in a different hearing, could seriously endanger the cooperating witness and "significantly affect" matters of national security.

The dispute is considered so sensitive that courts have substituted the name John Doe for the businessman, and Richard Roe for the lawyer who filed the case, Frederick M. Oberlander.

The case has spurred a strenuous debate among the lawyers and judges involved. Some believed that Mr. Oberlander was being reckless and unethical, while others cast him as an aggressive advocate on behalf of fraud victims.

Mr. Oberlander said the information about the businessman, which he said

---

*A clash of values as the government tries to protect a cooperator's safety.*

---

he had received from a "classic whistle-blower," was evidence that he had concealed his criminal record, violating his fiduciary obligation to investors.

Records show that a federal appeals court panel also reviewed the matter and, after receiving sealed legal briefs and holding a closed oral argument, strongly affirmed the secrecy: "Judge Glasser, who had presided over Doe's criminal case and was therefore familiar with the extent of Doe's cooperation and his assistance in obtaining the convictions of myriad violent criminals, explicitly entered a finding that releasing proof of Doe's cooperation would cause him irreparable harm and would put his safety at risk."

Details of the dispute between John Doe and Richard Roe were pieced together through a review of public documents, including appellate orders and a transcript of the 2010 hearings before Judge Glasser. The judge said in the proceeding that the transcript was not sealed, but he agreed to a request by the businessman's lawyer that a pseudonym be used.

Because of safety concerns raised in the case, John Doe is not being identified in this article. His lawyers declined to comment, as did prosecutors. Mr. Oberlander agreed to be interviewed,

Continued on Page A18

---

From Page A16

although he would not discuss sealed aspects of the case.

Mr. Oberlander, 56, said he had been preparing the lawsuit on behalf of two clients who had financial interests in the firm where John Doe worked. Mr. Oberlander testified before Judge Glasser that the firm's principals, including John Doe, had stolen millions of dollars from Mr. Oberlander's clients and millions more from others, through embezzlement and fraud. John Doe has denied the allegations.

In early 2010, Mr. Oberlander testified, a former employee of the firm provided him materials, saying that he had obtained them lawfully while working there.

The materials included John Doe's cooperation agreement with prosecutors and a document known as a presentence report, which may include personal data, the names and addresses of a defendant's family members.

Mr. Oberlander said the former employee told him, "Use this information — make it public."

The former employee has written that he obtained the materials from a computer server that the businessman had asked him to copy and not a court file, and that he was unaware of any order barring him "from disseminating the documents to anyone."

But the businessman has offered a sharply different version of events. In his own lawsuit, filed under the same Doe pseudonym, he charged that the former employee, whom he characterized as a disgruntled junior analyst who had been fired, stole "private and confidential documents" that contained "highly sensitive information," placing him "at great personal risk."

Although the businessman did not describe the sensitive information, he stressed that its value was "measured not in dollars but in the amount of harm" that disclosure would cause.

Mr. Oberlander contended in interviews that the court secrecy had kept investors from learning about the businessman's criminal

---

## A reckless act, or an aid to fraud victims? The views diverge.

record, which he said should have been disclosed. The secrecy also kept any victims of the businessman's earlier criminal activity from obtaining restitution, Mr. Oberlander said.

Paul G. Cassell, a former federal judge who teaches law at the University of Utah and specializes in victims' rights, contributed to a legal brief in support of the lawyer's position.

He said the secrecy of the businessman's conviction was "a huge issue for victims," in part because it prevented them from even knowing they might have a right to restitution.

Professor Cassell said of Richard Roe: "He's challenging the power and ability of the courts to run a secret criminal docket. I think he's stumbled onto something here that raises profound issues about how crime victims and cooperators are going to be treated in our federal criminal justice system."

But the businessman charged in his suit that Mr. Oberlander had tried to extort a settlement by "threatening to go public with everything" if a deal was not reached.

The businessman contended that Mr. Oberlander had e-mailed a former counsel to the investment firm, attaching copies of the materials, and offering choices like "I file publicly today" or "I file under seal today." Mr. Oberlander denied before Judge Glasser that the e-mail was a demand for money in exchange for not filing publicly.

Judge Glasser ultimately concluded that Mr. Oberlander "knowingly and intentionally flouted" a court order by "unilaterally deciding" to disclose the information in the businessman's sealed case, according to the account given in the appellate orders.

The appeals panel, citing what it called Mr. Oberlander's "extraordinary provocations," also took the unusual step of having a second judge appointed to oversee compliance with secrecy orders in the case, and it has suggested that one of the sealed documents was of "dubious utility" to Mr. Oberlander except as a "tool to intimidate and harass Doe by subjecting him to disgrace."

A complicating factor in the case has been a somewhat haphazard approach to secrecy. Some years ago, for example, prosecutors issued a press release disclosing the businessman's guilty plea under his actual name. And his cooperation with the government has been cited in a news report.

"This is a case unlike any I've ever been in," said David A. Schulz, a leading First Amendment lawyer who said his firm was retained for a time by suchard Roe after the appeals panel issued its broad secrecy order.

The order effectively "barred our client from disclosing information in his possession to anyone, even in a court pleading," Mr. Schulz said. He added, "Our client believed the order raised significant First Amendment concerns, and we agreed."

Two legal ethics professors suggested that the courts' reaction to Mr. Oberlander's approach was not surprising. Stephen Gillers of New York University said Mr. Oberlander had used "Rambo tactics," and could have cited the Doe conviction without mentioning his cooperation or attaching the sealed materials.

Steven Lubet of Northwestern University said he saw "a clash of values."

"The government obviously wants to keep its cooperators safe, and other people want to be able to assert their claims in court," he said. But, he added, the courts were "very concerned about the nature of the information, and in the age of the Internet, partial disclosure is risky in ways that it was not before."

Mr. Oberlander, who said he had consulted with his own ethics expert, asserted that he was ethically obligated to use the materials on behalf of his clients once it came into his possession.

In the 2010 hearings, Mr. Oberlander's lawyer, Richard E. Lerner, argued before Judge Glasser that the secrecy order on his client was an unconstitutional prior restraint. "We will fight this to the end," he said.

But the businessman's lawyer, Kelly A. Moore, dismissed the idea that free speech was at issue. She told the judge that Mr. Oberlander should have known that the documents had been part of a sealed court file.

He had no "greater First Amendment right to put a man's life in danger by publishing stolen and sealed confidential documents than if he walked into a crowded theater and shouted fire," she said.