Beys, Stein & Mobargha LLP

Nader Mobargha

February 24, 2012

**TO BE FILED UNDER SEAL**

**BY FACIMILE (718) 613-2236 AND BY HAND DELIVERY**

The Honorable Brian M. Cogan
United States District Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

  Re: <u>Roe v. Doe, 98 CR 1101 (ILG)</u>

Dear Judge Cogan:

  On behalf of John Doe, we respectfully submit this letter in response to Non-Party Respondent Richard Roe's Motion to Quash and Vacate the Order to Show Cause of February 13, 2012 and the February 15, 2012 Amended Version of that Order ("Motion to Vacate").

  The following is undisputed: On February 14, 2011, the Court of Appeals gave Your Honor jurisdiction to implement and oversee compliance with its and Judge Glasser's orders. The Court of Appeals reiterated this mandate in its Final Summary Order, dated December 20, 2011. The Court discussed the specifics of this mandate during the February 14, 2011 oral argument on Roe's appeals. In response to Roe's disclosure of sealed information to a high-profile mafia attorney, Judge Cabranes ordered that [Your Honor] hear "any concern or application by [the Government or Doe] with respect to that." *See* Ex. 2 to February 14, 2012 Letter, accompanying application for Order to Show Cause ("February 10th Letter"), at 39:24-25. Judge Cabranes further stated that if the we "are asking for relief or [w]e <u>want to apply for relief</u> in that regard, [we] should take it up [with this Court]." *Id.*, at 40:4-6. Consequently, Your Honor has jurisdiction to hear and enter an Order to Show Cause concerning a violation of the Court of Appeals' orders. Any other interpretation would stand the Court of Appeal mandate on its head.

The Chrysler Building<br>
405 Lexington Avenue<br>
7th Floor<br>
New York, New York 10174<br>
212-387-8200 (Main)<br>
212-387-8229 (Fax)<br>
nmobargha@bsmlegal.net

In our February 10th Letter, we moved for findings of civil contempt against both Roe and his lawyer, Richard Lerner, for their disclosure of Roe's identity to *The New York Times* and for posing for a half-page photo together in a half-page spread in the article. With this photo, any journalist now can identify Roe and his lawyer around the courthouse and follow them to sealed proceedings.

Remarkably, in their Motion to Vacate, neither Roe nor Lerner deny disclosing Roe's identity to the press. Rather, staying true to form, they justify their actions by making a number of meritless, and often incredulous, arguments.

First, they argue that the Court of Appeals already "outed" Roe. They base their belief on the possibility that someone may, by chance, find the Court of Appeals opinion online, read the opinion, see the reference to Roe's filing a civil RICO action before Judge Buchwald under his own name, connect the dots, and discover Roe's identity. However, it is irrelevant if a curious layperson, with enough time on his hands, can piece together the litigation puzzle and determine the identity of Roe. What is relevant is the Court of Appeals' unequivocal injunction against using Roe's name, on the basis that "the disclosure of [Roe's] identity in this litigation context may, for the time being, lead to the improper disclosure of the materials at issue." *See* Ex. 2 to February 10th Letter, at 2. Due to this concern, the Court of Appeals sealed Roe's identity.

If Roe or his attorney had any issue with his identity remaining under seal – or believed that the continued sealing of his identity was unjustified - they should have raised it during oral argument or appealed to the U.S. Supreme Court. Alternatively, they should have raised the issue with Your Honor before coming to the dangerous conclusion that they were free to unveil their identities and faces to the world. Their failure to do so is not surprising, but consistent with their unilateral "shoot first, ask questions later" approach to court orders. Furthermore, it is one thing for a curious layperson to piece together Roe's identity; it is another thing for Roe and his lawyer to splash their photo and disclose their identities in a half-page spread in a national newspaper which gets disseminated internationally. Indeed, the more widespread the disclosure of sealed information is, the greater the probability of prejudice to Doe and his family's safety.

Second, Roe's defense, incredulously, justifies his actions by claiming that the entire Second Circuit is guilty of "sedition, constituting high crimes misdemeanors." Almost a year ago, Your Honor aptly asked if Roe and his lawyer were "playing games with [you]." *See* Transcript of April 1, 2011 Hearing, at 14:16-17. Your Honor also called Roe's papers, which were a long, rambling essay on engineering decompensation, "absurd," comparing them to a "comic book characterization of what legal papers are supposed to look like." *Id.*, at 9:7-14.[1]

---

[1] Perhaps most perplexing in this litigation is that Richard Lerner, a partner at Wilson, Elser,Moskowitz, Edelman & Dicker LLP, a law firm with offices across the country, and allegedly a member of the Character and Fitness Committee of the Appellate Division, continues to put his name on these submissions to the Court and actively participates in violating court orders.

Rather than respect this simple order and heed Your Honor's warnings, Roe and his lawyer continue to play games by again referring to engineering decompensation in their Motion to Vacate. This time they further thumb their nose at the entire Second Circuit by accusing all of the courts of this Circuit of "sedition." Thus far, they have escaped all liability, and continue to force Doe – and taxpayers - to continuously incur legal costs in their efforts to hold Roe accountable for his unlawful conduct.

Third, Roe argues that we are seeking criminal contempt, not civil contempt. This misstates our position. Using Roe's own standard for civil contempt, "the issue in a contempt proceeding is whether the order entered (i) bound the alleged contemnor; (ii) was not jurisdictionally barred; (iii) was violated with the requisite scienter; and (iv) in the case of civil contempt, was valid, including constitutionally. *See* Motion to Vacate, at 10. The order we are alleging Roe violated was the Court of Appeals' February 14, 2011 Summary Order (the "Order"). There is no doubt that the Order "bound" Roe; it was not jurisdictionally barred since it was Roe himself who made the appeal to the Court of Appeals; and there is no doubt that the order was violated with the requisite scienter. *See* Ex. 2 to February 10th Letter, at 6:17-7:6 ("[W]e are all aware that the sealing orders and temporary injunctions of the Court of Appeals have been aimed at Roe, an attorney at law, and at his attorneys."). Roe's explicit intention from day one has been to publicize sealed information concerning Doe. Your Honor understood this when you ordered that Roe could not "extrapolate from sealed documents...[which] could easily be combined with and thereby tainted by Roe's review of the specific statements and information that Roe intended to release." *See* Court of Appeals Order, dated December 20, 2011 (the "December 20th Order"), at 5 (summarizing this Court's findings). Your Honor further concluded that "[i]t seems obvious that Roe is seeking to fatally undermine the purpose of the injunctions by publicizing information that would render them ineffective." *Id.* Finally, if Roe has any issues with the constitutionality of the Order he is free to appeal to the Supreme Court. Until then, he must comply with it and assume that it is valid. That is how our justice system works.

Using the Second Circuit standard for contempt, Roe should be liable to pay Doe's attorney's fees for violating the Court of Appeals' Order. To hold Roe in civil contempt, the Court must determine that "the order violated by [Roe] is clear and unambiguous, the proof of non-compliance is clear and convincing, and [Roe] was not reasonably diligent in attempting to comply." Fox Indus., Inc. v. Gurovich, 2004 WL 1896913, at *3 (E.D.N.Y. July 15, 2004)(citing EEOC v. Local 638, 81 F.3d 1162, 1171 (2d. Cir. 1996). Here, it is undisputed that Roe disclosed his identity to *The New York Times* in violation of the Court of Appeals' unambiguous Order to keep Roe's identity sealed. Roe was not even "reasonably diligent" in attempting to comply with the order as he did not seek Your Honor's permission to do so as he had done in the past. Consequently, Roe should be held in civil contempt and ordered to pay Doe's legal fees and costs in connection with this proceeding. *See, e.g.*, Fox. Indus., Inc., 2004 WL 1896913, at *4 (attorney's fees and costs granted for expenses incurred in connection with an Order To Show Cause, for an oral argument, and for expenses incurred in preparing for and

participating in a contempt hearing); Weitzman v. Stein, 98 F.3d 717, 719 (2d. Cir. 1996)(district court may award appropriate attorneys' fees and costs to victim of contempt).

Finally, we address Roe's procedural issue that contempt proceedings brought in a civil case need to be based on an affidavit. First, we are not attesting to any facts and there are no material facts at issue; all the facts underlying our contempt finding are based on public and judicial records, namely the *New York Times* article, the Court of Appeals' Summary Order, and the transcript of the February 14, 2011 hearing before the Court of Appeals. Nevertheless, to strictly abide by the correct legal procedure – which Roe seems to believe applies to everyone but himself – we are submitting our letter in affidavit format simultaneously with the submission of this letter.

In sum, Roe continues to violate and flout court orders with impunity. He should be held accountable for these actions, especially given the stern warnings given to him by both the Court of Appeals and Your Honor. *See* December 20th Order, at 3 ("Roe is hereby warned that the Court's patience has been exhausted…and that any further attempts to re-litigate the issues decided by this order…may result in sanctions…and monetary penalties."). Doe should no longer have to spend his own money to finance Roe's circus. We respectfully demand that Roe be ordered to pay Doe's attorney's fees in connection with this motion, and that if he violates the Court of Appeals' orders again, he be held in contempt again.

Respectfully Submitted,

Nader Mobargha
Beys, Stein & Mobargha LLP
*Counsel for John Doe*

Cc: The Honorable I. Leo Glasser

Richard Lerner Esq.
*Counsel for Richard Roe*

The United States Attorney's Office
Todd Kaminsky
Elizabeth Kramer

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

UNITED STATES OF AMERICA,

    -against-

JOHN DOE,

    Defendant.

    -against-

RICHARD ROE

    Non-Party Respondent.

------------------------------------------------------------- x

**FILED UNDER SEAL**

98 CR 1101 (ILG)

**AFFIDAVIT OF NADER MOBARGHA**

I, Nader Mobargha, an attorney duly admitted to practice before this Court, attest that to the best of my knowledge the following is true and correct:

1. On February 6, 2012, the *New York Times* published an article, entitled "By Revealing Man's Past, Lawyer Tests Court Secrecy" ("*The New York Times* article"). By revealing Richard Roe's true name and identity in the article - not to mention posing for a half-page photo with his lawyer - Roe and his attorney, Richard Lerner, directly violated the Second Circuit's February 14, 2011 Summary Order (the "Summary Order"). *See* Ex. 1, *The New York Times* article with photo.[1] Accordingly, we are moving by Order To Show Cause, for findings of civil contempt against both Roe and Lerner.

2. In its Summary Order, the Court of Appeals expressly enjoined Richard Roe and his counsel from disclosing Roe's true identity:

---

[1] All Exhibits referenced in this Affidavit are attached as Exhibits to the February 10, 2012 Letter submitted by Doe's Counsel to this Court.

> Richard Roe is an attorney at law whose identity is known to all participants in this litigation and who has been given the name 'Richard Roe' as a legal placeholder <u>because the disclosure of his true identity in this litigation context may, for the time being, lead to the improper disclosure of the materials at issue</u>.

(emphasis added). *See* Ex. 2, the Summary Order, at 2:12-15. Indeed, this injunction was at the front and center of the Summary Order, immediately following the central injunction in the case, which enjoins "dissemination by [any] party, their...attorneys, and all who are in active concert or participation with them, of materials placed under seal..." *Id.* at 2:8-11. Moreover, apparent throughout this complex civil, criminal and appellate litigation, the purpose of using "Richard Roe," instead of his true name, was to protect John Doe. As several courts have found, revealing certain information to the public, including the identities of the parties, could pose a grave threat to the life and safety of both Doe and his family.

3. Furthermore, during the oral argument leading up to the issuance of the Summary Order, Judge Cabranes recognized the need to keep Roe's true identity under seal outside of the courtroom: "You can refer to him by name <u>here</u>...We are all under seal here." *See* Ex. 3, Transcript of February 14, 2011 oral argument, at 32:21-22 (emphasis added). In addition, in discussing the brief he publicly filed with the U.S. Supreme Court, Roe's counsel himself acknowledged the requirement that Roe's identity must remain under seal. Specifically, he stated that in his brief "[e]very name that could give notice as to what is going on here was redacted." *Id.* at 35:2-3. However, in giving an interview to *The New York Times* in which they revealed their identities and posed for a photograph with a caption identifying themselves by name, both Lerner and Roe ignored Judge Cabranes's orders and their own statements, and violated the Summary Order.

4. None of this is surprising, however. From the outset of this litigation, Roe has been threatening to disseminate sealed information about Doe to the public and the press. As early as November 9, 2010, Roe made his threat explicit, in a letter to Doe's counsel:

> If you wish Doe's activities lawfully kept quiet to any extent, stand still, stop filing motions and get out of the way so Plaintiffs can try to resolve the case before everything uploads to PACER and goes public. The only way to try to prevent worldwide notoriety will be a globally stipulated sealed confidentiality order accompanying a global settlement. No prior restraint was ever possible and thanks to your litigation in the EDNY and what it revealed and the transcripts thereof, all you have accomplished now is to guarantee massive public interest in the cover-up not only of the Doe conviction but the super sealed files and the evasion of mandatory restitution of the [dollar amount] (give or take) that Plaintiffs can allege Doe took out of [the company] and the wrongful concealment of the [dollar amount and cause of action] chose in action available against Doe, concealments themselves RICO predicates, which by definition make all these matters of public interest so beyond any First Amendment threshold as to make sill any attempt to enjoin.

See Ex. 4, Redacted letter from R. Roe to B. Herman, dated November 9, 2010 ("November 9th Letter"), ¶ 3. (emphasis added).

5. Roe further threatened to put Doe's sealed information "on the front pages everywhere, including New York, Iceland, Turkey, and Khazakhstan..." Id. at ¶ 5. His threats continued: "If this case is not settled quickly, it will surely go viral. If you obstruct a settlement instead of helping get there, everything will go public with clockwork inevitability. This is not a threat, it is mathematics. And it is certain."[2] Id. at ¶ 6.

---

[2] In his meritless litigation in the Southern District of New York (Kriss, et al. v. Bayrock Group, LLC, et al., 10 Civ. 3959 (PAE)), a frivolous employment action masquerading as civil RICO, Roe's only chance of any recovery for his clients has been to threaten dissemination of Doe's sealed and confidential documents, which he knew were stolen. Indeed, he has named reputable law firms, like Nixon Peabody, as defendants in the action, based on his stated belief that they would be more likely to pay millions of dollars to settle, rather than be associated with Doe and his past. As Roe admitted in his letter to Doe's counsel, "I can with confidence predict from settlement discussions I've had that all the Defendants will be delighted to keep this quiet." See November 9th Letter, ¶ 6.

6. Staying true to his threats and his careless, past conduct of publicly filing sealed information, Roe has now decided to reveal his identity to a national newspaper in violation of the Summary Order.[3] In doing so, Roe and his attorney have brought the public one step closer to knowing Doe's true identity.

7. As a result of Roe and Lerner's brazen violation of the Court of Appeals' Summary Order, we have enclosed an application for an Order To Show Cause for Findings of Civil Contempt.

Dated: New York, New York
February 24, 2012

Beys, Stein & Mobargha LLP

By: *[signature]*
Nader Mobargha (NM7162)

The Chrysler Building
405 Lexington Ave., 7th Floor
New York, New York 10174
Telephone: (212) 387-8200
Facsimile: (212) 387-8229
Email: nmobargha@bsmlegal.net

*Attorneys for Doe*

---

[3] Indeed, Roe has a history of publicly filing sealed information in violation of court orders. We detailed this history in our March 23, 2011 submission to Your Honor. At an April 1, 2011 hearing on this issue, Your Honor stated that the Court of Appeals' mandate was not retroactive, but rather limited to enforcing the Court of Appeals' Summary Order. However, Your Honor stated that if we wanted to expand Your Honor's mandate to include remedying Roe's past violations of court orders, we could make a motion to the Court of Appeals on that issue. We plan to do so in the very near future.