**FILED UNDER SEAL, BUT OBJECTING TO SAME
AND REQUESTING IMMEDIATE UNSEALING**

| | | | |
|---|---|---|---|
| UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK | | | |
| UNITED STATES OF AMERICA, | | | 98 Civ. 1101 (ILG) |
| | | Plaintiff, | |
| -against- | | | To: Hon. Brian M. Cogan |
| "JOHN DOE," | | | |
| | | Defendant. | |

## DECLARATION OF COLEEN FRIEL MIDDLETON IN OPPOSITION TO

## JOHN DOE'S MOTION FOR CIVIL CONTEMPT

I, Coleen Friel Middleton, having been admitted *pro hac vice* to represent Richard E.

Lerner in this matter, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the

following statements are true.

1.      I am of counsel to the law firm of Wilson, Elser, Moskowitz, Edelman & Dicker,

LLP. I am familiar with the facts stated herein based on my review of the file maintained by our

office with respect to this action, as well as communications with individuals who have

knowledge of the facts of this case. I submit this Declaration, and the accompanying

memorandum of law, in opposition to the Order to Show Cause filed by John Doe ("Doe") on

February 10, 2012.

2.      Doe's motion for civil contempt arises out of an article published by the New

York Times on February 6, 2012.[1] Doe alleges that Frederick M. Oberlander ("Oberlander" a/k/a

"Richard Roe") and my client, Richard E. Lerner ("Lerner"), violated a Summary Order issued

---

[1] The article is attached to Doe's Order to Show Cause as Exhibit A.

Summary Order does not prohibit Roe (or Lerner, or Doe, or Mobargha) from revealing Roe's identity to third persons. Doe cannot cite to a single decretal paragraph in the Summary Order that contains such a prohibition.

11.     The lack of a decretal paragraph means that Roe and my client were never put on notice that revealing the identity of Roe to the others would violate a judicial order. In light of this, it would be both unconstitutional and inequitable to hold them liable for engaging in such conduct, even if there were evidence that they had done so.

12.     This Court acknowledged as much in the proceeding held on February 27, 2012.[5] Your Honor stated, "what we have here is very clearly a civil contempt [proceeding]. I am not at all sure it works as a civil contempt [proceeding]. The only provision that's been pointed out to me as to which there may be a contempt is the second paragraph in the Court of Appeals summary order filed February 14th, 2011, which simply notes that the Court is referring to Richard Roe as Richard Roe because the disclosure of his true identity might lead to the improper disclosure of materials here at issue. . . . *That is not a decretal paragraph*; it is simply a statement of the reason why the Court of Appeals is using a pseudonym." (emph. added).[6] As there are no specific decretal terms setting forth that Roe's true identity could not be revealed by anyone to anyone else, the motion for civil contempt is baseless.

---

[5] The transcript of the February 27, 2012 proceeding before this Court is attached as Exhibit A.

[6] Indeed, we submit (and believe that this Court well understood) that a restraining order that is alleged to provide the predicate for a contempt motion must comply with FRCP 65(d), which provides:

> CONTENTS AND SCOPE OF EVERY INJUNCTION AND RESTRAINING ORDER.
>
> (1)     *Contents.* Every order granting an injunction and every restraining order must:
>
>         (A)     state the reasons why it issued;
>         (B)     state its terms specifically; and
>         (C)     describe in reasonable detail—and not by referring to the complaint or other document— the act or acts restrained or required.

13.     In his supplemental brief in support of the motion for civil contempt, Doe asks this Court to "reconsider our argument that Roe and Lerner's disclosure of Roe's identity – alone – is a violation of the [February 14] order." Inexplicably however, Doe then concedes that the paragraph to which he directed the Court's attention – *i.e.*, the first recital paragraph – is not a decretal paragraph.

14.     After this acknowledgment, the movant tries to direct the Court's attention elsewhere. In particular, Doe argues that "the Court of Appeals' use of the alias Richard Roe in the caption and throughout the proceeding is an <u>order</u> that Roe's identity should remain under seal." This argument is a misguided and unpersuasive attempt to create an injunctive order where none exists.

15.     The mere fact that the Court refers to Oberlander by his alias name does not have the force of an order. In fact, the Court of Appeals explained why it was using pseudonyms for purposes of the February 14 proceeding: "[T]o avoid caption issues that may cause confusion on the record, let us speak today of Richard Roe and John Doe, not petitioner or respondent, nor of appellant and appellees."[7]

16.     At the proceeding held on February 27, 2012, this Court stated that "[o]ne inference that could possibly – although I am not presently drawing any such inference – but one inference that could be drawn is that there is a scheme between Mr. Lerner and Mr. Roe, or either one of them, to undermine the injunctive orders that have been previously issued, and one means of undermining those injunctive orders would be the disclosure of the true identity of Richard Roe. That fact, combined with others, both public and nonpublic, might well lead to the harm that the injunctive provisions entered by the Second Circuit and Judge Glasser expressly

---

[7] The transcript of the February 14, 2011 proceeding is attached to Doe's Order to Show Cause as Exhibit C.

sought to prevent. *But that theory has not been made before me on this motion.* I've only been pointed to that first recital paragraph in the Second Circuit's order. And as I say, it is not a decretal paragraph." (emph. added).

17.     We again reiterate that the only issue before this Court is the issue stated in the Order to Show Cause that was signed by Your Honor, that Roe and Lerner show cause "why they should not be held in civil contempt of the **Court of Appeals' February 14, 2012 Summary Order** … for their disclosure of **sealed information** to the New York Times in violation of the Summary Order." There is no showing that any sealed information was provided to the New York Times.

18.     Moreover, to bar Oberlander and Lerner from revealing Roe's identity would violate the First Amendment to the United States Constitution, by impinging on their right to freedom of speech. The United States Supreme Court has ruled that, "[t]he history of the power to punish for contempt and the unequivocal command of the First Amendment serve as constant reminders that freedom of speech … should not be impaired through the exercise of that power, unless there is no doubt that the utterances in question are a serious and imminent threat to the administration of justice." *Craig v. Harney*, 331 U.S. 367, 373 (1947). There has been no showing that the revelation of Roe's true name – whether by Roe, Lerner, or even Mobargha – posed a serious and imminent threat to the administration of justice. Indeed, we submit that no legitimate governmental purpose could have possibly been served by ordering that Roe's true identity never be revealed. That is why, presumably, there is no decretal language in the Second Circuit's Summary Order expressly prohibiting Roe, Doe, Lerner, Mobargha, or the government from revealing Roe's true identity to anyone.

the civil RICO lawsuit pending before her. In the letter, Mobargha identified "Richard Roe" as the plaintiffs' attorney in the matter. Meanwhile, it was Frederick M. Oberlander – and *not* Richard Roe – who was listed on PACER as counsel of record for plaintiffs. To make matters worse, Mobargha copied an individual by the name of Walter Saurack on his letter to Judge Buchwald, thereby revealing to a third party that Roe was Oberlander.

23.     Moreover, the Second Circuit referred to Oberlander by his pseudonym "Richard Roe," then described him as a civil attorney who filed a civil RICO lawsuit in the United States District Court for the Southern District of New York on May 10, 2010 which was assigned to Judge Buchwald. One can put the pieces together quite simply by conducting a search on the Internet of the terms "May 10, 2010," "RICO" and "Buchwald." There was only one civil RICO suit filed in the SDNY on that date, and Fred Oberlander is listed as the attorney for the plaintiffs. So it would appear that the Second Circuit too, inadvertently, let the genie out of the bottle.

24.     In these ways, Oberlander was "outed" as Richard Roe separate and apart from the New York Times article dated February 6, 2012. He was outed by Doe's counsel. And he was outed by the Second Circuit.

25.     There is also the issue of a press release issued by the U.S. Attorney's Office on or about March 2, 2000.[10] It refers to John Doe by his real name, and describes the charges against him as a "Stock Fraud Scheme That Was Protected And Promoted By Organized Crime." This conduct was much more egregious in that it goes beyond revealing the identity of "Richard Roe" – the government actually revealed the identity of John Doe himself. It is the government that has brought John Doe's identity many steps closer to revelation. So to the extent that it is

---

[10] The press release dated March 2, 2000 is attached hereto as Exhibit E.

disclosure of Roe's identity." (emph. added) Doe argues that Roe and Lerner "also employed other means to undermine the Court of Appeals' injunction."

28.     For example, Doe asserts that Roe improperly disseminated a press release and other information to the New York Times reporter, and created a "lethal combination" that was a "direct violation of the Court of Appeals' injunction against 'distributing or revealing in any way . . . [Doe's sealed] documents or contents thereof'." However, we again note that there is no allegation that any information under seal was disclosed by Roe or Lerner. If the revelation of public information contained in the Congressional Record would lead people to infer that "John Doe" (by his true name) had pled guilty to RICO fraud, that is not something that can be enjoined. In point of fact, the Second Circuit stated in the June 29, 2011 decision that the press release of March 2, 2000 could be used to prove Doe's criminal conviction, and that press release uses his real name. Its use was not enjoined, because the Second Circuit lacked the power to enjoin it. It was a genie out of the bottle, and it's in the Congressional Record.

29.     As another example, in his supplemental brief, Doe argues that Roe's revelation of his identity, together with the disclosure of the United States Attorney's Office press release, "also violate[d] the Court of Appeals' February 10th Order." Obviously, Doe is overreaching because it is the Second Circuit's Summary Order dated *February 14, 2011* that is the subject of Doe's contempt motion. But also, as we again note, the Second Circuit itself said in the June 29, 2011 decision that Roe could use the press release to prove Doe's conviction. If Roe were to stand on the courthouse steps and pass out copies of the press release, with John Doe's true name highlighted, what order would that violate? The answer, of course, is *none*.

30.     It is obvious that, lacking any basis to assert a violation of the Second Circuit's Supplemental Order of February 14, 2011, Doe is grasping at straws. The arguments he makes in

the supplemental brief dated March 1, 2012 – all of which are meritless – are clearly outside the

scope of the contempt motion pending before this Court. This is all that is before the Court:

> ORDERED, that Richard Lerner, Esq., and Richard Roe, an
> attorney, show cause … why they should not be held in civil
> contempt of the Court of Appeals' **February 14, 2012 Summary
> Order** … for their **disclosure of sealed information** to the New
> York Times in violation of the Summary Order.

31.     There is no showing that any decretal language of the February 14, 2011 order

was violated. There is no showing that any "sealed information" was given to the New York

Times. All that has been argued is that public information, such as *Roe's* true name and the press

release from March 2, 2000 were revealed to the New York Times. That, however, does not fall

within the scope of the order to show cause, nor could it fall within the scope of the order to

show cause, without there being a severe Constitutional violation.

32.     For all of the above reasons, Doe has failed to show a violation of the Second

Circuit's Summary Order dated February 14, 2011. We ask that this Court DENY the motion for

civil contempt.

33.     The motion is frivolous, and it is for this reason that we ask this Court to award

relief pursuant to Rule 11 of the Federal Rules of Civil Procedure.

34.     We also hereby demand a jury trial with regard to the motion for civil contempt.

35.     Furthermore, we respectfully request that the Court award costs, disbursements

and a reasonable counsel's fee, pursuant to Local Rule 83.6 of the Local Rules of the Southern

and Eastern Districts of New York. This Rule provides that "[i]f the alleged contemnor is found

not guilty of the charges, said person shall be discharged from the proceedings and, in the

discretion of the Court, may have judgment against the complainant for costs and disbursements

and a reasonable counsel fee."

36. We also renew our request that all proceedings concerning the contempt motion remain open to the public, with adequate prior notice given so that ordinary citizens may attend, and that all documents concerning the motion be publicly docketed. The parties have a Sixth Amendment right to the public docketing of these proceedings, as shown in the accompanying memorandum of law. Additionally, as shown in the accompanying memorandum of law, the same procedural safeguards must be applied as if this were a criminal proceeding. Finally, the need for public docketing and an unsealed courtroom is even greater when it comes to contempt proceedings, as the Court acknowledged at the proceeding held on March 5, 2012.

37. We also renew our request that this Court issue a separate index number for the purposes of docketing this case, as opposed to placing it under the umbrella of *United States v. John Doe*, 98 CR 1101. This is a civil matter between two parties and it warrants a new caption.

### Conclusion

For all of the foregoing reasons, and those set forth in the accompanying memorandum of law, it is respectfully submitted that:

1) The relief sought in John Doe's motion, brought by order to show cause, for civil contempt should be DENIED.
2) Sanctions should be awarded against Doe and his counsel, pursuant to Rule 11, for filing a motion that has no basis in law or fact.
3) A judgment for costs, disbursements and attorneys' fees should be awarded against Doe, pursuant to Local Rule 83.6.
4) The court should publicly docket all documents filed herein.
5) The court should provide the public with advance notice of all hearings to be conducted.
6) The court should maintain an open courtroom throughout all proceedings.
7) The court should assign a separate caption and index number for these proceedings.

8) In the event of any evidentiary hearing, it should be conducted as a jury trial, with a jury of twelve.

9) The should court recognize that all criminal due process protections have attached.

10) The subpoenas submitted herewith should be so ordered.

Dated:        New York, New York
              March 12, 2012

                                        Respectfully submitted,

                                        WILSON ELSER MOSKOWITZ
                                        EDELMAN & DICKER LLP

                                        By: _Coleen Friel Middleton_
                                            Coleen Friel Middleton
                                        Attorney for Richard E. Lerner
                                        3 Gannett Drive
                                        White Plains, NY 10604-3407
                                        914-872-7778 (Direct)
                                        914-323-7000 (Main)
                                        914-323-7001 (Fax)
                                        coleen.middleton@wilsonelser.com

4963317v.1

# EXHIBIT A

3536420v.1

```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
 2

 3    UNITED STATES OF AMERICA,      :   Criminal Action
                                     :   No. 98CR01101
 4                                   :
                                     :
 5           -against-              :   February 27, 2012
                                     :   10:13 a.m.
 6                                   :
                                     :
 7    JOHN DOE,                      :   Brooklyn, New York
                                     :
 8            Defendant.             :
      . . . . . . . . . . . . . . . . . . . . . . . . . . . .:
 9

10                    TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE BRIAN M. COGAN
11               UNITED STATES DISTRICT COURT JUDGE

12

13    APPEARANCES:

14    For the Government:        LORETTA LYNCH, United States Attorney
                                 Eastern District of New York
15                               271 Cadman Plaza East
                                 Brooklyn, New York 11201
16                               BY:   TODD KAMINSKY, Esq.
                                       EVAN NORRIS, Esq.
17                                     LISA KRAMER, Esq.
                                 Assistant United States Attorneys
18
      For the Defendant:         MICHAEL P. BEYS, Esq.
19    (John Doe)                 JASON BERLAND, Esq.
                                 NADER MOBARGHA, Esq.
20

21    For Richard Roe:           RICHARD E. LERNER, Esq.

22
      Court Reporter:            Lisa Schwam, CSR, CRR, RMR
23                               225 Cadman Plaza East, Room N373
                                 Brooklyn, New York 11201
24                               (718) 613-2268

25    Proceedings reported by machine stenography, transcript
      produced by Computer-Aided Transcription.
```

```
 1                THE COURTROOM DEPUTY:  Roe v. Doe, Docket No. 98CR1101.
 2                Counsel, please state your appearances, starting with
 3    the government.
 4                MR. KAMINSKY:  For the United States, Todd Kaminsky,
 5    Lisa Kramer, and Evan Norris.  Good morning, Your Honor.
 6                THE COURT:  Good morning.
 7                MR. BEYS:  Good morning, Your Honor.  For John Doe,
 8    Michael Beys, Jason Berland, and Nader Mobargha from the firm of
 9    Beys, Stein & Mobargha.  Good morning.
10                THE COURT:  Good morning.
11                MR. LERNER:  Good morning.  I'm Richard Lerner.  I'm
12    appearing for Richard Roe.
13                THE COURT:  Good morning.
14                MR. ROE:  I am appearing for Richard Lerner.  Your
15    Honor asked me to identify myself.
16                THE COURT:  I'm sorry; say that again.
17                MR. ROE:  I'm appearing for Mr. Lerner.  Do you wish me
18    to use my name as I'm admitted in this Court or do you wish me
19    to use the --
20                THE COURT:  What do you mean you're appearing for
21    Mr. Lerner?  He is not a party here.
22                MR. ROE:  He is indeed.  This is a response to an
23    application to hold both of us in contempt.
24                THE COURT:  I see.  And so you're appearing --
25                MR. ROE:  I'm representing him in this application.
```

```
 1          THE COURT:  And you have no conflict of interest in
 2   doing that?
 3          MR. ROE:  If we do, you may assume on our
 4   representation mutually that it has been waived to our mutual
 5   satisfaction.
 6          THE COURT:  Well, sir, it's not entirely up to you.  As
 7   I understand it, there are two parties whom contempt is sought
 8   against.  You're telling me each of you is representing the
 9   other, even though I could find that either one of you is in
10   contempt.  Each of you have an incentive to exonerate yourself
11   and, to that extent, you're united in interest.  And each of you
12   have an incentive, to the extent you are not exonerated, to pin
13   responsibility on your client.
14          Why is that not a conflict of interest?
15          MR. ROE:  Well, first of all, as a practical matter --
16          THE COURT:  No.  Let's talk about what the rules
17   require.
18          MR. ROE:  I expect that both of us will take
19   testimonial privilege and, therefore, I don't think it's going
20   to be a problem.  I doubt that either one of us will be
21   testifying.
22          THE COURT:  You're -- I'm sorry; I don't understand
23   what you just said.
24          What do you mean, "testimonial privilege"?
25          MR. ROE:  I mean, that I believe, although the issue
```

 1    hasn't come up yet, that Mr. Lerner will assert Fifth Amendment,

 2    whether this be civil or criminal, and so will I, in which case

 3    there isn't going to be testimony from either one of us.

 4         THE COURT:  Is there going to be argument from either

 5    one of you?

 6         MR. ROE:  Yes.

 7         THE COURT:  Then the conflict is present, sir.

 8         MR. LERNER:  Our arguments are going --

 9         THE COURT:  Who are you speaking for now, Mr. Lerner;

10    yourself or your client?

11         MR. LERNER:  I'm speaking for Richard Roe.

12         THE COURT:  All right.  Go ahead.

13         MR. LERNER:  There will not be a conflict because we

14    will be presenting -- our arguments will be parallel, similar

15    arguments, same position.  We are not going to be pointing

16    fingers at each other.  And we're both going to -- neither of us

17    will be testifying.

18         MR. ROE:  If I may, if Your Honor would give me 30

19    seconds, we have a motion before the Court to declare that it

20    lacks subject-matter jurisdiction.

21         THE COURT:  Yes.  That motion is denied.  I have

22    subject-matter jurisdiction.

23         MR. ROE:  May I request, then, a 1292(b) certification

24    on the issue?

25         THE COURT:  You may request it.  It is denied.

1          MR. ROE:  All right.  May I request a stay pending a

2    writ of prohibition?

3          THE COURT:  You may request it.  It is denied.

4          MR. ROE:  All right.  Thank you.

5          THE COURT:  Let me hear from the other parties as to

6    whether there is an objection to proceeding with two alleged

7    contemnors, each representing the other.

8          MR. KAMINSKY:  Your Honor, may I very quickly point out

9    that prior to coming here today, based on the notice of motion

10   filed before Your Honor, it says, "Notice of motion, Richard

11   Lerner, pro se."

12         THE COURT:  Right.  That was my understanding.

13         MR. ROE:  I was only admitted today.  He couldn't have

14   put anything else on there until I got admitted.  Nobody was

15   trying to fool the Court.  I became admitted today for this

16   purpose.

17         THE COURT:  Who admitted you today?

18         MR. ROE:  I waived in.  I got a Certificate of Good

19   Standing from Southern District at 9 o'clock.  Brought it here,

20   paid the money, swore in, and I'm admitted in Eastern District

21   as of 9:45.

22         THE COURT:  Did you disclose when you got your

23   certificate that you were the subject of a contempt motion?

24         MR. ROE:  When I got the certificate from Southern

25   District?

```
 1              THE COURT:  No.  In the Eastern District.

 2              MR. ROE:  When I came in here and swore in?

 3              THE COURT:  Yes.

 4              MR. ROE:  I just did it half an hour ago, and there was

 5    nothing that says are you the subject of any disciplinary -- if

 6    I did it wrong, I apologize, but I haven't been found or

 7    adjudged in contempt; and particularly since this is, no matter

 8    how they label it, likely a criminal contempt proceeding, I

 9    presume incorrectly -- and I'll apologize if I'm wrong -- that

10    presumption of innocence applies.

11              THE COURT:  Let me return to my original question.

12              MR. KAMINSKY:  Yes, Your Honor.  With the caveat, Your

13    Honor, that I'm not exactly certain what Your Honor was planning

14    on going forward with this morning, there is obviously a big

15    problem that counsel is not adequately represented in that there

16    are conflict issues that are obviously present.  Should there be

17    anything later that would need to have a standing record that

18    everyone could support, and that would be obviously legitimate,

19    there is clearly a problem right now that the government is

20    loath to continue in this current situation.

21              MR. BEYS:  Judge, if I may, I'd also like to add

22    something to Your Honor's point that Mr. Lerner and Mr. Roe have

23    an incentive to put liability on each other.  I would note for

24    the Court a February 10th fax to Judge Glasser which Mr. Lerner

25    writes on behalf of Mr. Roe, basically accusing Judge Glasser of
```

```
 1    willfully participating in a scheme to defraud Doe's victims in

 2    whatever it is they've been claiming all along.

 3            I just want to quote the language because it shows

 4    exactly what Your Honor is concerned about, which is the finger

 5    pointing and the distancing from each other.  Mr. Lerner is very

 6    careful to say, "My client maintains that such acts constitute

 7    the willful depravation of and indeed the defrauding of

 8    Mr. Doe's crime victims of their property rights."  And later on

 9    again he is careful to say, "My client."

10            It's exactly what Your Honor is concerned with, and

11    it's a very real concern.

12            THE COURT:  Okay.  Then I take it that both of the

13    proponents of the contempt order see a difficulty in the

14    exchange of representations which I've been advised of for the

15    first time this morning.

16            All right.  We're going to adjourn till Friday at

17    11:00.  I want an exchange of letters from the parties by

18    Thursday morning as to why this proposed representation is or is

19    not proper.

20            Yes, Mr. Beys?

21            MR. BEYS:  Judge, unfortunately, Mr. Berland and I will

22    be in Miami for the White Collar Conference.  I don't know if

23    anyone from the government will be there.

24            Could I ask for Monday?

25            MR. ROE:  I have no problem, Your Honor.
```

```
 1              MR. LERNER:  No problem here.

 2              THE COURT:  Monday at 10 o'clock a.m.  Now, let me say

 3    a couple of things just to clarify.  I've already made some

 4    rulings.

 5              Mr. Lerner -- and I'm speaking to you as Mr. Roe's

 6    counsel -- you are pressing the motion to recuse that's stated

 7    in your papers?

 8              MR. LERNER:  Yes, we are.

 9              THE COURT:  All right.  That motion is denied.  No

10    reasonably objective person could see any conflict here.

11              Now, let me also note that what we have here is very

12    clearly a civil contempt.  I am not at all sure it works as a

13    civil contempt.  The only provision that's been pointed out to

14    me as to which there may be a contempt is the second paragraph

15    in the Court of Appeals summary order filed February 14th, 2011,

16    which simply notes that the Court is referring to Richard Roe as

17    Richard Roe because the disclosure of his true identity might

18    lead to the improper disclosure of materials here at issue.

19              That is not a decretal paragraph; it is simply a

20    statement of the reason why the Court of Appeals is using a

21    pseudonym.  That is not to say that the disclosure of Roe's true

22    identity may not be contemptuous.  One inference that could

23    possibly -- although I am not presently drawing any such

24    inference -- but one inference that could be drawn is that there

25    is a scheme between Mr. Lerner and Mr. Roe, or either one of
```

1    them, to undermine the injunctive orders that have been

2    previously issued, and one means of undermining those injunctive

3    orders would be the disclosure of the true identity of Richard

4    Roe.

5           That fact, combined with others, both public and

6    nonpublic, might well lead to the harm which the injunctive

7    provisions entered by the Second Circuit and Judge Glasser

8    expressly sought to prevent.  But that theory has not been made

9    before me on this motion.  I've only been pointed to that first

10   recital paragraph in the Second Circuit's order.  And as I say,

11   it is not a decretal paragraph.

12          I also think there are limitations in the context of

13   civil contempt with regard to the remedy sought.  It is true

14   that if there is a civil contempt, the movant is entitled to

15   recover their attorneys' fees, but so what.  If what is being

16   sought here is to stop violations, I think we can all be

17   assured, based upon the conduct of Mr. Roe and Mr. Lerner, that

18   the attorneys' fees incurred on this motion aren't going to do

19   anything.

20          Because it is entirely possible, although I have formed

21   no conclusion, that there has indeed been a criminal contempt

22   here, I am referring the matter for criminal prosecution to the

23   United States Attorney.  That, to me, is the proper mechanism

24   for adjudicating whether a contempt of the injunctive provisions

25   themselves, not mere background recitals, has occurred.

1    I will also note that I think it's very unusual that

2    the government is allowing a party that the government might

3    seek to protect to protect himself.  I know the U.S. Attorney's

4    Office is quite busy.  I have not yet met an Assistant that

5    doesn't work really hard, but I will say I can't think of

6    anything going on there that is more important than letting

7    actual and potential witnesses know that the government will

8    protect them.

9    That's why I'm referring this for prosecution.  It is,

10   of course, the U.S. Attorney's decision whether to prosecute or

11   not.  If the U.S. Attorney declines, then it will be up to me to

12   determine whether to appoint someone to prosecute privately.  I

13   would recommend that if there is going to be such a prosecution

14   based upon appropriate charges, that the relief sought be

15   limited to $5,000 and six months imprisonment, but, again,

16   that's the U.S. Attorney's decision.

17   Now, I want the movants, particularly Mr. Beys, but

18   obviously he is consulting with the government, to determine

19   before this hearing on Monday if we are in the proper forum here

20   based upon what I've said or whether there are other or no

21   actions that should be taken; because if all I've got here is

22   Richard Roe told somebody who he was, I am not sure at all that

23   I can find that, by itself, is a per se violation of any of the

24   injunctive provisions.

25   So I will see you all Monday at 10:00 a.m.  Let me

```
 1   check one more thing.  I want to make sure there's no more open
 2   issues from the emergency motion that Mr. Lerner filed.
 3            MR. ROE:  With respect, there are, Your Honor.
 4            THE COURT:  Let me hear from Mr. Lerner.  He is the
 5   attorney who filed it.
 6            What's left, Mr. Lerner?
 7            MR. LERNER:  Well, first I'd like to note that this
 8   matter is not on the Court's public schedule today.  We'd ask
 9   that any further proceedings in this court be publicly
10   documented and the proceedings take place in an open courtroom.
11            THE COURT:  I have not sealed this courtroom.  Is it
12   anyone's understanding that this transcript is sealed?
13            Your request is denied as moot.  Is there anything you
14   want that you're not getting?
15            MR. LERNER:  Well, Your Honor, the public has a right
16   to advanced public notice of court hearings.  This was not
17   posted.
18            MR. ROE:  I believe my client would press that Your
19   Honor docket --
20            THE COURT:  Excuse me.  I'm not recognizing you as his
21   attorney until the conflict issue is resolved.  I'm recognizing
22   him as the attorney who filed the motion for relief before me,
23   and I will hear only from him.
24            MR. LERNER:  Fine, Your Honor.  We've requested that
25   this be docketed under a separate index number.
```

```
 1              THE COURT:  Well, I'm not going to do that.  I might
 2    open this matter; I'll think about that.  You can both address
 3    that further in the letter I'm going to get on Wednesday.
 4              Anything else in your motion I didn't cover,
 5    Mr. Lerner?
 6              MR. LERNER:  We'll be moving to disqualify the
 7    government.  There's ample precedent that the government
 8    cannot --
 9              THE COURT:  I'm asking what's in your motion.  I'm not
10    hearing new motions.
11              Is there anything else in your motion?
12              MR. LERNER:  No, Your Honor.
13              THE COURT:  All right.  Then I'll see you on Monday.
14    Thank you.
15              (Time noted:  10:31 a.m.)
16              (End of proceedings.)
17
18
19
20
21
22
23
24
25
```

# EXHIBIT B

3536420v.1

# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

150 East 42nd Street, New York, NY 10017-5639
Tel: 212.490.3000  Fax: 212.490.3038

*Albany ● Baltimore ● Boston ● Chicago ● Dallas ● Garden City ● Houston ● Las Vegas ● London ● Los Angeles ● Louisville ● McLean*
*Miami ● Newark ● New York ● Orlando ● Philadelphia ● San Diego ● San Francisco ● Stamford ● Washington, DC ● White Plains*
*Affiliates: Berlin ● Cologne ● Frankfurt ● Mexico City ● Munich ● Paris*
—

www.wilsonelser.com

March 1, 2011

**By Facsimile** – 718-613-2236

The Hon. Brian M. Cogan
United States Senior Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

|     |                  |     |                                          |
|-----|------------------|-----|------------------------------------------|
| Re: | **Roe v. US v. Doe** |     |                                      |
|     | **2d Cir. Case No.** | : | **Roe v. US v. Doe, 10-2905 & 11-479-cr** |
|     | **EDNY Case No.**   | : | **US v. Doe, 98-CR-1101 (ILG)**          |
|     | **Our File No.**    | : | **07765.00155**                          |

## Conference Request

Dear Judge Cogan:

We represent attorney "Richard Roe" in the above-referenced matter which has been referred to your honor for monitoring of compliance with various court orders. These orders restrict Roe's distribution of certain materials and information. The Second Circuit's order to this effect is enclosed for the court's convenience. As the court will see, the order enjoins Roe "from publicly distributing or revealing in any way, to any person, or in any court, proceeding or forum, except to those persons directly involved in the parties' own legal representation, any documents or contents thereof subject to sealing orders in Docket No. 10-2905-cr or in any related proceeding before the District Courts for the Eastern District of New York and Southern District of New York."

To ensure clarity and transparency, and to enable full compliance, Roe respectfully asks this court for an urgent conference and ultimately written clarification on the precise nature and scope of the injunctions. In particular, Roe seeks clarification as to the specific information which he is barred from disseminating and seeks to know to which recipients, if any, distribution is permitted by the courts' orders.

Clarification is sought from this court because Roe is currently representing a plaintiff in a Southern District lawsuit. Roe wishes to prosecute that lawsuit vigorously. The injunctions, however, limit the use of some relevant information. In order to both perform his duties as the plaintiffs' attorney and his obligations under the injunction, it is necessary (and urgent) for Roe to know the exact boundaries of the court-imposed limitations. That lawsuit has been stalled at the filing of the first complaint for almost a year now because of the lack of clarity as to the court orders.

- 1 -

## Background

The SDNY complaint was filed in May 2010. The complaint (on which Roe is the plaintiffs' attorney) accuses Doe and others of substantive and conspiracy RICO violations. It alleges that in 1998 Doe pled guilty in the EDNY to racketeering predicated on securities fraud and money laundering, admitting his crimes caused losses of $100,000,000, yet in 2002 (even while awaiting sentencing for that racketeering), Doe concealed that conviction and covertly infiltrated a new business, which he then commenced to operate through a pattern of similar racketeering crimes. Roe's clients believe Doe's current liability for all this now exceeds $1,000,000,000.

Attached to or incorporated into the SDNY complaint are parts of several judicial and quasi-judicial documents relating to Doe's criminal conviction, which had been filed secretly, but apparently not pursuant to any valid sealing orders, in the Eastern District. It is undisputed that Doe did not obtain these documents from the court. Instead, the documents were given to Doe from a former employee of Doe's company who came to have them in the course of his employment. The dispute between, on the one hand, Doe and the government and, on the other, Roe, arose from Roe's use of these documents.

The documents at issue are from Doe's 1998 racketeering conviction and subsequent sentencing hearing. They are (1) a draft information, (2) a cooperation agreement, (3) a proffer, (4) a criminal complaint; and (5) a 2004 PSR.[1]

They contain information evidencing that (1) Doe pled guilty to racketeering; (2) that he did so pursuant to a cooperation agreement; and (3) at least in 2004, he obstructed justice by giving false information to his probation officer in preparation of the PSR in an apparent scheme to avoid restitution by faking poverty when he was regularly skimming large sums of money.

Importantly, they did not contain any information about the nature or specifics of any actions Doe agreed to take or ever did take as a cooperator, merely obligating him to show up on time at meetings and give truthful information.

It is also undisputed that much of the information contained in the documents at issue is available from other sources. These sources include government press releases, previously unsealed documents, newspaper articles and books, one written by his own co-defendant and co-cooperator, Salvatore Lauria, who pled guilty and cooperated along with Doe.

It is anticipated that during this court's monitoring, the court will learn of the lengthy and troubled procedural history of this case. For now, it should suffice to recount that:

(1) Hearings were held before Judge Glasser concerning Roe's use of the documents and the information contained within them. During these hearings, Judge Glasser issued oral, temporary restraining orders and an oral permanent injunction, against both Doe and, apparently, the entire world, against use of the PSR or anything in it PSR.

(2) Judge Buchwald (to whom the Southern District civil RICO case against Doe case has been assigned) also issued a series of orders concerning dissemination of the documents and the information they contain.

---

[1] In fact, as we have learned from the government during this appeal, this 2004 PSR never actually was adopted or officially became a PSR, and Doe's sentencing was delayed until 2009.

(3) The Second Circuit also issued an injunction against certain disclosures.

None of the orders detail with specificity the scope and breadth of the injunctions against Roe. Consequently, clarification is sought from this court.

**Questions for this Court**

This court is respectfully asked to confer with the parties about this case. It is further requested that, after such a conference, this court issue an order clarifying the injunctions. To start, it is respectfully requested that this court address the specific questions posed below:

### *(1)    May Roe disseminate information that is available in public records?*

There is a very great overlap between the information contained in public sources – most prominently including a detailed March 2, 2000 joint press release from the U.S. Attorney (EDNY), the FBI (NY), and the NYPD prominently mentioning Doe (and others) by name, describing Doe's operation of the RICO enterprise, and stating his conviction – and the information contained in the documents at issue.[2] Does the injunction against Roe prohibit dissemination of information that was retrieved or assembled from public sources if that information is also contained in the documents at issue? Specifically, is Roe prohibited from dissemination of these facts (all of which were identified in public documents):

(a)    Doe was convicted of racketeering in the EDNY.

(b)    Doe's conviction triggered reporting or disclosure obligations in various financial transactions.

(c)    Doe's sentence did not include restitution, though at least $60,000,000 of restitution was mandatory. This fact may be inferred from documents contained in the public dockets of other cases (for example, the *Lauria* docket shows that he received the same sentence as Doe, without an award of mandatory restitution), as well as representations made by the government in its papers submitted to the Second Circuit and at oral argument.

(d)    Doe did not disclose his conviction and sentence while engaging in financial transactions in which such disclosure was required.

### *(2)    Is Roe permitted to speak about facts with those who already know?*

Many people received copies of Doe's complaint (and the documents attached to it) before any gag order was issued by Judge Glasser or Judge Buchwald or the Second Circuit. These people include the parties to the Southern District action and their attorneys and their insurance companies. Some of these parties even waived service of the complaint (since they already received it via email). So the question becomes, Can Roe discuss the case with these adversaries?

---

[2] The US Attorney (EDNY) was reminded of its press release last week, but has done nothing to correct the record. The government's papers insist on the need to conceal Doe's name and the fact of his conviction, even though the government disclosed this information in a press release in 2000.

This court is hereby advised of this specific conundrum: the Second Circuit has ordered Roe to provide a copy of its order to Judge Buchwald. At the same time (indeed, in the same order) the Second Circuit prohibited dissemination of its order to anyone who was not a party to the proceedings before the Second Circuit. The question becomes, Is Doe supposed to serve the Second Circuit's order on Judge Buchwald *ex parte*? Out of an abundance of caution, this is the way that Roe did proceed. But by doing so, could it be said that Roe engaged in improper *ex parte* communications with Judge Buchwald?

>    (3)    ***Is Roe permitted to speak freely with potential counsel or in other privileged conversations?***

Do the injunctions permit discussion of all of the facts of this case by parties with whom Doe's communications would be privileged? If Doe were to solicit additional counsel, may he discuss this case for the purposes of seeking further legal advice? The court order permits discussion with Roe's current counsel, but may he discuss this case with any other attorneys with whom he would enjoy a privilege?

>    (4)    ***What are the cases referenced by the Second Circuit's order? Doe's docket is completely "super sealed" and invisible to the public. So, without clarification, Roe cannot know what "related" matters cannot be discussed.***

>    (5)    ***What are the specific, written docketed "sealing" orders (or unwritten, undocketed orders) that are purportedly binding on Roe and his clients, and where are the record findings that support them and the publicly noticed presealing hearings so that Roe may ascertain the validity of any purported orders. What do they enjoin?***

>    (6)    ***If the government or Doe cannot produce a properly docketed, written sealing order, procedurally and substantively valid as set for in the prior paragraph, as to a particular document, or an entire docket, is Roe then free to disseminate its contents at will?***

* * *

Of course (and unfortunately) these are only preliminary issues and are not exhaustive of the gaps left by the current court orders. Addressing these concerns, however, together with those that might arise during the conference, will provide Roe with some initial guidance and will empower him to represent his clients in a way that conforms in all respect to the various court orders.

Consequently, it is respectfully requested that a conference be held at the court's earliest convenience to discuss these and related issues. Thereafter, Roe requests that this court issue clear, written directives regarding the nature of the restraints against Roe.

Very truly yours,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

/s/

Richard E. Lerner

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
4357565v.3

Enclosure:      February 14, 2011 Second Circuit order

cc:     Via E-Mail (with enclosures)
        Michael Beys – Counsel for Doe
        Todd Kaminsky – US Attorney's Office
        David Schulz – Counsel for Roe
        "Richard Roe"

# EXHIBIT C

1

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2
     - - - - - - - - - - - - - - - X
3
     UNITED STATES OF AMERICA     :      98-CR-1101
4
         -against-                       U.S. Courthouse
5                                 :      Brooklyn, New York
     JOHN DOE,
6
             DEFENDANT,           :
7                                        April 1, 2011
     - - - - - - - - - - - - - - - X     11:00 o'clock a.m.
8
             TRANSCRIPT OF HEARING
9            BEFORE THE HONORABLE BRIAN M. COGAN
             UNITED STATES DISTRICT JUDGE
10

11
     APPEARANCES:
12
     For the Government:         LORETTA LYNCH
13                               United States Attorney
                                 147 Pierrepont Street
14                               Brooklyn, New York  11201
                                 BY:  TODD KAMINSKY
15                               Assistant U.S. Attorney

16
     For John Doe:              MICHAEL BEYS, ESQ.
17                              NADER MOBARGHA, ESQ.

18   For Mr. Roe:               RICHARD LERNER, ESQ.
                                DAVID SCHULZ, ESQ.
19

20

21   Court Reporter:            SHELDON SILVERMAN
                                Official Court Reporter
22                              225 Cadman Plaza East
                                Brooklyn, New York 11201
23                              (718) 613-2537

24

25   Proceedings recorded by mechanical stenography. Transcript
     Produced By Computer Aided Transcription.

                 SS      OCR     CM     CRR     CSR

2

1          THE CLERK:   United States versus John Doe.

2          (Appearances noted).

3          THE COURT:   Good morning.

4          THE COURT:   Who is in the back?

5          MR. KAMINSKY:   Kevin Lee, an intern in the Columbia

6    Law School, intern law program assisting with this case.

7          THE COURT:   I'll note the record of these

8    proceedings will remain sealed, although depending on what's

9    discussed, I or the circuit may choose to unseal it after.

10         I've reviewed all the papers.

11         Does anyone have anything they want to add to the

12   papers?

13         MR. BEYS:   Yes, your Honor.   There are two matters,

14   one of which the court may already have on behalf of John Doe.

15   Judge Glasser's scheduling order dated March 23rdrd, I'll pass

16   a copy to your Honor's deputy and also a case we did not cite

17   but is virtually tracking the language of Judge Glasser's

18   order.   It's In Re criminal contempt proceedings against

19   Gerald Crawford, Second Circuit 2003 case; the cite, 329 F.3d

20   131, stands for the proposition under the collateral bar

21   doctrine, a party may not challenge a district court's order

22   by violating it, which is closely related to what Judge

23   Glasser stated in his order.   I pass that to your Honor's

24   deputy as well.

25         THE COURT:   Anything else?

SS      OCR      CM      CRR      CSR

3

1           MR. LERNER:   This decision was just handed up.
2           THE COURT:   I haven't read it anymore than you
3   have.   You dispute the fact that he cannot challenge a sealing
4   order by violating it?
5           MR. LERNER:   I denied the premise there is a
6   sealing order --
7           THE COURT:   I didn't ask you that, sir.   If there
8   is a sealing order, do you think you can challenge it by
9   violating it?
10          MR. LERNER:   A sealing order is binding on the
11  court staff.
12          THE COURT:   You're just not going to answer my
13  question, are you?
14          Is it your position a sealing order can be
15  challenged by the party who is enjoined from violating it to
16  violate?
17          MR. LERNER:   As stated, the answer is no.
18  However --
19          THE COURT:   That's all I'm asking you.
20          MR. LERNER:   I would like to ask your Honor if
21  you've seen the government's letter of March 17th that was
22  directed to Judge Glasser which moves for the unsealing of the
23  docket.
24          THE COURT:   That's the one with the grid that
25  refers to certain documents, a chart or grid?

SS      OCR      CM      CRR      CSR

4

1          MR. KAMINSKY:   Yes, two letters that Mr. Roe did
2    not receive the grid that actually reveals what they are, but
3    received the overall argument in terms of what would be in the
4    grid.
5          THE COURT:   Yes, I've seen that.
6          Let me start with that.  I don't think you can do
7    that.  The circuit has entered an order.  It's on appeal.
8    Judge Glasser's decision is on appeal.  I don't think he has
9    jurisdiction to go ahead, modify now.  I'm sure if you want to
10   unseal certain documents and you have the agreement of
11   Mr. Doe's counsel and, Mr. Learner, I can't imagine why he
12   objects to any unsealing, do a consent motion to the circuit,
13   refer to me --  they may decide it themselves but the notion
14   suggested in a footnote in your letter Judge Glasser still has
15   jurisdiction to modify his orders that are on appeal, he'll
16   determine that ultimately.
17         MR. KAMINSKY:   That's fine.  It was important to
18   the government that it alert --
19         THE COURT:   Appear reasonable in saying certain
20   things don't have to be sealed?
21         MR. KAMINSKY:   Yes.
22         THE COURT:   I understand that.  You have to do it
23   the right way.
24         MR. KAMINSKY:   We appreciate that, your Honor.
25   It's certainly we take what you say to heart, also let you

SS          OCR          CM          CRR          CSR

5

1   know we did not cavalierly send the letter to whatever judge

2   was closest.  We talked about it and after our understanding

3   of how the case unfolded, we did think it was appropriate,

4   although certainly after speaking with Mr. Doe's counsel, we

5   understand there are arguments against that.

6          One of the reasons we forwarded to your Honor

7   yesterday our letter to the Second Circuit was a bit more of

8   an explanation as to why we did what we did.  Of course,

9   hopefully, now the Second Circuit and we would be happy if it

10  were the case, would tell us, the government to hold your

11  horses, you'll get to the unsealing when we say you do.

12          THE COURT:  As I say, I suspect without knowing if

13  everyone is consenting, the circuit will allow modification of

14  its order or Judge Glasser's order.  You're divested by the

15  notice of appeal if Judge Glasser's injunction and interim

16  injunction from the circuit.  I don't think there's power of

17  the district court to go ahead and decide that.

18          The other point I will dispose of quickly.  With

19  regard to Mr. Beys's argument, one of the things the circuit

20  intended me to do was to remedy or conduct hearings on prior

21  violations.  I don't see that at all.  That is not part of the

22  implementation directive I see from the circuit.  That I think

23  is not going to happen as to past violations until the circuit

24  resolves the appeal.  If you feel differently, you want my

25  mandate to be expanded, you could make a motion to the circuit

SS      OCR      CM      CRR      CSR

6

1   to do that and the circuit will determine that how far it

2   thinks best.

3           Mr. Beys?

4           MR. BEYS:    Nothing, thank you.

5           THE COURT:    With regard to Mr. Lerner's

6   application, there are two problems.  Number one, still much

7   too amorphous to lead me to any other conclusion you're

8   looking advisory opinions that could be used to gradually wear

9   away at the injunctive orders in place.  No need to bother to

10  deny that.  I will tell you it is sufficiently vague that I'm

11  unable to give you the advice you're looking for.

12          Mr. Roe says he's going to commence a lawsuit.  I

13  won't know whether it violates the injunction the circuit has

14  entered until he goes ahead and commences that lawsuit.  I

15  think there's a very good chance, depending on what he puts in

16  there, that it will.

17          There are numerous, very vague references to matters

18  in the public record.  Some of the public record, you tell me

19  matters are discussed.  They're not discussed.  The press

20  release, for example that was issued in 2000, at least the

21  copy I've been given does not refer by name to Mr. Doe at all,

22  anyone.

23          MR. LERNER:    It does.

24          THE COURT:    My copy doesn't.  I'll tell you, I've

25  been through it with a fine-toothed comb.  Maybe I have a

SS      OCR      CM      CRR      CSR

7

1   redacted copy.

2           MR. LERNER:   Footnote, if you're looking at the

3   press release, JA1153, footnote number 2 on the bottom of that

4   page.

5           THE COURT:   The press release had footnotes?

6           MR. KAMINSKY:   The government can concur with that

7   fact.

8           MR. BEYS:   As does Doe, your Honor.

9           MR. LERNER:   Doe's counsel agreed in their letter

10  that Roe has the knowledge in his letter that Roe may

11  disseminate documents that are already in the public domain.

12  Therefore, we would like a declaration by this court that he

13  may do so.

14          MR. BEYS:   We would object, Judge.

15          THE COURT:   I'm not doing that.   What you can do,

16  if you want me to make a ruling, to give me specifically the

17  documents that you say are in the public domain and then we'll

18  have a hearing as to whether everyone agrees those are in the

19  public domain.

20          MR. LERNER:   Your Honor, I provided the court with

21  the joint appendix with tabbed documents that we contend are

22  already in the public domain.

23          THE COURT:   Your request was not phrased just in

24  terms of distributing those documents.   It was phrased in

25  terms of extrapolating from it, allowed that possibility.   I'm

8

1   not going to allow you to extrapolate from that.  What you're

2   going to have to do, if you want any kind of advisory opinion

3   from me, is to get preclearance of exactly what it is you're

4   going to say.

5         What I suggest to you, you submit a chart.  The

6   chart has a left column of single-sentenced statements.  It

7   has a right column of where those statements are in the public

8   domain.  If that's the case, then I may approve that.

9         Mr. Beys, why would I not approve that?

10        MR. BEYS:  We would like the opportunity to speak

11  to the question of inadvertent disclosure.  What we said in

12  our papers, we don't think we can stop Mr. Roe from talking

13  about or disseminating what's already out there.  We could be

14  wrong.  The Second Circuit could have a different view of it

15  and, moreover, we would like the opportunity to brief the

16  issue of whether the government did it inadvertently 11 years

17  ago when it spent 13 years trying to conceal that fact.

18        THE COURT:  But if it's in the public domain, isn't

19  it already out there?

20        MR. BEYS:  Like I said, your Honor, we think that's

21  the case.  We wrote that.  We could be wrong.  But yes, it's

22  already out there, names Mr. Sater by name in one line.

23        THE COURT:  Right.  That's what I'm concerned about

24  the tone and nature of Mr. Learner's paper, that you will take

25  one small reference, combine it with other things you know

SS      OCR      CM      CRR      CSR

1    from documents that were not in the public domain and give

2    that public domain statement of a minor nature a whole new

3    life and that you will not be permitted to do.

4              I'll be glad to consider specific statements that

5    you wanted to make with sources and then I'll determine if you

6    can make those statements.

7              I also have to tell you, Mr. Learner, I thought your

8    papers were absurd.  It was like a comic book characterization

9    of what legal papers are supposed to look like.  When you have

10   Mr. Roe talking about engineering decompensation, I just can't

11   imagine any federal judge finding that the least bit

12   persuasive.  I'm looking for facts in here.  I've got an

13   affidavit, reads similarly to some of the pro se affidavits I

14   get.  I don't understand what you're trying to achieve.

15             Is this the way you write in all your cases?

16             MR. LERNER:   This is not an ordinary case.  We felt

17   it was warranted.

18             THE COURT:   I think it's not.  No case is ordinary.

19   Every case is entitled to particular special attention and

20   effective advocacy is effective advocacy no matter what the

21   context is.  If you want to get to me, at least, or any other

22   judge that's going to touch this case, let's do legal papers

23   the way legal papers are normally done, not like a comic book.

24             Anything further?

25             MR. BEYS:   One question.  This is what I meant to

1   ask before, your Honor.  Regarding our contempt motion, in

2   addition to writing to the Second Circuit for clarification,

3   would your Honor have a problem with us bringing an order to

4   show cause to Judge Glasser who does still retain jurisdiction

5   over the underlying case?  We believe, as we've written --

6           THE COURT:   Don't you want to wait for the circuit

7   to affirm or reject those injunctions?

8           Why do you need to do that now?

9           MR. BEYS:   For one reason, your Honor.  There is a

10  statement that he's going to file a lawsuit in state court.

11          THE COURT:   That won't be addressed.  If he does

12  that and he has to be put in jail because he does something

13  like that, that will not be addressed by your order to show

14  cause for past violations.

15          MR. BEYS:   That's true.  That is our one concern.

16          THE COURT:   As I said, I'm not advisory opinions.

17  The next thing Mr. Roe may hear from me is why he shouldn't be

18  put in the MDC for violating the Second Circuit's injunction.

19  That's all there is to it.  There's nothing more that we can

20  do at this point.

21          MR. BEYS:   Thank you.

22          THE COURT:   I will tell you, Mr. Learner, the

23  threats, they fall on deaf ears.  I have no investment in this

24  case.  If Mr. Roe doesn't violate the injunction, I don't have

25  anything to do.  If he does, I have something to do.  That's

SS      OCR      CM      CRR      CSR

1  it.

2          Anything else?

3          MR. BEYS:   No, your Honor, thank you.

4          THE COURT:   Mr. Kaminsky?

5          MR. KAMINSKY:   Very briefly.  The Second Circuit

6  mandate does specifically entrust your Honor with enforcing

7  the district court's orders.  One such order that still has

8  not been complied with -- it is baffling -- they still

9  maintain the very orders that are subject to the injunction

10 and the TRO.  The case that was handed up to your Honor

11 earlier before by Mr. Beys, the in re contempt proceedings of

12 Gerald Crawford, specifically state that a litigant does not

13 have the ability to say "I'm going to violate the order, hold

14 on to this stuff and wait for the circuit to prove I'm right."

15 He must hand over and/or place those documents in some type of

16 transitory place and wait for the circuit to rule, but he

17 still has them, in direct contravention of the court's order

18 saying give them back, give them to the U.S. Attorney's

19 Office.  No one gave anything.

20         THE COURT:  The directive to give them back is in

21 Judge Glasser's order, not the circuit, right?

22         MR. KAMINSKY:   Right.

23         MR. LERNER:   I would like to object to that

24 statement, your Honor.  There is no order directing the

25 destruction of electronic copies or return of photocopies.

SS      OCR      CM      CRR      CSR

1   The original that was provided to Mr. Roe by Mr. Bernstein,

2   lawfully, at that, was handed up to court.  It is in the

3   court's possession.  It was stated at the hearings that the

4   original has been returned.  Therefore, there is no further

5   original to be returned and there are only electronic copies.

6          THE COURT:   Mr. Kaminsky, quote for me the portion

7   of the order upon which you are relying.  Direct me to that.

8          MR. KAMINSKY:   The Second Circuit mandate of yours

9   or Judge Glasser's order to them?

10         THE COURT:   I assume you will agree with me the

11  Second Circuit's order in and of itself does not require the

12  return of either originals or copies, right?  It incorporates

13  Judge Glasser's orders?

14         MR. KAMINSKY:   That's correct.  It says you have

15  the limited mandate of implementing and overseeing compliance

16  with our orders and the previous orders entered by Judge

17  Glasser.  That's a quote.  One of those orders, your Honor,

18  because I'm currently immersed in drafting the appeal, I have

19  two hearings singed into my head and at the end of the

20  July 20th proceeding, Mr. Doe's counsel at the time,

21  Ms. Moore, says specifically to Judge Glasser we would like

22  you to include in the TRO copies of the documents because

23  although Mr. Roe is telling you he's given them back to you,

24  what good is that if he has the copies?  The judge said I

25  agree.  Mr. Learner's response is are you issuing a further

SS      OCR      CM      CRR      CSR

1  TRO?  The judge says I am.

2          THE COURT:  I need to see that.  I'm sure you're

3  not misrepresenting that but I need to see it.

4          MR. LERNER:  There's no specific directive by the

5  court --

6          THE COURT:  I'll look at it and then I'll see.

7          MR. BEYS:  If the government doesn't submit it,

8  we'll gladly submit it to your Honor.

9          THE COURT:  Does anybody have it here?

10          MR. BEYS:  We don't have the transcript here.  We

11  have a joint appendix.

12          MR. KAMINSKY:  I point you to, beginning on line 4

13  of page 706 of the transcript.

14          THE COURT:  Mr. Learner, you want to respond to

15  what the transcript says?

16          MR. LERNER:  May I take my copy?

17          THE COURT:  Sure.  That's our copy but you can look

18  at ours or we can trade, whichever you prefer.

19          (Pause.)

20          MR. LERNER:  Page 706 of the joint appendix?

21          THE COURT:  Correct, line 4.

22          (Pause.)

23          MR. LERNER:  There's no specific directive by Judge

24  Glasser to destroy the electronic copies of the document and

25  there's been no dissemination of the document.  Therefore,

16

1   computer and access those documents, but solely resident on
2   the backup tapes.
3           Anything else?
4           (No response.)
5           THE COURT:    Thank you all.
6            This transcript is available to both sides if they
7   wish to order it.

SS      OCR     CM      CRR      CSR

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

CAPTION:

United States of America v.

"John Doe"

**CERTIFICATE OF SERVICE**
Docket Number: 98 CIV 1101 (ILG)

I, _____ Judy C. Selmeci _____, hereby certify under penalty of perjury that on ___ March 12, 2012 ___, I served a copy of ___ Declaration of Coleen Friel Middleton in Opposition to John Doe's Motion for Civil Contempt, Memorandum of Law Submitted on Behalf of Richard E. Lerner in Opposition to John Doe's Motion for Civil Contempt, and in Support of Relief Pursuant to Rule 11 and Local Rule 83.6, Jury Demand, Proposed Subpoena List and Subpoenas ___

By (select all applicable)*

☐ United States Mail
☐ Federal Express
☐ Overnight Mail
☐ Facsimile
☒ E-mail
☐ Hand delivery

On the following parties (complete all information and add additional pages as necessary):

| Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| Todd Kaminsky, Esq. | 271 Cadman Plaza | Brooklyn | NY | 11201 |
| Beys, Stein & Mobargha | 405 Lexington Ave, 7th Fl. | NY | NY | 10174 |
| Frederick M. Oberlander | 28 Sycamore Lane | Montauk | NY | 11954 |

March 12, 2012
Today's Date                          Signature

*If different methods of service have been used on different parties, please indicate on a separate page, the type of service used for each respective party.
Certificate of Service Form

4564804v.1