# EXHIBIT 1

# The Miami Herald

Posted on Sun, Jul. 01, 2012

## Trump tower promoter's criminal record was concealed by feds

By Michael Sallah
msallah@MiamiHerald.com


Felix Sater
Handout / Photo

When Felix Sater and his partners launched a plan to put up a Trump tower in Fort Lauderdale — luring scores of investors — he had already been charged in an explosive securities scam with New York mob figures.

He had pleaded guilty and was awaiting sentencing in the $40 million swindle.

But investors in the Trump tower never knew.

Sater had already been prosecuted in secret — his arrest records shut down and every trace of his role in the New York stock scandal stripped from public view.

Now with the collapse of the posh Trump resort, lawyers are fighting to expose the background of the 46-year-old man who they allege stole millions from investors while he was given sweeping protections by prosecutors.

Sater is accused in a civil racketeering case of helping to hide millions from the failed Fort Lauderdale project — while paying $1.5 million to a former Mafia associate for his role in the deal.

In a rare move, lawyers are asking the U.S. Supreme Court to intercede in a bitter debate over the practice of concealing criminal cases from the public.

For now, Sater — an FBI informant who owns a $4.8 million Fisher Island condo — has become the poster boy of the fight over whether judges have the power to bury all traces of someone's criminal history.

One former judge complained to top members of Congress, while others have jumped into the heated legal dispute.

"It raises very serious questions about our judicial system," said Paul Cassell, a former federal judge who joined in an appeal of the case last year.

With tempers flaring, the judge overseeing Sater's criminal case blasted the lawyers suing Sater, saying they had no business inserting secret information about his crime case into their lawsuit.

The secret documents — leaked to the lawyers — showed that Sater had helped put away dangerous criminals for prosecutors.

At the same time, Florida investors argue they had a right to know of Sater's criminal past before plunking down millions into the plans he helped lead.

The Trump project, which sold at public auction in March, went broke two years ago amid accusations of bait-and-switch tactics and false advertising.

"They wouldn't have touched this deal," said Joe Altschul, a Fort Lauderdale attorney for 75 buyers in the failed venture. "It makes all the difference in whether you are going to invest."

The legal fight is the latest drama surrounding the New York businessman, who once traveled across the country scoping out sites for developments bearing Donald Trump's name.

Born in the former Soviet Union and raised in New York, Sater began his rise in financial circles as a young stock broker in the 1990s.

But his career took a wrong turn when he was arrested after getting into a bar fight where he stabbed another broker in the face with the stem of a shattered margarita glass.

After a stint in prison, he was released on parole. But he got into trouble again, this time in the stock fraud with members of the Genovese and Colombo crime families in 1998.

After pleading guilty to racketeering — and the case sealed — Sater went on to launch a new career in real estate that would take him across the country, including South Florida.

After he joined the Bayrock Group in New York as an executive in 2003, the firm unveiled a series of big developments, while licensing Trump's name.

They announced the stunning 24-story high-rise on Fort Lauderdale's beach that became one of the biggest condo-hotel deals in Florida.

The $200 million Trump International Hotel & Tower was touted as a draw for international tourism that would transform the popular beach.

There were other plans for Trump developments in New York and Phoenix, with Sater jetting to sites and interviewing with the media.

In a 2007 session with The New York Times, he boasted about the ventures, while admitting to mistakes "in my 20s," including the barroom brawl.

The newspaper also turned up tantalizing details, including two people charged in the New York stock case who said Sater helped the government in the war on terror by tracking down black market missiles.

But missing were details about Sater's guilty plea to racketeering in the New York boiler room and his arrangement with prosecutors.

Not until three years later did those details emerge with the civil racketeering suit filed by a finance director of Bayrock, targeting Trump tower and other ventures.

Among the disclosures: Sater had been cooperating with the feds against other suspects, among them crime syndicate soldiers.

Making matters worse, the lawsuit — and the secret details — were plastered on Courthouse News, a website that covers legal affairs.

It set off a reaction in the courts rarely seen, with one judge sealing the civil suit and another judge ordering a criminal probe of the lawyer who filed it, Fred Oberlander.

Prosecutors argued the lawsuit could have been filed without the sensitive witness information.

While the court reels over the leaks, burned investors are angry about another issue: the judge's decision to seal the racketeering charge — including Sater's sentence.

Altschul, the lawyer for dozens of Trump tower buyers, said investors were deprived of knowing a key member of the development team had been steeped in financial crime with the mob.

"Do you honestly think they are going to invest in a project when you tell them that one of the people happens to have been involved with the mob? That's insane," he said.

Not only is the issue before the Supreme Court, but motions have been filed — including one by The Miami Herald — with the court in Brooklyn to unseal the docket.

The practice of concealing cases is banned in the federal court circuit that includes Florida.

Cassell, the former federal judge in Utah and now a law professor, said he will continue to raise the issue before Congress. "To hide an entire case, it's [wrong]," he said.

"In my 5 1/2 years on the bench, I never buried a case. We're talking about victims who have a right to know what has happened in their case. You have a right to know the [defendant's] sentence in a case... It raises profound questions about how our judicial system is structured."

© 2012 Miami Herald Media Company. All Rights Reserved.
http://www.miamiherald.com