BEYS, STEIN & MOBARGHA LLP

Michael P. Beys
646.755.3605 (Direct)
mbeys@beysstein.com

September 25, 2012

**TO BE FILED UNDER SEAL**

**BY FACIMILE (718) 613-2236**

The Honorable Brian M. Cogan
United States District Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   12 MC 557 (BMC)
> Request to Supplement Order to Show Cause Based on
> Roe and Lerner's Recent Acts of Contempt

Dear Judge Cogan:

We respectfully submit this letter on behalf of John Doe ("Doe") to further supplement our Order to Show Cause Why Richard Roe ("Roe") and Richard Lerner ("Lerner") Should Not Be Held in Civil Contempt, dated February 10, 2012 ("Order to Show Cause"), based on their most recent contemptuous conduct. Roe and Lerner have discovered a new approach to systematically leak sealed information to the public. They are now using the unsealed docket in 12 MC 150 (ILG) before Judge Glasser, to publicly file letter briefs and affidavits which concern issues in 12 MC 557 (BMC), the sealed docket for contempt proceedings before this Court and Your Honor.

Recently, on September 21, 2012, both Roe and Lerner publicly filed two documents – namely, a Motion for Reconsideration by Roe and the accompanying Declaration of Richard Lerner (collectively, the "Motion for Reconsideration") – on the public docket of the 12 MC 150 (ILG) proceeding before Judge Glasser. *See* Ex. 1 & 2, respectively. However, their Motion for Reconsideration concerns *Your Honor's* August 16, 2012 order (the "August 16th Order") granting Wilson Elser's motion to withdraw as counsel in these contempt proceedings; it does not concern any order granted by Judge Glasser. *See* Ex. 1, ¶ 1 (referring to this Court's August 16th Order). Indeed, throughout their Motion, they even refer to "Your Honor" and "this Court," and specifically refer to Your Honor's August 16th Order. *See id.*, at ¶ 28 & 29. Accordingly,

The Chrysler Building, 405 Lexington Avenue, 7th Floor, New York, NY 10174
Main: 646.755.3600 • Fax: 646.755.3599
www.beysstein.com

September 25, 2012

proper procedural protocol – and common sense – dictates that they should have filed their Motion with this Court, under docket number 12 MC 557 (BMC), rather than with another court.

However, Roe and Lerner chose not to file their frivolous Motion with this Court because these proceedings are under seal. Lawfully filing submissions under seal do not serve Roe and Lerner's purposes. Instead, they are seeking to set a precedent to litigate the sealed issues in these contempt proceedings in a public forum. Their latest acts show that - in addition to not respecting the orders issued by courts – they do not even respect the actual Court that issued the orders. Instead, they are intentionally filing their frivolous Motion with the wrong court, hoping the outcome will be different. However, there is only one appropriate forum to file their Motion for Reconsideration of this Court's order and that is this Court.

Accordingly, we respectfully seek to supplement our Order to Show Cause to include Roe and Lerner's latest acts of contempt, and request that the Court order that all submissions relevant to 12 MC 557 (BMC) be filed *under seal* under that docket, and not under any other dockets, including but not limited to docket numbers 12 MC 150 (ILG) or 98 Cr 1101 (ILG).

Given the nature of this letter, we ask that it be filed under seal.

Respectfully Submitted,

Michael P. Beys
Beys, Stein & Mobargha LLP
*Counsel for John Doe*

cc:   The Honorable I. Leo Glasser

Coleen Middleton
Irving Hirsch
*Counsel for Richard Lerner*

Richard Roe

Stephen Green, Asst. U.S. Attorney, N.D.N.Y.

Todd Kaminsky, Asst. U.S. Attorney, E.D.N.Y.
Evan Norris, Asst. U.S. Attorney, E.D.N.Y.
Elizabeth Kramer, Asst. U.S. Attorney, E.D.N.Y.

2

# EXHIBIT 1

09-25-12;21:16 ;                    ;7186132236                    # 4/ 20
Case 1:02-mc-00705-BMC   Document 51   Filed 09/25/12   Page 4 of 21 PageID #: 658
Case 1:12-mc-00250-ILG   Document 54-1   Filed 09/21/12   Page 1 of 5 PageID #: 172

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| UNITED STATES | 98-CR-1101 |
|---|---|
| V. | **MOTION FOR RECONSIDERATION**<br>ORAL ARGUMENT REQUESTED |
| FELIX SATER | EVIDENTIARY HEARING REQUESTED |

I, Frederick M. Oberlander, submit this combined declaration and memorandum of law in support of my motion for reconsideration of this court's order of August 16, 2012, granting Richard Lerner and Wilson Elser leave to withdraw.

All statements and averments of fact I make herein are, unless otherwise stated to be on information and belief, true to the best of my personal knowledge, and I so state under penalty of perjury pursuant to 28 U.S.C. 1746 this date September 14, 2012.

Because the relevant facts are almost entirely within the knowledge of the affiant Richard E. Lerner and supplied in his affidavit (which he prepared denominated as a declaration) attached hereto, and the history of the case is well known to the court, and in view of the extreme informality that has been permitted to date in the filing of requests for orders, which technically are motions subject to FRCP 7.1, as "letter applications," I ask the court accept this combined format for judicial economy.

## ARGUMENT

1. As the court recognized, motion for leave to withdraw, here for permissive withdrawal, requires consideration of several factors.

2. Those factors include (i) whether there is a conflict, or the significant risk of a conflict; (ii) whether the client has given informed consent to such; (iii) whether the attorney reasonably believes he can continue to represent the client as required by the Rules in the face of the conflict or significant risk thereof; and (iv) the degree of hardship to the client which the withdrawal would cause. See Rule 1.17. mode

3. As a precondition to withdrawal, the attorney of record must seek leave of court if the court rules require it. That is, the attorney may not withdraw if, for example, there would be substantial hardship, but even if there were not substantial hardship, the attorney may not withdraw without leave of court.

4. Here, Local Rule 1.4 does indeed require the attorney of record seek leave.

5. Richard Lerner has always been the only attorney of record for me in all matters ever litigated in connection with Mr. Sater and his hidden conviction, in all courts, at all times.

6. According to his testimony in the attached affidavit, Mr. Lerner never moved to withdraw. Aff. 2.

7. According to his testimony, to the extent that motion to withdraw purports to speak in his behalf, it is unauthorized and he disavows it. Aff. 2 [second of two "2"'s].

8. According to his testimony, at all times, Mr. Lerner reasonably believed he could adequately represent me as required for him to remain. Aff. 3.

9. In my original opposition papers, I requested a hearing at which I would produce Mr. Lerner's parol testimony to exactly those points.

10. I requested a hearing rather than rely on affidavit because I wanted the "real time" protection of sidebar or in camera review. Aff. 63-67.

11. For example, whether I gave consent is a factual issue, and if so whether it was informed is a factual issue, and detailed testimony of the contents of discussions about such consent, even arguably summary written consent, are certainly confidential and possibly privileged and I wanted the ability during testimony to stop and ask for in camera review or protective order in the event such testimony would be necessary.

12. As another example, the presence of financial hardship would entail disclosure of information, including billing information, which again by definition is confidential.

13. I had no intention of, nor would it be an issue of, asking Mr. Lerner to justify why he felt that he could not represent me as he quite clearly never felt that way. But I point out that the court's concern for Mr. Lerner's possibly having to explain why there was a conflict, though clearly now seen as misplaced given the complete 180 degree error, still would, respectfully, not justify not holding hearings because (i) your honor yourself would retain control over the questioning, obviously; and (ii) as Mr. Lerner testifies, he himself is represented not only by Wilson Elser but by multiple outside counsels and is and would be well able to be protected by them against any adverse questioning, whether by objection or motions *in limine*. Aff. 62.

14. Therefore, with respect, the court committed error in stating that Mr. Lerner as well as Wilson Elser moved for leave to withdraw, as Mr. Lerner simply did not.

15. Therefore, with respect, the court committed error in inferring, as it said it did, from the presence and filing of Mr. Lerner's motion as well as Wilson Elser's motion that Mr. Lerner did not believe he could withdraw for the obvious reason that no such motion from Mr. Lerner was ever present or was ever filed, so no such inference was possible.

09-25-12;21:16 ;                                       ;718632336#    6/ 20
Case 1:12-mc-00725-BMG   Document 51   Filed 09/28/12   Page 6 of 21 PageID #: 666
Case 1:12-mc-00725-BMG   Document 54-1   Filed 09/21/12   Page 3 of 5 PageID #: 174

16. Moreover, as Mr. Lerner explains in his testimony, which is proper as he is testifying as a fact witness with expert knowledge of the applicable law and his subjective beliefs including as to what was required of him are relevant, the court's reasoning states a list of significant risks of Mr. Lerner's representation of me as to civil contempt charges in which he himself is at risk (again which are all consentable and have been consented, see infra), the court's reasoning does not state or explain why there are any risks at all, let alone significant risks, in his representing me on the First Amendment expression issues *sub judice* before Judge Glasser, which he has been doing without problem for years.

17. Mr. Lerner has no personal involvement in those issues other than as my counsel.

18. And as Mr. Lerner testifies, it would cost a fortune, into six figures, to replace him assuming that were even possible. This is a situation where it quite literally is pragmatically impossible to replace the attorney, at least on the multi-year First Amendment issues which have generated thousands of pages of filings in many courts. Aff. 7, 16, 37.

19. And with respect, the court apparently completely failed to reach or consider such hardship, which is necessarily one of the considerations that must be taken into account.

20. (That is related to the Local Rule 1.4 requirement that the court consider the disruptive effect of withdrawal, which at least as to the matters before Judge Glaser will engender months of delay for new counsel to catch up as well as the concomitant prejudicial cost, Glasser which are not complete; this is a factual issue for which evidence must be had.)

21. (In fact, as the Rules make clear, even where, unlike here, withdrawal is mandatory, still it cannot be done in the face of such prejudice.)

22. Significantly, Mr. Lerner continues to represent me before the Supreme Court of the United States on those same issues without problem.

23. In fact, this past July, another attorney at Wilson Elser, Mr. Hyland, attempted the same thing at the Supreme Court; that is, over Mr. Lerner's and my order not to do so, he and Ms. Middleton filed a motion for leave to withdraw, citing the same "conflict."

24. The Supreme Court refused to consider it and returned it back to Ms. Middleton.

25. **The Supreme Court informed Ms. Middlteon (and me) that its reason for rejecting it without consideration was that nothing as to withdrawal, whether motion or even simple notice of withdrawal without requesting leave, would be considered, ever, without Mr. Lerner's personal signature as attorney of record, that, no matter what, if he himself had not moved or noticed by his own hand then nothing anyone else at the firm did would have legal significance. Aff. 8.**

26. (The Supreme Court notified Ms. Middleton and me, at separate times, by telephone, so there is no written rejection to attach as evidence; again, if there are communications from Wilson Elser to me documenting that, respectfully, they are attorney client privileged, not the information about the rejection per se but the fact of the communication, another example of the need for real-time hearing and in camera review.

27. Clearly as that sets the law of the case in the matter, Ms. Middleton should have so informed you. She did not. I ask you draw your own conclusions.

28. But importantly, I ask you note that Mr. Lerner, attorney of record, never submitted an affidavit in the motion to withdraw as required by Local Rule 1.4, not surprising given that it wasn't his motion to begin with and completely consistent with this motion for reconsideration insofar as it argues, and with his testimony, that he never moved.

29. Moreover, with respect, the court has committed error in its interpretation of Model Rule 1.10 governing imputation to the firm. Rule 1.10(b)(1) specifically provides that the other lawyers in the firm are not prohibited from representation when one lawyer is if that one lawyer's probation is based on a personal interest. The court was in error in considering the "screening" provision of Rule 1.10(b)(2), which is inapplicable as it covers only prohibitions based on representation of former clients, not the case here.

30. In fact, respectfully, the court's own reasoning proves the lack of imputation, as the court itself noted on its final page that "the conflict is Lerner's" which is the exact definition of the exception under 1.9(b)(1), viz. exempting from imputation issues personal to the affected lawyer, as a pending criminal charge obviously is, per se.

31. Also note that while much procedure can be avoided by the simple expedient of a new notice of appearance by Mr. Lerner, as he gave recently in 12-MC-1250 when Ms. Middleton tried the same thing there, to withdraw without authority, that would still leave behind this court's finding on the record that Mr. Lerner did not believe he could represent me and did move for leave to withdraw which creates a difficult situation for all given that it would follow that he continued to represent me all this time while believing that he could not, or that he lied when he said he could, and either is unfair to him and to me and for that reason alone the order should be voided as made in error.

32. I have given informed consent to Mr. Lerner, as he testified, as to all risks contemplated by your order as well as all other risks we thought of. Aff. 5, 52, 65

33. Mr. Lerner has accepted my consent as informed. Aff. 6, 52, 65.

34. Therefore I ask the following relief, in the alternate:

09-25-12;21:16 ;                    ;7186132236                                # 8/ 20

Case 1:16-mc-00706-BMC   Document 51   Filed 09/28/12   Page 8 of 21 PageID #: 662
Case 1:12-mc-00706-RMC   Document 54-1   Filed 09/21/12   Page 5 of 5 PageID #: 176

35. **First**, procedurally, I ask your honor hold open this filing. To be clear, subsequent to my request to enlarge time for reconsideration to the 14th, Judge Glasser requested substantially similar briefing on the above issues by the 21st. I sent this court by ECF an amended request for further enlargement to the 21st to coincide with the filings due before Judge Glasser for judicial economy. The court has not ruled on that request; perhaps it was overlooked (it is docket number 205). I should like the ability to withdraw and replace, or supplement by then.

36. (On that note, I ask the court note that a normal 14-day opposition period to this motion followed by a 7-day reply period would make the paperwork submission date October 5, 2012. That is three days after the October 2, 2012 hearing date for the unsealing of the contents of docket 98-CR 1101. It is quite likely that depending on the results of that hearing so much of the procedural and substantive posture of the matter may have changed that supplementation may be appropriate on all sides.)

37. **Second**, substantively, I request relief in the form of vacatur of the August 16 order based on Mr. Lerner's affidavit or; in the alternative, that the court schedule an evidentiary hearing to confirm the factual issues of risk of conflict, attorney belief, and client consent.

38. **Finally**, I respectfully object to the court's exercise of authority as to granting leave to withdraw of matters before another judge (Judge Glasser), and so I request that in granting or denying the reconsideration requested the court consider those proceedings separately from the civil contempt proceedings; for example by considering the presence or absence of attorney belief, risk or presence of conflict, and informed consent separately as to each matter. Again I note the court never explained how there might be conflicts on purely First Amendment issues before Judge Glasser, thus by definition thre could have been no adequate showing as required by Local Rule 1.4 at least as to those proceedings.


Respectfully submitted,

September 14, 2012

/s/ Frederick M. Oberlander

# EXHIBIT 2

09-25-12;21:16 ;

Case 1:16-mc-00706-BMC Document 54-2 Filed 09/28/12 Page 10 of 21 PageID #: 66 # 10/ 20
Case 1:16-mc-00706-BMC Document 54-2 Filed 09/21/12 Page 1 of 11 PageID #: 177

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES<br><br>V.<br><br>FELIX SATER | **DECLARATION OF**<br>**RICHARD E. LERNER**<br>**PURSUANT TO 28 U.S.C 1746** |

I, Richard E. Lerner, declare under penalty of perjury, pursuant to 28 U.S.C. 1746 as follows.

1. I am a member of the firm of Wilson, Elser, Moskowitz, Edelman & Dicker LLP. The following statements of fact are based upon personal knowledge. I submit this declaration in connection with Mr. Oberlander's motion for reconsideration of that certain order of this court dated August 16, 2012 granting Wilson Elser leave to withdraw from Mr. Oberlander's representation in 98-CR-1101.

**SUMMARY**

2. I myself did not move for leave to withdraw. No one moved in my behalf. Local Rule 1.4 provides that only counsel of record may so move. The signatory on the motion to withdraw was not counsel of record.

2. The order of August 16th infers that I do not believe I can represent Mr. Oberlander in certain matters, or at least did not believe I could when I **supposedly** moved for leave to withdraw. It states that that inference is made from **"my"** motion for leave, which would not have been filed, the court surmised, if I had believed I could represent him as required.

3. Since I did not file that or any such motion, and disavow that said motion speaks for me in any way, the court's inference cannot stand.

4. I now and have always throughout believed that I can represent Mr. Oberlander in each and every matter – other than a purely criminal contempt proceeding (should one ever arise) – that has presented itself to date or is likely to arise, regardless of any conflict known to me, either real or potential, likely or remote.

5. Mr. Oberlander has notified me of his consent to any real or potential conflict as might occur as and to the extent such were set forth in your honor's order of April 16th or in Wilson Elser's motion and also such other risks as we may have discussed together.

09-25-12;21:16; 17186132236 # 11/ 20

Case 1:16-mc-00706-BMC Document 51 Filed 09/28/12 Page 11 of 21 PageID #: 665
Case 1:16-mc-00706-BMC Document 54-2 Filed 09/21/12 Page 2 of 11 PageID #: 178

6. I know Mr. Oberlander to be well educated in the law and well able to exercise his right of informed consent to any such conflict, should he choose to do so. I accept it based on those discussions with him (detailed contents of which are subject to confidentiality) that he has given such consent meaningfully and with full knowledge.

7. Having expertise in this and related matters, I believe that it would be virtually impossible for Mr. Oberlander to replace me as to the very many matters *sub judice*, and, even if he could, the cost would be prohibitive, easily $150,000 just for new attorneys to catch-up. I believe this would be substantial hardship and prejudice for him.

8. Finally, I note that Wilson Elser (not me) moved to withdraw at the U.S. Supreme Court. That Court rejected Wilson Elser's papers. I remain counsel of record at the U.S. Supreme Court.

9. Obviously, if I can represent Mr. Oberlander ably at the U.S. Supreme Court, I can represent him ably in the EDNY. It is my understanding that the U.S. Supreme Court rejected the papers because they were not signed by me, as counsel of record. Their rule is the same as the EDNY's. Only attorneys of record may move to withdraw as counsel.

## AVERMENTS OF FACT

10. I am an accomplished litigator with over 20-years' experience and roughly 600 reported decisions entered in cases where I have been attorney of record or appellate counsel.

11. I am well experienced in professional liability, including professional negligence, misconduct, and breach of fiduciary duty, and I am well familiar with the substantive provisions of those aspects of the law, including for example and without limitation issues of breach of attorneys' fiduciary duties, for example actual or constructive abandonment.

12. At the outset of this affidavit I state my discomfort with the confusion between "matter" and "docket" in this entire set of related adjudications involving Mr. Oberlander's insistence on his right to disclose what he claims is the illegally hidden conviction and illegal sentence of Felix Sater.

13. For example, I first appeared as attorney of record for Mr. Oberlander on June 11, 2010, when I argued before Judge Glasser in his behalf in a civil show cause hearing docketed on *United States v. Felix Sater*, 98-CR-1101, though by my knowledge of litigation I know that docketing was improper as Mr. Sater's criminal case had closed and the civil relief he sought should have been placed on a *de novo* civil docket.

14. I believe that it was docketed on 98-CR-1101 to take advantage of the pre-existing decade of its concealment in secrecy that is now a matter of public knowledge.

15. Since that time I have appeared as attorney of record for Mr. Oberlander in numerous related matters which have been docketed on, *inter alia*, 98-CR-1101 and 12-MC-150 in the Eastern District, 10-2905 in the Second Circuit Court of Appeals, and 12-112 in the Supreme Court of the United States. (I omit a more exhaustive list for convenience.)

16. I am well familiar with this multi-tracked litigation, wherein I have appeared in many related matters, even though many have been lumped together on one docket, and many have not. New counsel would, I submit, have to spend a great deal of time trying to make heads and tails of it all.

17. For example, there are, or were, very many separate dockets in the Second Circuit, one corresponding to each separate notice of appeal or motion for extraordinary writ that I filed in Mr. Oberlander's behalf. Yet I know that they were substantially all related, as did the Second Circuit, which consolidated them for convenience, or rather heard them all together (to the extent not moot) and issued one opinion as to all of them.

18. On the other hand, I also know, based on my professional expertise, that a motion for civil contempt based on an alleged violation in 2012 of an order of an appellate court issued in 2011 should not be heard in a district court at all, absent a limited order of reference for fact-finding, and (even if it should be) it should not be heard on the docket of one party's long-dead criminal case from 1998. Again, new counsel will have a very hard time making sense of it, I believe, for there is no sense to it.

19. I state these facts which include my knowledge of the applicable law to make clear that my following testimony as to the withdrawal issues is broken down by matter, as I and the bar normally understand it, and not by docket number, where (as here) there is no reason for everything to have been dumped into one old, dead docket.

20. This is important as I will be testifying as to my ability to represent Mr. Oberlander and that representation has involved (i) his First Amendment right to disseminate the contents of documents; (ii) his First Amendment right to access the contents of the docket(s) in various cases under seal, lawful or not; and (iii) his defense to civil contempt.

27. On or about February 15, 2011 your honor was selected by then-Chief Judge Dearie pursuant to a remand by the Second Circuit to monitor compliance with its orders.

28. On or about May 30, 2011, Mr. Sater filed a "letter" with your honor demanding that Mr. Oberlander be "investigated" for civil contempt in connection with a story that appeared in an online publication of *Newsweek*. Although no hearings took place, they were scheduled and I would have appeared as his attorney of record in those as well, but in any event I represented him in that "contempt" matter (or whatever it should be called) and so have a history of representing him in contempt issues and am well familiar with the substantive and procedural law of it.

29. On or about February 15, 2012 this court approved Mr. Sater's application for an Order to Show Cause as to certain allegations of civil contempt against me and Mr. Oberlander.

30. On February 27, 2012 I appeared as attorney of record for Mr. Oberlander in that matter; however, this is true only because your honor insisted on docketing it (or rather secretly docketing it) and maintaining that civil contempt matter on 98-CR-1101 despite multiple requests from me and Mr. Oberlander to create a separate docket for it.

31. Indeed your honor indicated, in sum and substance, that the reason for doing so was to take advantage of the (alleged) pre-existing secrecy dating back to (allegedly) 1998, so that individual determinations would not have to be made. They could just be piggy-backed on of sealing, but could just essentially piggy back Judge Glasser's (alleged) perpetual blanket sealing order.

32. And to illustrate the point, I attach hereto a copy of the PACER listing for a certain docket, 12-MC-0557, created on August 22, 2012 and clearly contemplated as the docket for civil contempt proceedings between Mr. Sater and me and Mr. Oberlander (I presume the pseudonym use is because it was created before Judge Glasser unsealed the docket in 98-CR-1101).

33. Whether or not the court was within its good discretion in refusing to open a separate docket, the fact remains (again based on my belief based on my understanding of litigation) that at a minimum your honor certainly could have done so.

34. As of that date, February 27, 2012, there were, and remain pending matters *sub judice* before Judge Glasser in 98-CR-1101 that relate back to my initial appearance in June 2010 and are in respect of Mr. Oberlander's First Amendment freedom of expression claims; see Averment 11.

35. Those matters remain *sub judice*.

36. I am not personally involved in those matters; that is to say, unlike the contempt claims against me and Mr. Oberlander that Mr. Sater brought on and after February

15, 2012, I am not involved as a party or non-party respondent in those matters, which involve occurrences prior to February 14, 2011.

37. As noted above, I estimate (based on my knowledge of the case and my professional knowledge in general) that it would cost approximately $150,000 in fees for Mr. Oberlander to have to replace me in those matters, given the length of the case and its many, many documents and significant legal complexity.

38. I know professionally, based on my expertise, that the law requires any withdrawal, certainly a permissive withdrawal, to be done where possible to the absence of prejudice to the client, which prejudice, including financial, is a key factor in the consideration whether withdrawal can be permitted.

39. I now can explain the importance of noting the docketing mashup in my earlier testimony.

40. When I said above that I appeared as attorney of record for Mr. Oberlander in the contempt hearing, as a matter of court procedure I was already technically attorney of record because of the docketing on the existing 98-CR-1101.

41. Thus, from the standpoint of what I know professionally to be standard litigation practice, had the contempt matter been separately docketed, I would have been making a new appearance as attorney of record on that new docket which would have been reflected on PACER as such.

42. But, based on what has gone on here with the mashup docketing, because I was already attorney of record on docket 98-CR-1101, from the standpoint of the docket itself, I was already attorney of record for everything docketed on it.

43. But from the standpoint of litigation practice, I newly became attorney of record on a matter placed on a docket on which I was already attorney of record.

44. So from my standpoint, it could make no difference as to docketing; had this contempt matter been on a separate docket, then indeed I would have become attorney of record on two matters on two dockets. But mashed up as it was, I became attorney of record on two matters on one docket.

45. But that doesn't change the issues for me as to conflict. And that of course is factual matter, as the burden is on me to determine whether I can represent Mr. Oberlander in the face of purported conflict and depends on my personal belief, a question of fact.

46. And that obviously depends on the matter(s), as I testified, so it is not possible for me to testify whether I believe I could represent him as to "docket 98-cr-1101" as it would require me to express an opinion about multiple matters at once. In the alternative I could only answer in matter-by-matter fashion, notwithstanding how many dockets, one or more, the matters spread across.

09-25-12;21:16 ; 17186132236 ; 16/ 20

Case 1:16-mc-00706-BMC Document 51 Filed 09/28/12 Page 16 of 21 PageID #: 670
Case 1:16-mc-00706-BMC Document 51-2 Filed 09/21/12 Page 7 of 11 PageID #: 183

47. However, your honor granted leave to withdraw on "docket 98-cr-1101." Thus, assuming my firm followed through and withdrew, that would strand Mr. Oberlander without counsel on both the First Amendment freedom of expression issues sub judice before Judge Glasser, and also the civil contempt matter.

48. Yet your honor did not discuss at all in your order how it could be imagined that there was substantial risk of any serious problem in my representing Mr. Oberlander on the First Amendment issues.

49. Thus to my understanding of my ethics requirements here, I must be very clear in my testimony that I believe the issues of conflict, consent, etc. as discussed herein and in your order cannot be ethically addressed by me "on the docket as a whole."

50. And for emphasis, noting that it is obvious from the face of the order, that your honor failed to state any factual basis for finding the existence of real or potential risks as to the First Amendment matters.

51. That is clear from the face of the order.

52. I wish to state with clarity that I reasonably believe I can represent Mr. Oberlander on all matters involved, those before Judge Glasser and those before your honor, and not only has Mr. Oberlander personally given me his informed consent which I know to have been informed based on my (privileged and confidential) discussions with him.

53. And for final emphasis, as an expert in litigation, I believe it would be ludicrous to say that whether or not there is leave to withdraw on the First Amendment matters before Judge Glasser depends on whether or not there is leave to withdraw on contempt matters before you.

54. But that seems to be what happened here, by your decision to order leave to withdraw by docket and not by matter.

55. (I note that Judge Glasser has stated that because your honor allowed withdrawal expressly on 98-CR-1101 but not the unsealing docket 12-MC-150, that I continue to represent Mr. Oberlander on 12-MC-150. As Judge Glasser noted, it is quite common for attorneys to have a conflict in one aspect of a case and not another, and your honor can certainly see that had Judge Glasser simply heard the unsealing motion on 98-CR-1101 without making a new docket for it, rather than make the new docket, should not determine whether or not there was a conflict in that representation.

56. In any event, on February 27, 2012, Mr. Oberlander appeared as attorney of record for me, in my behalf, as he explained to the court as a prophylaxis to prevent my inadvertently "testifying" and later being accused of somehow waiving a Fifth Amendment privilege.

57. On or about March 1, 2012, Mr. Oberlander and I had a discussion as to matters directly relevant hereto which I cannot reveal absent a protective order after first disclosing them in camera and I must first seek leave to do that; however I can testify that those matters are immediately relevant to proof of what I state below.

58. On March 5, 2012, I appeared again in Mr. Oberlander's behalf as attorney of record in the second hearing related to contempt issues, at which time Coleen Middleton, of counsel to Wilson Elser, appeared as attorney of record in *my* behalf in my capacity as a non-party respondent and alleged contemnor, and for no other purpose, and Mr. Oberlander then promptly consented to the substitution relieving him as attorney of record for me in that exact same capacity.

59. On March 10, 2012, Coleen Middleton filed a motion for leave to permissively withdraw from representing Mr. Oberlander. As stated, Ms. Middleton never herself was attorney of record for Mr. Oberlander. Only an attorney of record may file a motion to withdraw as counsel, per Local Rule 1.4.

60. On March 10, 2012 Mr. Oberlander opposed the motion and requested an evidentiary hearing at which, he said that he would produce my parol testimony that I reasonably believed that there was no conflict, or if there was any conflict that it was consentable by him and that I reasonably believed I could continue to represent Mr. Oberlander in every matter but the criminal contempt. This specifically included the civil contempt. I again note that I had successfully represented him in the earlier, May 2011 civil contempt matter.

61. Mr. Oberlander was able to make that proffer because I had previously confirmed that, if called as a witness at a formal evidentiary hearing, that I would testify that there is no conflict, and – to repeat – that I had always believed, still believed, and continue to believe that I could reasonably represent him, assuming he gave informed consent to any conflict that was determined to exist.

62. In the prior paragraphs, when I state that I reasonably believed all this, I state so both subjectively and objectively. I have been for some time, including at those times referenced, represented individually, personally, by my own counsel, not Wilson Elser but completely separate counsel, with whom Mr. Oberlander has had no contact directly or indirectly. So notwithstanding that I am a lawyer and expert litigator, I am also independently represented and have always been able to obtain such advice as I wanted even completely independently of my firm. So the court may assume I have had ample opportunity to review my beliefs with objective experts.

09-25-12;21:16 ;# 18/ 20

Case 1:12-mc-00706-RMC Document 51-2 Filed 09/21/12 Page 18 of 21 PageID #: 672
Case 1:12-mc-00706-RMC Document 51-2 Filed 09/21/12 Page 9 of 11 PageID #: 185

63. I told Mr. Oberlander it was my preference that I testify by parol, rather than affidavit, form, for reasons including the ability to obtain immediate rulings from the bench and in camera review in the event the underlying reasons for my opinions stated above as to my ability to represent him would require or threaten the disclosure of privileged information or, more generally, confidential information.

64. Mr. Oberlander, pro se, would be calling me. That is he would be calling me not as a client asking legal advice, but seeking fact testimony. He told me that he would himself prefer to call me to the stand because sworn testimony subject to cross-examination has greater probative value than an affidavit.

65. Mr. Oberlander and I obviously have had discussions on my thoughts about my continuing to represent him; I have stated above in summary that they resulted in what I am satisfied is a knowing, informed consent by Mr. Oberlander to all risks we could think of, including without limitation all risks stated in your order.

66. However, I know that I cannot disclose the contents of such without protective order and even then must ethically request in camera ex parte discussion because confidential information would be revealed.

67. So I ...... .. ..... .. ..... ..... ..... ..... .... .... Oberlander that I wished to testify in person, and he told me he wanted that, he also asked for an affidavit but we agreed that it would be better to do live testimony so there could be real-time protection available for disclosure of his confidential material.

68. I presumed that a hearing would take place and that I was safe in protecting Mr. Oberlander from the wrongful removal of his counsel by awaiting it rather than supplying an affidavit, which would almost surely result in a hearing anyway.

69. Finally, I knew as a matter of law, for again I am aware of the law in this field quite well, that only a motion for leave to withdraw signed by the attorney of record could have legal significance.

**Sworn to this date under penalty of perjury in accord with 18 USC 1746:**

Richard E. Lerner

09-25-12;21:16 ; 17186132236 # 19/ 20

Case 1:16-mc-00796-BMC Document 51-2 Filed 09/24/12 Page 18 of 21 PageID #: 673
Case 1:16-mc-00796-BMC Document 51-2 Filed 09/24/12 Page 18 of 11 PageID #: 186

**U.S. District Court**
**Eastern District of New York (Brooklyn)**
**CIVIL DOCKET FOR CASE #: 1:12-mc-00557-BMC**

John Doe v. Richard Roe et al                    Date Filed: 08/22/2012
Assigned to: Judge Brian M. Cogan                Jury Demand: None

**Petitioner**

**John Doe**                    represented by    **Michael Beys**
                                                  Beys, Stein & Mobargha LLP
                                                  405 Lexington Avenue
                                                  7th Floor
                                                  New York, NY 10174
                                                  646 755-3600
                                                  Fax: 646 755-3599
                                                  Email: mbeys@bsmlegal.net
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

                                                  **Nader Mobargha**
                                                  Beys, Stein & Mobargha LLP
                                                  The Chrysler Building
                                                  405 Lexington Avenue
                                                  7th Floor
                                                  New York, NY 10174
                                                  212-387-8200
                                                  Fax: 646-755-3599
                                                  Email: nmobargha@bsmlegal.net
                                                  *LEAD ATTORNEY*
                                                  *ATTORNEY TO BE NOTICED*

V.

**Respondent**

**Richard Roe**

**Respondent**

**Richard E. Lerner**          represented by    **Coleen F Middleton**
                                                  WILSON, ELSER, MOSKOWITZ,
                                                  EDELMAN & DICKER LLP
                                                  3 Gannett Drive
                                                  White Plains, NY 101604

(914) 872-7778
Email:
Coleen.middleton@wilsonelser.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Interested Party**

U.S.A.                              represented by     **Elizabeth Jane Kramer**
United States Attorneys Office
Eastern District Of New York
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6304
Fax: 718-254-6076
Email: elizabeth.kramer@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen Charles Green**
United States Attorney's Office for
the Northern Distri
100 South Clinton Street
Syracuse, NY 13261
315-448-0672
Fax: 315-448-0658
Email: stephen.green@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Todd Kaminsky**
United States Attorneys Office
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6367
Fax: 718-254-6481
Email: todd.kaminsky@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Proceedings for case 1:12-mc-00557-BMC are not available**