LAW OFFICE OF FREDERICK M. OBERLANDER P.C.

**FREDERICK M. OBERLANDER**  28 SYCAMORE LANE (PO BOX 1870)
ATTORNEY-AT-LAW  MONTAUK, NEW YORK 11954
 TELEPHONE 212.826.0357
Fred55@aol.com  FAX 212.202.7624

May 21, 2013

Hon. Brian M. Cogan
Federal District Judge  **Immediate Unsealing Requested**

Eastern District of New York
Cadman Plaza
Brooklyn, New York

Re: Letter of May 17, 2013 in re 12-MC-557

Dear Judge Cogan:

Notwithstanding the improper form of the "letter petition" filed, and with reservation of our rights to object at length in opposition papers that would be filed in response to a proper filing, we respectfully deny your subject matter jurisdiction to entertain the requested Order to Show Cause for Civil Contempt for reasons including (1) absence of any enforceable order prohibiting the alleged conduct; (2) the absence of constitutional authority to purport to adjudicate the validity of state court filings, or federal district court filings, made in other fora; (3) the lack of proper form required by an order you lack the authority to suspend; (4) Sater's attempt to have prosecution for criminal contempt and the due process violation of adjudicating civil contempt first; and (5) the lack of authority to adjudicate the contempt of any other court's orders, especially those of a Court of Appeal, notwithstanding any purported delegation thereof by the Second Circuit, as only Congress can expand the authority of a federal district court.

We also request you open to public access all documents in this instant filing, and all other documents that have been filed before on this docket and in this matter and on the docket of 98-CR-1101 at your direction, insofar as (1) civil contempt proceedings must be held in open court and provide the same Sixth Amendment protection as any criminal trial; (2) there is no lawful reason for secrecy; and (3) as is now law of the case with preclusive collateral estoppel effect, *there was never any lawful reason for secrecy because Sater's conviction and cooperation were matters of public record for years before this matter started, made so by Judge Glasser himself*. We address this first.

1

# SEALING, SECRECY, AND PRIOR RESTRAINT ISSUES

**JUDGE GLASSER HAS RULED THAT FELIX SATER'S 2009 SENTENCE WAS HELD <u>IN OPEN COURT</u> AND THAT THE DETAILS OF HIS COOPERATION WERE READ ALOUD THERE**

Exhibit A is an order issued by Judge Glasser on March 15, 2013, docketed on 12-MC-150 and 98-CR-1101. On page 6 it states [Emphasis original]:

> **On October 23, 2009, Felix Sater was sentenced <u>in an open courtroom</u>. A motion pursuant to §5K.1 was supported by an oral account of the substantial assistance he provided to the government.**

We respectfully refer your honor to your own order of May 14, 2011, Exhibit B:

> **Roe makes the frivolous argument that because Judge Glasser did not explicitly reiterate the prohibition on disclosing Doe's real name at this unsealed hearing, Doe's name may be made public. <u>However Doe's real name was intentionally never mentioned at the hearing</u>. Thus, just as in the instant Order, the prohibition against revealing Doe's real name is implicit in the sealing of the case as a whole and the use of "Doe" at that hearing. <u>Doe's identity cannot be discerned from that hearing…</u>**

Exhibit C is a copy of Sater's October 23, 2009 sentencing transcript. Note it bears no notation of a sealed or closed courtroom, nor could it, given it took place in open court. Importantly, please note that there is no attempt to disguise the defendant *Sater's real name was <u>intentionally</u> mentioned 36 times, by Judge Glasser, <u>and by</u> his own lawyers*.

*No law allows subsequent concealment of an open court proceeding or its contents*. The Supreme Court so held in *Craig v. Harney*, 331 U.S. 367 (1947), *what happens in open court is public property and no one may ever be held in contempt for disseminating it*.

*Six months before Bernstein gave documents to Mr. Oberlander the criminal defendant Felix Sater was sentenced <u>in open court under his real name and his cooperation – not just the fact of it but the detail of it – read aloud therein, where it forever became public property</u>*. Yet for three years all we have heard is the need to protect Sater lest anyone find out he was convicted or cooperated *<u>when all the time it was public record and public property</u>*, not to mention he remains conspicuously unharmed.

More to the point, there can be no rational basis to believe there was a risk to Sater considering that he, his lawyers Leslie Caldwell and Kelly Moore, both former EDNY AUSA's, the four FBI agents present, and the presiding judge (Glasser, J.) – every single one of them willingly participated in an open court sentencing without objection. Not one of them moved to close the courtroom or use an assumed name because of a perceived risk to Sater. The record shows none did. *Not a one*.

We submit that is because everyone in that courtroom knew even then it had been in the public domain, and was public property, having been publicly disclosed, not just in the March 2, 2000 press release but in other public courtrooms for almost a decade, much of that time publicly available in the National Archives, especially the Coppa files, public for years until *the last few years since these hearings started in which it had been requisitioned to the EDNY and then hidden there so no one could find it*.

Exhibit D is an index to a set of documents uploaded as exhibits on 12-MC-150, docket item 74, which we retrieved from the public files of *U.S. v. Coppa*, 00-CR-196 (EDNY Glasser, J.). They include publicly filed *Brady* motions from defense counsels for information on cooperating government witness Sater; the government's publicly filed provision *to defendant Daniel Persico* of a list of government witnesses to testify against him, including Sater; *and even a publicly filed November 2000 Brady letter to defendant Lawrence Ray, disclosing Sater as a cooperating witnesses*. So it's no surprise that a year later, February 2, 2002, again in open court, *again in the presence of Daniel Persico and his counsel*, all, including the presiding judge (Glasser, J.) witnessed colloquy between Ray's attorney and the government as to cooperating government witness Sater. See Exhibit 8 on that 12-MC-150 item 74 That transcript in turn was later filed on PACER in yet another public proceeding, a 2004 civil proceeding filed before the same court (Glasser, J.), where it has remained ever since.

And the government publicly disclosed Sater's cooperation in March 2009 when it opened the Lauria files, *viz*. document 12. Exhibit E. In *Gambale v. Deutsche Bank*, 377 F.3d 133 (2nd Cir. 2004), the Second Circuit held that when a district court had mistakenly unsealed a document which remained unsealed for months, it was unlawful to reseal it. In spite of that controlling authority, in December 2010 Judge Glasser resealed the document, but he couldn't get to the National Archives, or didn't think to, where it remained public, not that it mattered as we could not be legally enjoined from disseminating what we had downloaded.

Everyone always knew Sater was a cooperator. Everyone in *Coppa* was told; everyone had access to the files for years and still do now that they magically "showed up" on the EDNY clerk's desk last summer like Hilary's Rose law firm billing files. *And as of October 23, 2009, everyone had a <u>right to access</u> the truth on docket 98-CR-1101 because of the sentencing in open court* when those details became public property forever.

Therefore, in respect of that <u>right to access</u>, insofar as:

1. Since 2000-2002, certainly since the open court sentencing in 2009, there has been no constitutionally protectable interest in concealing and so preventing access to, court files in re Sater's conviction and the fact of (and as of 2009, the details of) his cooperation – there can be no, constitutionally protectable interest in concealing what has taken place in open court, a fortiori *intentionally* so. Any such concealment is necessarily unlawful; and

2. In March 2013 Judge Glasser "unsealed" 90% or so of what had been "sealed" on his docket, *U.S. v. Sater*, 98-CR-1101; and

3. Given the above, there is nothing on this docket with anything to which access may be restricted, especially including Mobargha and Beys' felonious filings as to Persico and the Supreme Court; and

4. As to this particular matter, it concerns documents, *viz.* public filings in other courts, which are themselves public and so a fortissimo there can be no interest in protecting from public access any legal process concerning them, particularly insofar as Sater has asked for the exact same relief from Judge Schofield.

5. Respectfully, this court's blanket sealing order, like any blanket sealing order, is void and unconstitutional *per se*, as it evades individual findings to ensure each document filed under seal satisfies constitutional and common law requirements for sealing and instead purports to "find" *a priori* that anything filed *no matter what its content or purpose* – without even reading it – necessarily meets those tests. It is existentially, facially impossible to reconcilesuch purported sealing with due process.

We request:

6. Immediate unsealing of every document ever filed on this docket or in connection with contempt proceedings on 98-CR-1101; or

7. At least immediate unsealing of the initiating letter, attachments to it, this document, attachments, and open, if any, court.

But there is more than the right to access. As the court is aware, circuit precedent requires the same Sixth Amendment rights to open civil contempt trials as to open criminal contempt trials, and that right belongs to us, and we have not waived it (in fact, the court expressly acknowledged so in March 6, 2012, where it affirmed that our "Sixth Amendment rights would be protected. Any such right is illusory if the complaining instrument is hidden from public access.

Therefore, in respect of that <u>right to publicity</u>, insofar as we are entitled as of plenary right to have all proceedings in public, *see In re Rosahn*, 671 F.2d 690 (2nd Cir. 1982), we request immediate public docketing of all documents and events as to this instant matter.

But there is more than the right to publicity. There are multiple plaintiffs involved in those cases putatively at issue, and the *named* plaintiffs are our clients. And even if your honor's blanket sealing order were constitutional (though we have of course respected it as a matter of professional discretion) it could not conceivably reach those who are strangers to this proceeding, including those clients, for two reasons:

> In respect of the *named* plaintiffs, our clients, we respectfully demand the right to tell them, and their First Amendment right to be told, what Sater is trying to do, at least if this court signs the petition. We object in their behalf to any attempt to enjoin them from telling anyone for any reason what's going on here as (1) there is no decretal language in any order covering them; (2) there could not have been as they weren't before you; (3) FRCP 65 covers attorneys of clients and agents, but not clients of attorneys, enjoined.

And just as there is no known theory by which a federal court may infringe or in any way effect the First Amendment and petition and association (choice of counsel) and Fifth Amendment property rights of our clients in respect of actions not before it, *a fortiori* actions not even before a federal court which would violate separation of powers, there is no known theory by which a federal court may infringe or in any way effect the First and Fifth Amendment rights of those whose interests are represented in those cases but who are not our clients. The state action complained of, and any other collateral state action spun off or commenced, is derivative as well as direct. There are very many plaintiffs-in-interest, including every bank Sater defrauded through Bayrock, and every other Bayrock creditor, and every other victim. This is, in other words, essentially a representative or class action, and notice to all of them is required by due process, including notice of anything this court does to affect their rights.

> In respect of the *derivative* plaintiffs-in-interest, we respectfully demand the right to tell them what Sater is attempting to do, at least if this court signs the petition. We object in their behalf to any attempt to enjoin them from telling anyone for any reason what's going on here as (1) there is no decretal language in your order covering them; (2) there could not have been as they weren't before your honor; (3) FRCP 65 covers attorneys of

clients and agents enjoined, but not the *non*-clients of attorneys enjoined, as to whom we assert *their First Amendment right to be told* (that is, their derivative First Amendment right to hear we willing speakers tell them) what Sater is trying to do.

If this court disagrees, they must still be notified as they are entitled to opt out or appear through their own counsel, so for all those persons, unless your honor believes you can assert *in personam* jurisdiction in the absence of a federal question over iStar, the Trumps, CIM, GMAC, a dozen other banks, every member of every Bayrock company who is owed money and so is a creditor to whom fiduciary duties are owed and thus are derivatively represented in any issue of insolvency, etc. with respect your honor cannot conceivably do anything in secret to them that derivatively affects their rights as, *inter alia*, they do not yet know, but are about to, of the facts and legal theories our clients representing them do and thus cannot assert them without our clients.

## JURISDICTION AND FORM ISSUES

**THE PETITION IS IN IMPROPER FORM AND
THIS COURT LACKS THE AUTHORITY TO
WAIVE THE LOCAL RULES BY ACCEPTING IT**
-----
**IN PERSONAM JURISDICTION HAS NOT BEEN
OBTAINED AND WE DECLINE TO WAIVE THAT**
-----
**THE PETITION IS FATALLY DEFECTIVE IN CONTENT**

*Star Mark Management*, 682 F.3d 170 (2nd Cir. 2012) controls. There, the Second Circuit held the ***only*** situations where a district court could accept a naked motion are where the rule under which it is filed (1) is well served by a speed and efficacy of informality; **and** (2) ***where the rule does not explicitly require conformance with standard form***.

Local Rule 83.6 is exquisitely clear as to both form and process. It requires formal motion practice and specifically requires motion or order to show cause by *affidavit*, not by unsworn letter as is the case here. ***We do not waive our rights to such and so deny Article III procedures have been initiated***.

*Star Mark* also holds that strict compliance with the service requirements is mandatory.Rule 83.6 *requires* formal service in the same manner as service by summons. ***We do not waive our rights to such service and so deny personal jurisdiction has been obtained***.

Last, *Star Mark* holds that strict compliance with the content of the notice requirements is mandatory (Star Mark involved Rule 11, but the language in 83.6 is the same if not more demanding, requiring *inter alia* the specific conduct complained of be stated with particularity. There is no such statement here (disregarding that, again, it would be a legal nullity for improper form), only a conclusory ***legal*** argument that a certain federal and a certain state court action are frivolous. Filing a frivolous complaint may be conduct complained of, but frivolousness is a conclusion of law, not an allegation of fact, and without specific reference to exactly what where in what document is alleged to be frivolous for what reason, including by affidavit as to facts alleged to establish it, there is no possibility to defend, hence no proper notice. See*Star Mark* at HN4.

And, respectfully, pursuant to *Star Mark* we deny that your honor has the authority to waive that rule, either as to form or as to process. That rule is to protect us and we request if you intend to deem it waived for Sater that you stand down and stay all process so we may seek writs of prohibition and mandamus from the Second Circuit. (For the avoidance of ambiguity we wish to note for the record that at such time as Article III procedure shall have been properly invoked and then personal jurisdiction shall have been properly obtained, we expect to trigger 83.6(b) elections and demand evidentiary hearing, and jury to the extent available by law. Please see immediately below for the constitutional issues that will raise.)

**THE COURT'S PUTATIVE 2012 WAIVER HAS EMBOLDENED
THE FELONY MISCONDUCT OF OPPOSING COUNSEL**

In early 2012 this Court purported to waive the requirements of 83.6. We objected than and we object now. And in the interest of thoroughness respectfully this court ought to be aware of what it has done, what has happened as a result.

***By purporting to waive the requirement of affidavit, the court has emboldened a torrent of fraudulent and deceitful filings by Mobargha and Beys, reaching felony level.***
Please be assured that do not mean to imply that Sater's counsel Mobargha and Beys have perpetrated felonies in their conduct before this court. We allege it explicitly. We are formally requesting this court refer them for criminal investigation and conduct pre-motion conference for a formal motion to this court that it commence Fed. R. Crim. Pro. 43 in respect of them. To pick but two examples, note the following:

On February 14, 2012 the Second Circuit directedthat any subsequent filing at the United States Supreme Court be appropriately denominated as under seal. Putting aside the facial illegality of such an order, insofar as no lower court can control the docket of a higher court either in rem or in personam, we filed a petition for writ of certiorari so denominated and simultaneously served it on Sater's counsel Mobargha and Beys. It is stamped across the front, "FILED UNDER SEAL." The public record, that is the public docket of the United States Supreme Court, confirms that the petition for writ of certiorari was filed under seal. Nevertheless, Mobargha and Beys "filed" a "letter" demanding we be held in contempt for violating an order of the Second Circuit they had actual, personal knowledge had not been violated. Exhibit F.

Nor was it limited to civil contempt. They copied Mr. Green in Syracuse at least, and may have otherwise contacted him, we don't know, but we do know they told him that we had defied the order and had not filed it under seal. Mr. Green thereupon commenced a criminal investigation of that, which is now extending into its second year. This is a direct and calculated consequence. But it does not stop there.

In 2012 Mobargha and Beys filed another "letter" (instead of affidavit) accusing us of conspiring to murder Sater by passing messages through Gerald Shargell or leaking to newspapers. It is written to create the impression that Daniel Persico first learned of Sater's cooperation by such actions and he, despite reputedly being a high level mob member, apparently thought nothing of assaulting Sal Lauria in broad daylight in front of witnesses and there in front of all of them threatening to kill Sater for his cooperation.

What it conspicuously does not state is that Persico and Lauria were friends for years; Lauria wrote a book in 2002 admitting he informed on Persico in this matter; when Lauria tried to disclaim that book as untrue he lost an arbitration which determined it was exactly what he had told its co-author; the book states that the FBI in 2000 told him that Persico found out who had informed and might be a threat and Lauria declined protection. And it conspicuously does not state that Judge Glasser and AUSA Corngold (who authored the witness list sent to Persico listing Sater as a witness against him,

*supra*) directly and indirectly told Persico and his counsel both who the cooperators were, including directly to their faces orally, in writing, and by the public circulation and release among all defense counsels of all the *Brady* and *Giglio* materials identifying Sater as a cooperating witness against Persico and the other Coppa defendants.

And they sent that letter to Mr. Green as well obviously to influence a criminal investigation. That is a felony. Actually multiple felonies, including obstruction (for the filing in court), false statement (for the transmission to Green), and conspiracy to commit those substantive offenses.

And, not the first time, they complain in papers that the threat of criminal prosecution has not shut us up. There is no question there is far more than probable cause to believe that they have engaged in extortion, violating both federal and state, in attempting to silence us by threat of criminal prosecution, in particular by threat buttressed by false or deceitful filings in federal courts and statements to federal prosecutors in the course of investigation. The crimes are complete upon perpetration of the attempt or scheme to deceive, it doesn't matter whether the court or a prosecutor was actually fooled).

We demand this court act accordingly, and refer this for criminal investigation, and obviously not to the EDNY. We will move to disqualify and sanction them forthwith but the mmediate concern is that this court face the reality of the felony conduct it has emboldened by allowing them to think they can get away with anything, starting with the waiver of the requirement they file under oath. As a courtesy we inform the court this is currently among the subjects of a Congressional investigationwith which we are cooperating regarding all matters concerning Sater's illegal sentence and the efforts to enjoin us from speaking of governmental misconduct and violations of the MVRA and CVRA.

**IT VIOLATES DUE PROCESS TO CONDUCT CIVIL
CONTEMPT PROCEEDINGS WHILE A CRIMINAL
CONTEMPT INVESTIGATION IS ONGOING**

This is self-evident, which is obvious from this court's own standing order that civil contempt process be stayed pending completion of all criminal function. As the request of Mr. Green shows, that is not near finished, and as Mobargha and Beys have attempted to include in his criminal investigation that we can be prosecuted for filing

federallawsuits in behalf of Sater's victims and state lawsuits that involve no federal question, this court cannot (indeed by its own standing order cannot), proceed.

To be sure they are not without remedy. Sater was served with the Gottdiener action a month ago and they had all that time to file a Rule 11 motion before Judge Schofield. In fact, the 21 day period would have expired already and the motion would have been extant, but they did not. *In fact, the court should note their answer or responsive pleading is due by stipulation in 10 days. The court is resepectfully well advised to stand down and see what happens before Judge Schofield and what form of answer they file, nd then what she does with it*. There is something ugly about their distrust of Judge Schofield to give them the relief they seek, inferable from their failure to seek it from her, and instead resort to a court which lacks the jurisdiction to give it to them.

As to the New Yorkstate court action, they can either file a plenary proceeding to strike the filing or they can wait till they are served with an actual pleading – for there is no pleading in that case. *We repeat. There is no pleading. There is only a summons with notice*. And so there is nothing for this court to decide with respect to that case as there is no request for relief before that court (assuming this court had jurisdiction to do so).


**THIS COURT LACKS SUBJECT MATTER JURISDCITION**

**(1) There is no enforceable order**

There is no order. The only order cited says that "It is ordered, Roe is warned." Roe was warned. If it was an order, the order was self-executing. More to the point, among the "consequences" listed, there is nothing that specifies contempt. Nor even if it were operating *in futuro* could it be construed to operate as to lower court filings as it is expressly limited to filings in the Second Circuit. And it cannot be read to protect Sater and thus be privately enforceable as Sater was directed not to participate in that forum so could not have been aggrieved by anything that happened there. And it certainly does not purport to enjoin anything in any state court, as it could not lawfully do so.

**(2) Constitutional Concerns and *Noerr Pennington***

It might seem tempting to invent language not in the "order" itself, for example to interpret it as an order not to file frivolous complaints in any court. But there would be little point to interpreting it so for that would be *per se* illegal, void, unlawful, *ultra vires*, etc., not merely unconstitutional.

(Parenthetically, this court lacks the authority to determine whether an order of the Second Circuit is illegal. That is obvious. No district court has the authority to rule on the legality of the order of any other court, or otherwise enforce it, but it should be *particularly* clear that no district court has the authority to rule illegal or invalid an order of a higher court, and if it cannot rule it illegal or invalid it cannot rule it legal or valid, and it is facially silly to argue that we should lose the right to challenge the legality or constitutionality of an order we are alleged to have violated because it's being enforced in a court that cannot adjudicate same. We ask the court remember that mere invalidity, that is unconstitutionality, is a defense to civil contempt, as well as illegality. This is not like criminal contempt, this is civil contempt, and it is an absolute defense that the order to be enforced is unconstitutional either *per se* or as applied. One wonders, how does this court propose to adjudicate same as to orders of a higher court? And if it cannot adjudicate its validity it cannot adjudicate whether it has been violated and enforce it. Nor was this court delegated the job of enforcing it, it was only given the job of monitoring compliance, and in any event such a delegation would be *per se* illegal, void, unlawful, *ultra vires*, etc. because no federal appellate court can enlarge the subject matter jurisdiction of a lower court, only Congress can. We have extensively briefed and argued this in February 2012 at the commencement of the original contempt proceedings, renew and incorporate all such arguments, and of course like all arguments herein have reserved the right to expand them in more formality upon such time as this court rules that whatever form of petition for Article III relief Sater files has been accepted and any prohibition or mandamus attempt has failed.)

An order to "not file frivolous complaints" would be illegal, void, etc. as it would be tantamount to an order to "obey the law" and that fails for obvious reasons, there is a ton of precedent on this, but in brief, an order to "obey the law" or "don't file fraudulent documents" and so on is an unconstitutional attempt to graft contempt sanctions onto a pre-existing rule of law, which violates separation of powers, and is also facially referring to constraints not within the four corners of the document.

To see that requires no more than considering, "What makes a complaint frivolous?" and realizing that they are attempting to assert this as to a state court action (where there isn't even a complaint to begin with, nor need there be one until October 2013, and even that date it is extendable). So consider: If it's so clear what a "frivolous" complaint means, who decides? "Don't file a complaint frivolous under state law?" Would that mean a federal district judge would get to decide whether a complaint filed in a state court (or for that matter, as here, in another federal district) is frivolous without regard to what the state court should decide about it? Would that decision be binding on a state court? Federal courts get to determine the validity of state court complaints? Does the federal district court apply federal or state rules as to frivolousness? If no equivalent

of state court Rule 11 objection is made, or no Rule 11 in the actual court where filed, doesn't that waive the contempt motion? If it's not capable of being purged, perhaps because leave to amend is denied, does that mean the contempt proceeding is criminal, as would any contempt that cannot be purged?

This is a constitutional train wreck, to use a term of art. And what if the state court disagreed and did not find it frivolous, then the contempt powers of a federal court sanction perfectly lawful petitions filed in state court, protected by both the First Amendment of the United States constitution as well as the far broader equivalents of the New York State Constitution?

All of this reduces to exactly one concept: The *Noerr Pennington* doctrine, or rather two, for not only does it apply to the states by incorporation, it must apply within the states as to their own constitutions, which cannot be less protective of petition rights. For fifty years since *Noerr Motor Freight*, 365 U.S. 127 (1961), the Supreme Court has recognized that by prohibiting laws [including judge-made law] abridging the right of the people to petition the government for redress of grievances, the petition clause of the First Amendment, as incorporated to the several states by the Fourteenth, gives safe harbor to all genuine efforts to influence government decisions. Those words forbid the government from outlawing or punishing its citizens' petitions. So while the government may reject a petitioner's argument, it may never sanction him for making it. It forbids private parties from invoking the government's coercive power to do the same, whether through tort or purported contempt. One cannot be held civilly liable for genuine attempts to influence action in any appropriate forum.

The only exception the Supreme Court has ever recognized is the "sham exception," not so much a true exception as an argument that the petitioner who does not genuinely seek to influence government action doesn't qualify for immunity initially. To invoke it, a party challenging immunity (for the burdens of proof and production are on Sater and the evidentiary standard at least clear and convincing if not more likely beyond a reasonable doubt given the speech and petition chilling effects) must show the petition was undertaken without any possibility of securing favorable action and was objectively baseless (again we respectfully caution the court that that is the standard a federal court must apply to a claim of *Noerr Pennington* immunity under the United States Constitution).

When in the state context, where a federal court is called upon to sanction, by contempt powers no less, petitions filed in state courts, here New York, it must be very careful, for New York has extended far greater protection to state court litigants by of the freedom of speech and petition provisions of the New York constitution, which are far

broader than those of the U.S. Constitution, so – if this court were to entertain the order to show cause – it would have to adjudicate whether and if so how the Second Circuit can legally at all issue orders infringing on state court constitutional rights, which is an adjudication of the equity jurisdiction limitations of a higher court, again outside this court's jurisdiction. And we again assert that a far higher state court standard applies to immunity under state constitutional and other legal protections over which the federal courts may not implant their own standards to satisfy federal court orders that are protecting no legally cognizable federal interest in protecting someone from state court ligitation that satisfies the requirement of state law.

None of these issues has been raised in any case cited by Sater but we do and will raise them as there is no power in this United States by which a federal appellate court can criminalize filings in state court let alone without first requiring the application of state as well as federal legal protections and in any event that question as to an appellate order cannot be adjudicated by any other court and certainly not by a lower court.

And who would be bound by a filing of frivolousness? All actual parties too, or the derivative parties, or all of them? And how can frivolousness be adjudicated until the case in question has been lost and lost by reason of that frivolousness?

* * * * *

For all these reasons we request and respectfully advise the court reject Sater's counsel's improperly presented proposed order to show cause. We further request the court refer Sater's counsel for criminal investigation, *and not to the EDNY*, for knowingly filing false or deceitful papers with this court and copying them to Mr. Green.

/s/ Frederick M. Oberlander

/s/ Richard E. LernerEnclosures.

Cc: (With enclosures)

Honorable I. Leo Glasser
Honorable Lorna Schofield

Todd Kaminsky  (via ECF)
Beys Stein Mobargha (Via ECF)