BEYS STEIN MOBARGHA & BERLAND LLP

Michael P. Beys
646.755.3605 (Direct)
mbeys@beysstein.com

October 23, 2014

**VIA ECF**
The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:   *In Re Motion for Civil Contempt*, 12 MC 557 (BMC)

Dear Judge Cogan:

    We represent Felix Sater in the above-captioned proceeding to hold Frederick M. Oberlander and Richard E. Lerner in civil contempt, and respectfully submit this letter in connection with the status conference scheduled for October 24, 2014 at 2:45 pm. Since the last proceedings in this case occurred several years ago, for the assistance and convenience of the Court, we provide below a brief overview and highlight some of the more egregious acts of contempt by Oberlander and Lerner.

## Overview

    By way of background, Mr. Sater pleaded guilty in 1998 before Judge Glasser, to crimes he committed over 20 years ago. *See U.S. v. Sater*, 98 CR 1101 (ILG). For the next 10 years, while working at the Bayrock Group ("Bayrock"), Mr. Sater provided high-level information to the government, among other things, on matters of national security. Judge Glasser sealed the case, as the details of Mr. Sater's cooperation would have exposed him to grave danger if made public. Since 2009, however, Oberlander, Lerner, and their client Jody Kriss, a disgruntled ex-Bayrock executive, have engaged in a relentless campaign to extort a settlement from Mr. Sater and others by publicly releasing the sealed documents and exposing the very information the courts sought to keep sealed. To further their extortion campaign, Oberlander and Lerner intentionally defied the orders of the Eastern and Southern Districts as well as the Second Circuit, filed a slew of frivolous motions and lawsuits, and repeatedly accused the courts of illegal and fraudulent conduct. Their conduct resulted in Your Honor's appointment in February 2011, by order of the Second Circuit, to ensure their compliance with court orders. Above all, their improper efforts to expose Mr. Sater succeeded. Since 2012, Mr. Sater's name, identity and cooperation have been thoroughly reported in the press and are now matters of public record.

Page 2 of 9

## Acts of Contempt Prior To February 14, 2011

Prior to Your Honor's appointment by the Second Circuit on February 14, 2011, Oberlander and Lerner acted in ways Judge Glasser has described as "despicable" and committed numerous acts of contempt. (Transcript ("Tr.") of 7/20/10 Hearing in 98-CR-1101 ("7/20/10 Hearing"), at 20:21).

First, in late February 2010 Oberlander induced his then-client, Joshua Bernstein, a former Bayrock employee and friend of Jody Kriss, to provide him access to Bayrock's back-up hard drive, which Bernstein had taken and kept without permission, and which contained numerous confidential, privileged and sealed documents. Oberlander personally searched the hard drive and discovered these documents. In hearings later in the year, Judge Glasser found that the documents had been "wrongfully taken" by Bernstein, who had "no legal right to those documents." (Tr. of 7/20/10 Hearing, at 19:9-18). Days after obtaining the documents, Oberlander sent an email to Bernstein, virtually admitting that the hard drive had been stolen and indicating his plan to extort Mr. Sater and others using the stolen information:

> I am so not kidding this is not a game this is not a $150,000 case anymore and DO NOT READ THIS WRONG this is a team and my job is to shake the living daylights out of them and it starts NOW... as I said stolen emails are admissible, period. end of story.

(Exhibit 3 to Affidavit of Joshua Bernstein, dated September 19, 2011).

Second, on May 10, 2010, on behalf of Jody Kriss, Oberlander filed the action captioned *Kriss, et al. v. Bayrock Group, LLC, et al.*, Case No. 10-CV-3959 ("Kriss I"), in the Southern District of New York, and annexed Mr. Sater's PSR, his Cooperation Agreement, and two proffer agreements (the "Sealed Documents") to the complaint. As Judge Glasser would later find, Oberlander knew that these documents were sealed, and that revealing them would put Mr. Sater's life in danger. (Tr. of 6/14/10 Hearing in 98-CR-1101 ("6/14/10 Hearing"), at 4:4-9, 8:1-4). Although Judge Buchwald sealed the case almost immediately, *Courthouse News* had already obtained the complaint and ran a news story on May 17, 2010.

Third, during hearings in June and July 2010 on Mr. Sater's motion for an injunction against dissemination of the Sealed Documents, by which time Lerner began appearing with Oberlander, Judge Glasser made several findings and observations about the lawyers' conduct. He referred to their typical requests for adjournments as "nothing more than stalling," and their other nonsensical arguments as "specious." (Tr. of 6/11/10 Hearing in 98-CR-1101 ("6/11/10 Hearing"), at 8:19-25). Regarding the Sealed Documents, he observed that:

> Those two documents, among others, which were sealed, were documents if divulged ... may seriously jeopardize not only the life of the person who was the subject of those documents. In this case it might also significantly affect matters of national interest.

(Tr. of 6/14/10 Hearing, at 4:4-9). He further found that:

> [G]iven a document which is plainly indicated on its face, filed under seal, that comes into the hands of a lawyer, at the very least that lawyer should have very serious doubt about doing anything with that document without first making appropriate inquiry about whether disclosing this document that was sealed is appropriate and should an order of unsealing or permission to use it be obtained.

*Id.*, at 7:17-24. Judge Glasser held that:

> There's no doubt that Mr. Oberlander was aware of the fact that these documents were sealed. There's no order that needs to be addressed to Mr. Oberlander and say, Mr. Oberlander, this is a sealed document, don't publicize it. It's obvious.

*Id.*, at 8:1-4. Finally, after oral argument on July 20, 2010, Judge Glasser made a finding that both Bernstein and Oberlander are converters, and that there may be disciplinary rules or ethical principles that should have precluded Oberlander from using those documents. As the Court stated:

> [S]omething bad was done, something very bad and perhaps despicable was done by the use of those documents annexed to a complaint in the Southern District, in a civil case….

(Tr. of 7/20/10 Hearing, at 19:12-20:23).

Regarding the initial, public filing of Kriss I, Judge Glasser found that Oberlander intentionally violated a court order:

> In unilaterally deciding that such an order did not exist, or, if it did exist, it was binding on court personnel only; or in any event, he had a First Amendment right to publish that which was sealed, he knowingly and intentionally flouted a court order.

( March 23, 2011 Order in 98-CR-1101).

**Fourth,** after Judge Glasser enjoined their dissemination of Mr. Sater's PSR, Oberlander and Lerner expressly stated their intention to continue to violate court orders. In a declaration signed by Oberlander, they wrote, "I will not be silenced … there is nothing that the court can do to me … Well, your honor, I will not be gagged." (Declaration of Frederick M. Oberlander, dated July 16, 2010, ¶¶ 4, 6, 11). They then initiated what would turn out to be an extended pattern of insulting judges who ruled against them, referring to the Court as a "star chamber" that issued "a patently unconstitutional prior restraint TRO,"and "covertly maintained" a "super sealed" case. *Id.*, ¶¶ 1-3. They also accused the Court of "unconstitutionally concealing the docket

Page 4 of 9

and surreptitiously dispensing whatever justice, or lack thereof, as the court sees fit." *Id.*, ¶¶ 1-3. Finally, they concluded by asking Judge Glasser, in language borrowed almost verbatim from the Army-McCarthy hearings, "*You have done enough. Have you no sense of decency sir, at long last? Have you no sense of decency?*" *Id.*, ¶ 20 (emphasis in original).

Fifth, for the remainder of 2010, in continuing violation of court orders, Oberlander and Lerner continued to demand money from Mr. Sater and the other Kriss I defendants and threatened "dissemination" of sealed information if they did not get it. In a letter to Mr. Sater's then-counsel dated October 18, 2010, Oberlander wrote,

> [M]y clients are indifferent as to which Defendants write the checks … [M]y clients … simply demand [sic] what they are entitled to: *1 billion dimes* … At this time, plaintiffs will very favorably consider settling the entirety of all claims known and unknown for their actual damages of $35,000,000 … It is the least amount which plaintiffs would be willing to accept for a quick *settlement that avoids the dissemination*.

(October 18, 2010 Letter from F. Oberlander to B. Herman, at 6, Note 3) (emphasis added).

On November 9, 2010, Oberlander sent another letter to Mr. Sater's counsel, which included numerous extortive threats:

> If you wish Mr. Sater's activities lawfully kept quiet to any extent, stand still, stop filing motions and get out of the way so Plaintiffs can try to resolve the case before everything uploads to PACER and goes public. The only way to try to prevent worldwide notoriety will be a globally stipulated sealed confidentiality order accompanying a global settlement… [W]hen Judge Buchwald orders this public and your client finds this on the front pages everywhere, including New York, Iceland, Turkey, and Kazakhstan, and all the other plaintiffs worldwide … join the party… I can with confidence predict from the settlement discussions I've had that all the defendants will be delighted to keep this quiet… If this case is not settled quickly, it will surely go viral. If you obstruct a settlement instead of helping get there, everything will go public with clockwork inevitability. This is not a threat, it is mathematics. And it is certain… No power on this earth will much longer prevent as much lawful and legal worldwide dissemination of this Complaint and every document attached thereto or referenced therein as the public and press doing the dissemination think its value justifies. You already saw what *Courthouse News* thought of it, and everything else I file … entirely without

> my or my client's involvement. Only a stipulated sealed confidential settlement agreement Plaintiffs find acceptable, executed very soon, can stop that.

(November 9, 2010 Letter from F. Oberlander to B. Herman, at 1-2).

Finally, Oberlander threatened in the letter that if he saw any motions "to interfere with service or *dissemination*," Bayrock and Mr. Sater "will get the inevitable, concomitant global public news and media coverage of everything everywhere .... Judge Buchwald will be presiding over World War III with coverage likely on the front page of the New York Law Journal." *Id.*, at 2 (emphasis added).

### Acts of Contempt Since February 14, 2011

On February 14, 2011, the Second Circuit heard oral argument on Oberlander's appeal of Judge Glasser's injunction, during which it referred to Oberlander as "Richard Roe," and Mr. Sater as "John Doe," in order to protect Mr. Sater's identity. At the conclusion, the Court of Appeals issued a Summary Order temporarily enjoining Oberlander, Lerner and anyone acting in concert with them from publicly distributing or revealing in any way any documents or contents thereof subject to sealing orders in any of the related proceedings before the District Courts for the Eastern and Southern Districts of New York. (Summary Order of Court of Appeals, dated February 14, 2011 ("2/14/11 Summary Order")). It further ordered the Chief Judge of the Eastern District to assign a District Judge to oversee Oberlander and Lerner's compliance with court orders, implicitly recognizing Oberlander and Lerner's willful noncompliance with prior orders. *Id.*, at 4-5. The Court specifically noted the difficulties Oberlander had caused for Judge Glasser: "Of course, Judge Glasser, an experienced and able jurist who has shown admirable patience and forbearance in the face of extraordinary provocations, shall retain jurisdiction over the underlying (and long-lived) criminal proceeding." *Id.*, at 5. Accordingly, then-Chief Judge Dearie appointed Your Honor for the purpose of enforcing the courts' orders.

Remarkably, despite this Court's appointment as a monitor, Oberlander and Lerner's contempt of court has continued.

<u>First</u>, at a hearing on April 1, 2011, Your Honor learned that Oberlander and Lerner still possessed the PSR which Judge Glasser had ordered them to return, and threatened to hold them both in contempt if they did not return or destroy any and all copies. The Court rejected their frivolous argument that they were entitled to keep copies of the PSR, as opposed to the originals: "No, it's absolutely clear on its face Judge Glasser intended you to destroy electronic copies and to return any photocopies." (Tr. of 4/1/11 Hearing in 12-MC-557, at 14:3-5).

<u>Second</u>, the following month, in denying their request to make certain sealed information public, Your Honor observed that Oberlander and Lerner were "seeking to fatally undermine the purpose of the injunctions by publishing information that would render them ineffective." (May 13, 2011 Order in 12-MC-557, at 4).

Page 6 of 9

<u>Third</u>, on June 29, 2011, the Second Circuit issued a Summary Order on Oberlander and Lerner's appeals, in which the Court strongly rebuked Oberlander and Lerner's vexatious litigation tactics and frivolous filings. The Court warned that its "patience has been exhausted by his filing of six separate notices of appeal regarding the same principal legal dispute … and that any further attempts to re-litigate the issues decided by this order, or other future filings of a frivolous nature, may result in sanctions…" (Summary Order of Court of Appeals, dated June 29, 2011, at 3). Notably, the Court also held that "the PSR is of dubious utility in the civil case except as a tool to intimidate and harass [Sater] by subjecting him to danger." *Id.*, at 7.

<u>Fourth</u>, in early 2012, in flagrant violation of several court orders, Oberlander and Lerner made good on their threats and began disclosing sealed information to the press. They disclosed "Richard Roe's" true name and identity to a *New York Times* reporter and even posed together for a half page photo, which *The New York Times* published on February 6, 2012. (*See The New York Times*, "By Revealing Man's Past, Lawyer Tests Court Secrecy," dated February 6, 2012). By revealing his true name and identity, Oberlander directly violated the Second Circuit's February 14, 2011 order, which expressly enjoined Oberlander and Lerner from disclosing Oberlander's true identity "because the disclosure of his true identity in this litigation context may, for the time being, lead to the improper disclosure of the materials at issue." (2/14/11 Summary Order, at 2).

<u>Fifth</u>, in response to Mr. Sater's order to show cause, Oberlander and Lerner filed a motion to quash, most noteworthy for the flurry of baseless and scurrilous insults directed at Your Honor, the entire Eastern District, and the Second Circuit. They wrote that the Court's signing of the order to show cause was "illegal and unlawful"; that Your Honor "maint[ains] an inaccurate docket" in a totally unrelated matter and should recuse himself "from further involvement;" that the Eastern District has taken "unlawful and unethical measures to cover up … illegal sentencing schemes;" that the Second Circuit's orders evidence "lawlessness" and "sedition"; and that the Circuit has "falsifi[ed] judicial records." (Memorandum of Law in Support of Motion to Quash, dated February 17, 2012, at 3-4, 8).

<u>Sixth</u>, additional news articles evidencing further disclosures of sealed information by Oberlander and Lerner began to surface. *The Miami Herald* published an article disclosing Mr. Sater's true identity and displaying a photograph of him, connecting him to all the sealed proceedings, and – most egregiously – discussing the contents of the sealed documents that the Second Circuit ordered to remain under seal. (*See The Miami Herald*, "Trump Tower Promoter's Criminal Record Was Concealed By Feds," dated July 1, 2012). It is undisputed that Oberlander, Lerner or their agents gave *The Miami Herald* the information for this article, as the article quotes Paul Cassell, a member of their legal team who was copied on correspondence in the sealing litigation.

On February 27, 2012, Judge Cogan referred Oberlander and Lerner to the U.S. Attorney's Office to investigate whether they should be held in criminal contempt for their actions. (Tr. of 2/27/12 Hearing in 12-MC-557, at 9). Shortly thereafter, the law

firm of Wilson, Elser, Moskowitz, Edelman & Dicker, LLP ("Wilson Elser"), where Lerner had been a senior partner for many years, became aware of the egregious behavior at hand and sought to distance itself from both Oberlander and Lerner. On March 14, 2012 it moved to be relieved from its representation of Oberlander, which the Court granted on August 16, 2012. (August 16, 2012 Order in 98-CR-1101). By September 2012, Lerner was forced to leave Wilson Elser.

Seventh, on July 27, 2012, Colombo-associate Daniel Persico assaulted Mr. Sater's co-defendant Salvatore Lauria, a government cooperator, and threatened to kill Mr. Sater. (August 2, 2012 Letter from M. Beys to District Court in 12-MC-557). We allege that this incident was the result of Oberlander and Lerner's illegal dissemination of sealed information to the press and their improper disclosures to attorney Gerald Shargel, who had represented Persico in the very case that Mr. Lauria and Mr. Sater cooperated with the government on. Specifically, in early February 2011, in the days leading up to the Second Circuit's oral argument, when Oberlander and Lerner had been enjoined from disseminating sealed information to anyone outside their legal team, they attempted to retain Mr. Shargel in order to circumvent the injunction. There can be no doubt Oberlander and Lerner knew that Mr. Shargel was well-known to frequently represent reputed members of organized crime, but incredibly, purported to retain him under the pretext of First Amendment counsel. Indeed, Lerner admitted in writing to the Second Circuit that he had given Mr. Sater's sealed information to Mr. Shargel: "Mr. Roe has discussed retaining Gerald Shargel [sic] … Mr. Roe gave Mr. Shargel copies of the filings in these proceedings." (February 2, 2011 Letter from R. Lerner to Court of Appeals, at 3).

There can also be no doubt Oberlander and Lerner knew of the Colombo's history of violence, and it was precisely their plan to leak Mr. Sater's sealed information to the organized crime community. All along, their client Jody Kriss's extortion plan in Kriss I has been to pit defendant white-shoe law firms, like Nixon Peabody, Duval & Stachenfeld, Roberts & Holland and Akerman Senterfitt, against their co-defendants with criminal pasts, who had cooperated with the government (particularly against members of organized crime), and for the law firms to demand their insurance carriers to settle with Jody Kriss at all costs. Accordingly, a mafia-related act of violence against Mr. Sater or Mr. Lauria would motivate the law firms to settle even more so. We allege that this is precisely the reason Oberlander and Lerner improperly gave sealed information to Mr. Shargell.[1]

Eighth, Oberlander and Lerner continued to engage in "vexatious" and "oppressive" litigation tactics. Specifically, later in 2012, Oberlander and Lerner began using unsealing proceedings in 12 MC 150 (ILG) before Judge Glasser as a vehicle to publish whatever information remained under seal. On November 13, 2012, Judge Glasser ordered them to show cause why they should not be sanctioned for flooding the court with a "vexatious" and "oppressive" 742-page "documentary stew" that had "no

---

[1] Neither Mr. Sater's counsel, nor the government, contends that Mr. Shargell was in any way involved in Oberlaner and Lerner's scheme.

relevance to the very discrete issue pending before the Court." (November 11, 2012 Order in 12-MC-150, at 3-4). In response, Oberlander moved to recuse Judge Glasser, asserting that Judge Glasser was part of a conspiracy, along with the U.S. government and Mr. Sater's counsel, to conceal Mr. Sater's conviction:

> [Y]our honor presides over this and related matters in violation of 28 U.S.C. § 455(a) and (b)(1), having failed to disqualify yourself despite Congressional mandate you do so because of, respectively, your appearance of bias and lack of impartiality, palpably obvious to, let alone reasonably questioned by, an objective, informed observer ... **that observer cannot rationally conclude but that your honor appears to be in criminal conspiracy with** *at least* **[ ] Sater's lawyers, to deprive us and our clients of our rights.**

(Omnibus Motion, dated November 19, 2012, at 2) (emphasis in original).

Ninth, Oberlander and Lerner went on to file two new frivolous actions in March and May 2013. The March action, *Estate of Ernest Gottdiener, et al. v. Mr. Sater, et al.*, Case No. 13-CV-1824 (LGS) ("Gottdiener"), was dismissed in its entirety on Mr. Sater's motion. The May action, *Kriss, et al. v. Bayrock Group LLC, et al.*, Case No. 13-CV-3905 (LGS) ("Kriss II"), names the following defendants and accuses them of a massive conspiracy: Mr. Sater's attorneys; one of the Assistant U.S. Attorneys in the Criminal Case; several prominent law firms, including Akerman Senterfitt, Duval & Stachenfeld, Nixon Peabody, Satterlee Stephens Burke & Burke, and Morgan Lewis & Bockius; and Donald Trump, Ivanka Trump, and "Trump Does" 1-100, among others. The frivolousness of the action is apparent on its face, as are the damages of $1 Billion the Kriss II plaintiffs seek. Apparently, Kriss himself now refuses to participate in Kriss II, and is attempting to withdraw, although the Kriss II complaint is under seal and *sub judice* -- on the issue of whether Oberlander and Lerner improperly obtained sealed information from Bernstein in the first place.

Tenth, Oberlander and Lerner continue their assault on the judiciary and their pattern of intentionally disobeying court orders. Recently, in Kriss II, Oberlander filed a letter accusing Chief Magistrate Judge Frank Maas of having entered an "illegal and invalid" sealing order. (June 3, 2014 Letter of R. Lerner and F. Oberlander to District Court in 13-CV-3905). Also, in May of this year, Oberlander and Lerner refused to meet and confer as ordered by Judge Lorna Schofield, who now presides over Kriss I and Kriss II. (June 3, 2014 Letter of R. Wolf to District Court in 13-CV-3905).

Case 1:16-mc-00706-BMC   Document 96   Filed 10/23/14   Page 9 of 9 PageID #: 1802

Page 9 of 9

It is apparent that absent further court intervention there is no end in sight to any of Oberlander's and Lerner's improper and cavalier litigation tactics, despite the numerous warnings they have received from the courts.

Respectfully submitted,

Michael P. Beys
*Counsel for Felix Sater*

cc. Robert S. Wolf, Esq. (via ECF)
Frederic M. Oberlander, Esq. (via ECF)
Richard E. Lerner, Esq. (via ECF)