UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

                       12-mc-557 (BMC)

In Re Motion for Civil Contempt by Felix Sater

-------------------------------------------------------------------X

## Pro Se Respondent Richard E. Lerner's Memorandum of Law
## in Opposition to Petitioner Felix Sater's Proposed Order

Richard E. Lerner
1375 Broadway, 3rd Floor
New York, New York 10018
(917) 584-4864

July 14, 2015

1

**Introduction**

I submit this memorandum in opposition to movant Felix Sater's proposed "Order of Referral" to the United States Attorney for the Eastern District of New York for criminal prosecution. In all respects, I join in the arguments set forth in the opposition papers submitted in behalf of co-respondent Frederick Oberlander, and adopt them as my own.[1]

In addition, and relatedly, I respectfully ask this court to reconsider its "decision" – though such has not yet been reduced to order form and exists only as a minute entry – to stay all civil contempt proceedings pending whatever criminal proceedings do or do not occur.

Further, and also relatedly, I ask that this court reconsider its refusal to hold an evidentiary hearing to determine whether or not there is probable cause (or any other support) which would support any action the court took, including its determination of probable cause.

Next, I oppose the inclusion in any referral of the last-minute papers filed the night before the June 30th hearing because, *inter alia*, they are predicated on a supposed obligation of non-party (to these proceedings) Jody Kriss to return papers, and such obligation never existed.

Finally, I object to the proposed order both standing alone and in the totality of the peculiar context of these proceedings as it chills speech. Every act of contempt complained of is pure speech, and core protected speech at that. When a court would criminalize core protected speech by use of its contempt power especially heightened due process applies, procedural and substantive, yet none of it has occurred here. Issuance of the proposed order, or anything like it, would inevitably cause respondent or anyone else similarly situated to engage in self-censorship or,

---

[1] Since the motion seeks a criminal referral, I do not submit any sworn declaration herewith, as such could be deemed a waiver of testimonial privilege. Therefore, I only submit this memorandum of law, unsworn; it is not evidentiary, only argument.

even worse, submit to judicial licensure and pre-clearance of prospective speech, neither of which are permissible under the First Amendment. In short, the proposed order, *a fortiori* in current context, is or would be an unlawful, if not illegal, prior restraint justifying emergency expedited relief.

* * *

This court should not endorse movant's proposed order for several reasons: It purports to direct the U.S. Attorney to "institute criminal contempt proceedings, which this court lacks the authority to do. It purports to invoke Rule 42 of the Federal Rules of Criminal Procedure when this court expressly disavowed any intention to proceed under Rule 42 at this time and it fails to comply with the notice requirements of Rule 42, the exclusive means for the court to commence a "referral" for criminal contempt prosecution. It fails to be or include a "charging instrument." It is devoid of specifics as to what matter is being referred and is, essentially, an open-ended investigation and prosecution – persecution, really – of my and Mr. Oberlander's alleged conduct, unlimited in scope, time frame or duration. This type of referral would be improper in any context; where, as here, the investigation is aimed at punishing me and Mr. Oberlander for exercising our First Amendment rights of speech and petition and has the effect of chilling such activity regardless of outcome, it is respectfully submitted that this court cannot proceed without a far fuller record than now exists.[2]

Moreover, at the June 30, 2015 hearing for movant's order to show cause, this court found that, based on papers, "probable" or "good" cause to refer me and Mr. Oberlander for prosecution, and not only did the court not articulate on what basis it rested this comment and

---

[2] The proposed referral order also without leave of court, purports to change the caption of this matter to identify Oberlander and Richard Lerner by name. There is no legitimate basis or need for this change in the caption.

held no hearing on that issue despite the request for one, there are no facts or evidence in the record before the court tending to prove that Mr. Oberlander or I have violated a single order of any court. Rather, all this court has before it are mere assertions from movant's counsel, without personal knowledge, that Mr. Oberlander and I engaged in "egregious conduct" warranting criminal prosecution, assertions which, on their face, are demonstrably false; the fact that movant's own counsel and government representatives (including now Attorney General Loretta Lynch) have publicly discussed Sater's criminal history, including his sentencing **and cooperation**, conduct which movant's counsel claims is contemptuous; and the fact that the U.S. Attorney for the Northern District of New York has found no basis to proceed with prosecution after a more than three year investigation into substantially all the allegations in the current order to show cause.[3]

Of course, if the court's comment was at all based on the fact that Mr. Oberlander and I have been constrained by the court's invocation of Rule 42 in 2012 from denying allegations made against us, it would be unconstitutional to rely on that fact as a basis for seeking criminal prosecution.

This court first invoked Rule 42 in 2012. Nevertheless, to date, it has declined to proceed with the requirements of Rule 42, instead seeking the assistance of the US. Attorney's office to act as the court's investigator or to act as some form of quasi-grand jury. It is respectfully submitted that this court's mandate from the Second Circuit was limited to a narrow group of orders, many of which have expired. Regardless of the legal viability of the court's approach to date, it

---

[3] At the June 30, 2015 hearing, movant's counsel represented "as an officer of the court" that the United States Attorney for the Northern District of New York in the person of Assistant United States Attorney Stephen Green told him that he had limited his investigation to the February, 2012 New York Times article about Oberlander. In fact, the Northern District conducted a thorough investigation of allegedly contemptuous conduct beyond the New York Times article.

is respectfully submitted that, if the court is convinced, based on the limited record before it, that Mr. Oberlander and I violated one of the limited number of orders within the Second Circuit's order, it should proceed under Rule 42 and in any even should either hold an omnibus hearing as set forth below (see conclusion) or dismiss this proceeding outright based on what was, in effect, Mr. Oberlander's and my prior demurrer to the legal validity of any contempt charge, civil or criminal. To hold over my head for this many years the specter of prosecution, without charge or appropriate due process, is a violation of his Sixth Amendment rights to a speedy trial and chills speech in a manner violating the First Amendment.

**Either the Court can Initiate Criminal Contempt Prosecution Here, or the Government Can. No Blended Middle Ground Is Constitutionally Permissible, Notwithstanding That That is Exactly What the Court Seeks Here.**

-- *The General Model of a Criminal Prosecution*

Setting aside criminal contempt, a generic criminal prosecution (in the broad sense of the term, covering the gamut from investigation through punishment) is typically *initiated* by an investigation of some duration followed by grand jury indictment or an information, or, sometimes, by the issuance of a criminal complaint followed by an arrest and probable-cause hearing. In the first instance the indictment or information is the *charging instrument*; in the second, the complaint is. Importantly, either course results in a defendant's being criminally *charged*, which necessarily means that someone or some persons found probable cause to believe that the crime has been committed, a prerequisite to issuance of a charging instrument. And it marks the end of the investigatory stage and the beginning of the prosecutorial stage (in the narrow sense of the term).

A contempt criminal prosecution can proceed in the same way. It can be *initiated* by the DOJ in the same way and then charged the same way, to the complete disregard of any court other than insofar as a court may supervise a constituent grand jury.

But criminal contempt is unique because it can also be *initiated*, even performed all the way through the prosecutorial stage, by each of the other two branches of government.

Congress is empowered to *initiate* criminal contempt prosecutions by 2 U.S.C. §192 and §194. Basically, whichever body of Congress has been offended by the contempt may by its own procedures certify and transmit a statement of fact to the United States Attorney for the District of Columbia, who "shall" present it to a grand jury for possible indictment and then subsequently prosecute it.

That statement of fact is a Congressional finding of *probable cause*, and thus is a *charging instrument*, notwithstanding that Congress saw fit to interpose a further probable cause determination by grand jury.

But, if the U.S. Attorney declines to present it to a grand jury and so declines to prosecute, asserting the constitutional authority of the Executive to apply prosecutorial discretion, Congress may by resolution appoint a private attorney and prosecute the action in a federal district court.

Thus, in the case of Lois Lerner, we can say she was *charged* with criminal contempt by Congress, which found *probable cause* to believe she committed the crime, but wasn't prosecuted.[4]

---

[4] Her House contempt referral of provides a good example: After Lois Lerner refused to testify, asserting Fifth Amendment rights, the House Oversight Committee voted to refer to the full House a resolution finding her in contempt on grounds that she had previously waived her Fifth Amendment rights. The House then voted its assent, and pursuant to §194 the Speaker referred the statement to the U.S. Attorney, District of Columbia, who was then required by the statute to present the question whether to indict her to a grand jury. In short, the House, having by its vote found, or ratified the committee's finding of, good cause, *charged* her. Importantly, whether as a matter of law she could be further prosecuted depended on a purely *legal* question, *viz.* whether she had waived her right by her previous general protestation of innocence. On that point, the

Somewhat similarly, a court can *initiate* a criminal contempt prosecution pursuant to the procedures set forth in Rule 42, and no other. Pursuant to Rule 42, the court issues an order to show cause or, rarely, an arrest warrant. Either document is the *charging instrument*. Necessarily, its issuance must be based upon and supported by a finding of good cause.

Then, (unless the court finds cause not to) the court must refer it to the U.S. Attorney for *prosecution* (in the narrow sense), not *investigation* – because the investigatory phase is necessarily over with the issuance of the charging instrument – who may prosecute or exercise prosecutorial discretion and decline to, in which case the court appoints a private attorney to prosecute it.

That's it. Either the prosecution is initiated and followed through like the prosecution of any other crime or the prosecution is initiated and followed through according to Rule 42. And importantly, there's no interposition of a grand jury in Rule 42, even though the court apparently believes it can order one. Congress knows how to legislate, and if it put a grand jury into the statute for Congressional contempt but not into Rule 42, the court must assume that was for a reason.

Yet this court seems to think it can chart its own course (it can't), purporting to follow both courses at the same time and in the process violating the due process considerations of each.

---

committee had split, Democrats wanting to hear from legal before finding good cause for contempt but Republicans preferring to let the U.S. Attorney obtain a ruling from a federal judge during the normal course of grand jury presentation.

Importantly for this case, Issa, citing the opinion he received from the current House lawyer, said that the question of whether Lois Lerner had waived her rights was far from clear, and that by voting for the contempt referral, members would ultimately be requiring a federal prosecutor to get a ruling on the matter."These are all issues that will, if we refer this contempt motion, be heard by a federal judge," Issa said. "The question is, should an independent arbitrator decide?"

***The Rule 42 Course***: When this started in February 2012, the court made clear on the record that it was initiating prosecution for criminal contempt pursuant to Rule 42. Yet at the same time the Court refused to produce a charging instrument, saying only that one would come later. Moreover, the only even vaguely clear "charge" of contempt was the court's suggestion that some kind of mosaic theory of using public information to tell a story the court didn't want told could be criminal contempt, but even there the court hedged and said it wasn't sure.

Charging instruments aren't possibilities. They don't say, "We the [grand jury or other] hereby find probable cause to charge the defendant with the following crime, or maybe not."

As a result, the Northern District of New York wound up with a broad mandate respondent has never seen (but was clearly broader than movant's attorneys falsely represented it to be), and no exculpatory or inculpatory report issued after more than three years.

Yet when asked at the June 23 hearing, the court declined to close that activation of Rule 42 and instead expressly said it wanted to "leave it open."

***The Hands-Off-and-Let-the-DOJ-do-it-All Course***. On the other hand, at that hearing, the court said it was not proceeding by Rule 42 at this time (what does that mean, precisely, when it also acknowledged that it had been proceeding by Rule 42 and was not terminating it?), suggesting that the U.S. Attorney could proceed in the normal course to initiate prosecution.

***Fatal Indeterminacy***. But then why did the court decide to "find" that "there was probable cause for criminal prosecution?" That's only consistent with a Rule 42 initiation because only the body issuing the charging instrument (or the body reviewing it on a defendant's objection) has any business determining probable cause in the first place.

Perhaps it was meant to be dictum. Putting aside the question, then, why the court kept repeating it, what message does that send to the U.S. Attorney – besides a wink and a nod to the effect that he needn't worry about any demurrers if he charges, as the court has already decided?

Then what about the court's constant concern that the Eastern District not recuse itself, a theme throughout that hearing. If the court were merely allowing the DOJ to proceed in the normal course as it would with any crime, what possible interest could the court have in the DOJ's decision (if any) to recuse? And what message does it send other than, "Well, sure, technically it's all up to you, but you're in front of me every day and I'd be very upset if this doesn't get prosecuted by you…."?

***Separation of Powers Prohibits This***. As noted separately, this is an irreparable taint on the entire referral, whatever course it's supposed to be. Besides the unconstitutionally high probability that the EDNY will allow the court's warnings to influence its decision, federal district judges simply do not have the authority to do what this court purports to do, which is recruit the full police power of the Executive to investigate and build a case for a criminal contempt prosecution that the court knows very well it can't prosecute itself because it lacks the requisite evidence. And there's certainly no constitutional right or authority for a judge to then, if the U.S. Attorney declines to prosecute in the normal course, or a grand jury refuses to indict in a normal course, to "take over the reins" and then (re)activate or call on the "reserved" Rule 42 and go it alone.

-- *Why the Court Cannot Endorse the Proposed Order*

*First*, it purports to direct the U.S. Attorney to "institute criminal contempt proceedings," which of course is facially an order this court does not have the authority to issue because it purports to order the DOJ to proceed in the normal "hands off" track, violating separation of powers.

9

Moreover, while it's true that the court can, like anyone else, report a suspected crime to the U.S. Attorney, it cannot be within the bounds of fair play and due process, as noted *supra*, for the court to do so with overt assurances that it's already found probable cause and would be quite annoyed if the U.S. Attorney dared find a conflict – ironically thus creating an unfixable conflict.

Given the court's impolitic (at the least) remarks, and purported findings of probable cause, to permit the court to do this would render Rule 42 a nullity and provide the court, in effect, with a "sheriff" and "standing grand jury" to investigate a particular individual for unspecified crimes, a constitutionally abhorrent *Les Miserables* with the court in the role of Javert.

*Second*, judging by the other language, the phrase was intended to mean "the U.S. Attorney is directed to accept this referral to prosecute pursuant to Rule 42(b)" as, *inter alia*, it purports to be a "Rule 42 Order," as it expressly invokes Rule 42 of the Federal Rules of Criminal Procedure *in direct contravention of this court's express disavowal to proceed under Rule 42 at this time*.

*Third*, the proposed order fails to comply with the notice requirements of a Rule 42 order, and recall that Rule 42 is the *exclusive* means by which the court can initiate a criminal contempt prosecution. Rule 42 is, by definition, a charging instrument, and whatever else it is, the proposed order is not a proper charging instrument, which must detail the charges and fix the time of trial.

*Fourth*, and relatedly, the proposed order is devoid of specifics as to what matter is being referred to the United States Attorney. If signed, it would be an open-ended directive to launch a "fishing expedition" to investigate and prosecute my alleged conduct with the imprimatur of the court's authority and without limitation of scope, time frame or duration.

As noted, this type of referral for prosecution would be constitutionally improper in any context as an attempt to mix together the two constitutionally "unmixable" methods; *a fortiori*, where, as here, the putative criminal prosecution is facially for purely speech crimes, aimed at punishing me and Mr. Oberlander for exercising our First Amendment rights of speech and petition and has the effect of chilling such activity regardless of the outcome, *infra*. Indeed, I have been able to find only one reported case of such an unconstitutional expansion of judicial power into the realm of the executive (as would be the case here, with an open-ended *Alphonse and Gastone* back-and-forth commingling of prosecutorial and investigative power, and it was roundly and deservedly trounced by the appellate court.[5]

### There is no Evidence to Support a Finding of Probable Cause and No Due Process to Support It

**--**     There is no Evidence Before the Court to Support a
              Finding of Probable Cause or Good Cause

At the June 30, 2015 hearing on movant's civil contempt order to show cause, the court commented first that "probable cause" and then "good cause" existed to justify re-referring the movant's allegations to the United States Attorney for the Eastern District of New York. The court did not specify on what it based these comments. However, as described more fully in the

---

[5] *Cobell v. Norton*, 334 F.3d. 1128 (CA3 2003). The court appointed a monitor with such power as to make the court's function in the matter simultaneously that of judiciary and executive at a constitutionally impermissible level:

> Regardless whether the district court has any inherent authority to appoint an agent to monitor the conduct of a party in litigation before it, it was surely impermissible to invest the Court Monitor with wide-ranging extrajudicial duties over the Government's objection. The Monitor's portfolio was truly extraordinary; instead of resolving disputes brought to him by the parties, he became something like a party himself. The Monitor was charged with an investigative, quasi-inquisitorial, quasi-prosecutorial role that is unknown to our adversarial legal system.

11

opposition to movant's initial papers in support of their order to show cause, there is no factual basis for a referral.[6]

*Taint Problems*. To the extent that the court intended to follow an "ordinary course" "hands off" initiation, as noted above the court's comment irreparably taints the referral, and even more so to the extent that it was unsupported in substance and in procedure.

*Substantive Problems*. To extent that the court's expressed intention to refer this matter for criminal prosecution pursuant to Rule 42, and thus the court's finding of good cause was based on movant's counsel's mere assertions, without personal knowledge or any other foundation at all, of alleged conduct by Mr. Oberlander or me, there is no evidence or equivalent thereof of a violation by us of a single identified order. Indeed, many of counsel's assertions are fabrications. Without wishing to repeat the showing in opposition, a few of the more egregious examples are:

Movant alleges that Judge Glasser ordered Oberlander (and other participants in an open court hearing on July 20, 2010) not to disseminate the fact that Felix Sater who testified at the hearing, was John Doe. To the contrary, at the hearing movant's then-attorney asked Judge Glasser to bar Oberlander and Lerner from disclosing the fact that John Doe was Felix Sater. Judge Glasser expressly *denied* this request, correctly noting it was beyond the authority of a

---

[6] The court will recall that, late on the night before the June 30, 2015 hearing, movant's counsel served a "supplement" including further allegations, none of which I was given the opportunity to address.

12

federal judge to order anyone at an open court hearing not to report what he had seen and heard.[7]

To now assert that somehow Mr. Oberlander and I should be held in criminal contempt for alleg-edly violating that non-order borders on the Kafkaesque, and is in repudiation and ignorance, of Supreme Court precedent.[8]

Movant's counsel asserted that Mr. Oberlander and I violated the Second Circuit's seal-ing order by filing a petition to the United States Supreme Court unsealed. That assertion was ab-solutely false. The petition for certiorari with the cover was emblazoned "SEALED," and was filed under seal, as the movant is well aware, having been served with a copy by the appellate printer that same day.

With respect to the constant canard that Mr. Oberlander and I conspired to have movant killed or harmed by disclosing to the defense attorney for reputed mob member Daniel Persico in 2011 the fact of movant's cooperation with the government, this was a complete fabrication. For

---

[7] See June 21, 2010 Transcript p. 116-117, 98-cr-1101.

> "Ms. Moore: Your honor, given the history, I would also ask everyone present in the courtroom be directed that they not advise anyone the John Doe referenced in the document is my client.

> "The Court: Ms. Moore, there is I think an extent even to which the broad enor-mous powers of Federal Courts do not extend and I think the limit to which you're requesting that power be extended is beyond the borders of Federal Court power, which is quite enormous, but if exercised carelessly can be quite inappro-priate. I'm not directing the court or the world at large with respect to this pro-ceeding, John Doe or everyone here. . . . With respect to the last request you made it is denied."

[8] See *Craig v. Harney*, 331 U.S. 367, 374 (1947) [Emph. Add.]:

> A trial is a public event. What transpires in the courtroom is public property. *If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt.* And we can see no difference though the conduct of the attorneys, of the jury, or even of the judge himself may have reflected on the court. Those who see and hear what transpired can report it with impunity.

just one example, in February 2001, at a conference in Persico's criminal trial before Judge

Glasser, it was revealed in open court, with Persico in attendance, that movant, identified as Fe-

lix Sater by name, was "an unindicted co-conspirator and cooperater with the government . . . ."

February 2, 2001 Transcript p. 26. Persico knew of movant's cooperation with the government

and against him more than eleven years before the 2012 "incident" involving Sal Lauria.

In movant's "ambush" submission, his counsel argues that because Mr. Oberlander's for-

mer client, Jody Kriss recently turned over a copy of Sater's Post Sentencing Report ("PSR"), we

must have recently given it to him. However, missing is the fact that when Judge Glasser ordered

Mr. Oberlander to turn over the original of the PSR *which he did in open court*, he did not order

Mr. Kriss to turn over his copies of the PSR at that time, or ever, and Kriss was present through-

out the hearing *and at all times represented by independent counsel* (Mr. Stamoulis, of Stamou-

lis & Weinblatt) as was made clear to the court. So no order on Mr. Oberlader could have oper-

ated on him vicariously. That only order came from Magistrate Judge Maas on April 30, 2015

years after Mr. Oberlander turned over the PSR to Judge Glasser.

It is respectfully submitted that given the many instances of false statements by movant's

counsel, at a minimum, this court should conduct an evidentiary hearing to determine what, if an-

ything, movant's counsel has asserted has any evidentiary support or basis in reality.

-- *The Methods and Means by Which the Court*
*"Found" Probable Cause Violate Due Process*

***Procedural Problems***. Once again, to extent that the court expressed an intention to refer

this matter for criminal prosecution pursuant to Rule 42, the court has, or is about to, commit un-

constitutional, structural, per se prejudicial error. That's because the few courts that have ever

reached the issue all hold that the issuance of the Rule 42 order is the legal equivalent of the issu-

ance of a grand jury indictment, because a Rule 42 order is a charging instrument denoting probable cause, and so at least where, as here, it was issued pursuant to a party's or non-party's petition therefor, rather than *sua sponte*, that petition is the legal equivalent of a criminal complaint and therefore the court's taking up and disposition of that petition by issuance of the order must necessarily have been a preliminary hearing.

And neither Mr. Oberlander nor I were afforded such a hearing, nor is it clear that the court will permit us to immediately file such a motion to hold one with respect to whatever "referral order" the court issues, if it is issued pursuant to Rule 42.

**--**     *This Court Should Not Re-Refer Matters Which*
*Have Already Been Investigated by the NDNY*

As noted, in 2012, this court first invoked Rule 42, but did not follow such invocation with a "charging instrument." Instead, the court invited the US Attorney for the Eastern District of New York to investigate Mr. Oberlander and me. After determination of a conflict, the investigation was referred to the Northern District of New York. After approximately thirty-six months, the Northern District US Attorney still has evidently declined to prosecute. This court should not re-refer the same matters that the Northern District US Attorney already investigated and deemed unworthy of prosecution.

***Alarmingly, Movant's counsel appears to have misrepresented to the court the scope of the Northern District US Attorney's investigation.*** At the June 30, 2015 hearing, movant's counsel Robert Wolf represented "as an officer of the court" that he was told that the United States Attorney for the Northern District of New York limited its investigation to the issue of Mr. Oberlander's and my comments to the New York Times in February 2012. Upon investigation, it is now clear that Wolf's statements to the court were patently false and intended to mislead this

15

court into re-referring matters which were already investigated and presumably rejected by the office of the Northern District of New York United States Attorney.

> **--** *If the Conduct that Respondents are Alleged to Have Done is Contemptuous, then Movant's Counsel and Others Should Similarly Be Found in Contempt.*

While neither Mr. Oberlander nor I have been found to have engaged in any of the conduct alleged by movant, were the court to charge us with criminal contempt for, as examples, (allegedly) speaking to the media about Sater's conviction, sentencing and cooperation or (allegedly) revealing that he was "Richard Roe" in the appellate proceedings in the Second Circuit, others including movant's counsel should similarly be charged with criminal contempt.

Myriad persons have described, in far greater detail than Mr. Oberlander or me, the circumstances of movant's criminal conviction, sentencing and the fact – or even extent - of his cooperation. Indeed, movant's counsel are quoted in the very publications which they attach to their papers accusing Mr. Oberlander and me of violating court orders. Moreover, in his motion for contempt, movant accuses us of disclosing to *The New York Times* that he was Richard Roe. While that alleged conduct did not violate any court order in effect at that time, if it did, movant's counsel are equally in contempt because they also explicitly identified Mr. Oberlander as Richard Roe in publicly filed court documents, and did so well before the *pendente lite* injunctive order of the Second Circuit expired with the issuance of the December 20, 2011 mandate that closed the appellate case.[9]

---

[9] Indeed, movant himself appears to have engaged in this same ostensibly "prohibited" conduct. Movant has sued one of the former plaintiffs in the *Kriss II* case, 13-cv-3905 (SDNY) (Schofield, J.) in Israel for, inter alia, defamation. In the publicly available complaint, movant details all the facts in the complaint which are in the sealed Joint Appendix, annexing documents that were purportedly "sealed" in the New York federal courts, but are now available at the court in Israel.

In essence, movant's counsel are arguing that only Mr. Oberlander and I are bound by orders of the court. Plainly, they are wrong. This is not civil contempt, where orders are occasionally issued for the benefit of one party but not another. This is criminal contempt. The only "person" injured by a criminal contempt is the court itself, and it would beg the question(s) of selective and retaliatory prosecution were the court to suggest that it can forgive the insult by movant but not the same insult by respondent because of the Eastern District "cooperator exception" to the law.

**--**         *Because the Instant Proceeding Implicates My First Amendment Rights, I am Entitled to Heightened Due Process*

The conduct at issue in this proceeding relates to Mr. Oberlander's and my alleged use of allegedly sealed information in the prosecution of a civil suit against movant and his company, seeking redress for defrauding investors by amongst other things, taking advantage of the putatively sealed nature of his past criminal conviction; and Mr. Oberlander's and my alleged communications with members of the press regarding the existence of sealed "secret" federal criminal proceedings.

Such activity, on its face, is protected by the First Amendment's guarantee of free speech as well as the right to petition the government for redress of grievances. It is clear that movant's efforts are to silence Mr. Oberlander and me. However, since these proceedings seek to bar Mr. Oberlander and me from exercising our constitutional rights and, indeed, their mere existence has a chilling effect on our (and others') exercise of such rights, it is respectfully submitted that this court should not proceed, if at all, without affording us the heightened due process rights which are required before such constitutional rights may be infringed or, as appears to be intended by movant, eliminated.

17

This is far from hyperbole. Consider this article which just appeared days ago in the Sunday edition of *The Miami Herald* and of which this court may properly take judicial notice:

THE MIAMI HERALD – July 12, 2015

THERE WILL NEVER BE A PRESIDENT TRUMP – by Carl Hiassen

More than 180 [investors] put down deposits for the Trump International Hotel & Tower in Fort Lauderdale starting in 2005. They thought Trump was the developer because that's what the advertising said. **Unfortunately, the actual developers were led by a convicted felon and ex-FBI informant named Felix Sater, who put together a partnership that did other name-licensing ventures with Trump (at least two have gone into foreclosure).**

At the time the Fort Lauderdale Trump Tower began to rise, **Sater had just pleaded guilty in a $40-million securities swindle involving Mafia members.** Sater's files had been sealed by a New York judge, so investors were unaware of the case.

The Fort Lauderdale project tanked. Trump took his name off of it when he stopped getting paid. Trump was later acquitted of engaging in deceptive business practices, a case that's being appealed. Most buyers recouped part of their down payments in out-of-court settlements.

This is one of many stories that will resurface during Trump's dead-end candidacy, raising questions about his judgment and greed. If you sell your name to a mob-connected felon who is peddling condos, it's not enough to claim you "didn't know him very well."

The editors of a national newspaper, long ranked in the top 25 in circulation, have determined it newsworthy that an announced presidential candidate has unexplained ties to mobster Felix Sater, who defrauded investors for years by hiding his federal racketeering conviction from them.

That's no surprise: four years ago when Trump declared his candidacy in the last presidential cycle, Newsweek made the same decision, though they had nowhere near the information The Miami Herald has today because most of it wasn't public then, as it is now.

Put aside for now the disturbing fact that, if the prosecutors and courts of the Eastern District and Second Circuit had had their way, even today no one would know the truth about Sater and Trump – after all, they had gone so far as to secretly order respondents and others not to tell

Congress any of this, or of that order itself – and put aside the more disturbing fact that we now know that the government and courts (1) knew that Sater was using the "sealing" to defraud his partners, investors, and lenders; (2) admitted that doing so is a felony, yet still did all they could to help him get away with it as a reward for his cooperation; and (3) routinely allow favored co-operators to commit the same concealment fraud, there is an even more disturbing fact:

This court has just made clear that I may face criminal contempt charges initiated by the court itself, without even the rights to a grand jury or to be heard first, if I distribute copies of this Sunday's Miami Herald article, or even discuss Sater or his frauds at all, anywhere, for any reason, even though it's all public knowledge of national concern.

I and my co-respondent may well be the only persons in history to be imminently threat-ened with prison for criminal contempt if we dare to publicly discuss, in a presidential election, the already-public fraudulent concealments of a convicted felon and those in government (or like Trump, those who would be) who may have helped commit them.

And amazingly, the court order that would be purportedly violated, a *pendente lite* decree issued by the Second Circuit in February 2011, dissolved ten months later in December 20, 2011 upon that court's issuance of a mandate and concomitant loss of its jurisdiction, an issue the this court has declined to take up and resolve, yet which would terminate virtually all contemplated proceedings.

19

**Conclusion**

This court first invoked Rule 42 in 2012, yet to date it has declined to proceed with the requirements of Rule 42, or to terminate its invocation of it, instead now seeking the assistance of the U.S. Attorney's office to act as the court's special investigator or some form of quasi-grand jury notwithstanding, as noted, Congress has expressly interposed a grand jury in Congressionally initiated criminal contempt proceedings yet has not done so in judicially initiated proceedings, and one must presume the difference was intentional.

Moreover, it is respectfully submitted that this court's mandate from the Second Circuit was limited to a narrow group of orders, many of which have expired, making any form of contempt proceedings devoid of legal basis.

Even more, and without regard to the legal viability of the court's approach to date, it is respectfully submitted that, at this point, if the court is convinced, based on the limited record before it, that I violated one of the limited number of orders within the Second Circuit's mandate to this Court, it should proceed under Rule 42.

And whether or not it does proceed thereunder, the court should hold an evidentiary and related omnibus hearing so that it may address the issues raised by Mr. Oberlander and my demurrer, issues of legal impossibility, not factual innocence. That I will not now relinquish my Fifth Amendment right to remain silent does not prevent the court from holding the obvious, that the Second Circuit's *pendent lite* order, which forms the basis for virtually all charges, lapsed years ago upon the issuance of its mandate on December 20, 2011, closing the case. This court can rule on the legal sufficiency (or lack thereof) of movant's allegations without implicating my testimonial privilege. It is respectfully requested that the court do so.

To hold over me for this many years, the specter of criminal prosecution, without charge and without appropriate due process, comprises a violation of my Sixth Amendment rights to a speedy trial and, at a minimum, chills speech in a manner which violates the First Amendment. Moreover all the (alleged) harm that was done was done long long ago.

It is respectfully submitted that this court should not endorse the form of order proposed by movant's counsel. It is further submitted that the court lacks a record sufficient to support a Rule 42 proceeding. It is further suggested that if, nevertheless, the court will initiate a criminal contempt prosecution against me, then I should have the ability, pursuant to a scheduling order, to petition for it to simultaneously do so as to other contemnors, including movant.

Finally, respondent respectfully calls the court's attention to this paragraph, set forth above, from the Lois Lerner matter:

> Issa, citing the opinion he received from the current House lawyer, said that the question of whether Lerner had waived her rights was far from clear, and that by voting for the contempt referral, members would ultimately be requiring a federal prosecutor to get a ruling on the matter."These are all issues that will, if we refer this contempt motion, be heard by a federal judge," Issa said.

That is the whole issue in a nutshell. The charges or rather allegations against me (and Mr. Oberlander) are startlingly devoid of legal validity, most especially because, as noted, the orders have lapsed. A referral to the U.S. Attorney, as contemplated without an adjudication of this issue will eventually, if the prosecution moves forward, result in the U.S. Attorney's seeking a ruling from this court on exactly that (or those) issues. To subject me to criminal investigation before ruling on the issue that this court must inevitably rule on, and which is overwhelmingly likely to result in the dismissal of the charges against me, would be unthinkable.

21

Accordingly, and for the further reasons set forth in the opposition papers submitted in behalf of co-respondent Frederick M. Oberlander, movant Felix Sater's proposed order must be rejected.

Dated: New York, New York
       July 14, 2015

/s/ Richard E. Lerner