1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

  IN RE:                          :     12-MC-557(BMC)
                                  :
                                  :     U.S. Courthouse
                                  :     Brooklyn, New York
    MOTION FOR                    :
    CIVIL CONTEMPT                :     TRANSCRIPT OF
    BY JOHN DOE                   :     ORDER TO SHOW CAUSE
                                  :
                                  :
                                  :     June 30, 2015
                                  :     2:15 p.m.
                                  :
                                  :
- - - - - - - - - - - - - - X

BEFORE:
                HONORABLE BRIAN M. COGAN, U.S.D.J.

APPEARANCES:

For the Movant:          BEYS, LISTON, MOBARGHA & BERLAND LLP
                         825 Third Avenue
                         New York, New York 10022
                         BY:  MICHAEL P. BEYS, ESQ.


                         MOSES & SINGER LLP
                         405 Lexington Avenue
                         New York, New York  10174
                         BY:  ROBERT S. WOLF, ESQ.
                              ROBERT B. McFARLANE, ESQ.


For the Respondents:     BLANK ROME LLP
                         405 Lexington Avenue
                         New York, New York  10174
                         BY:  JEFFREY C. HOFFMAN, ESQ.
                              SIMON MILLER, ESQ.

                         RICHARD E. LERNER, ESQ.
                         PRO SE
                         1375 Broadway
                         New York, New York 10018

2

Court Reporter:      Holly Driscoll, CSR
                     Official Court Reporter
                     225 Cadman Plaza East
                     Brooklyn, New York 11201
                     (718) 613-2274


Proceedings recorded by mechanical stenography, transcript produced by Computer-Assisted Transcript.




                    *    *    *


          THE COURT:  Have a seat please.

          THE CLERK:  In re:  Motion for Civil Contempt by John Doe, docket number 12-MC-557.

          Counsel, please state your appearances, starting with the plaintiff.

          MR. BEYS:  Good afternoon, Your Honor, Michael Beys for movant Felix Sater, with the firm of Beys, Liston, Mobargha & Berland.  I'm joined by Robert Wolf, Moses & Singer, my co-counsel.

          MR. WOLF:  Good afternoon, Your Honor.

          MR. BEYS:  I would note, Your Honor, that Mr. Sater himself is present in court today, a summer intern in my office, Joe Schwartz, and Robert McFarlane, Mr. Wolf's associate, with the firm of Moses & Singer.

          Good afternoon.

          THE COURT:  Hi.

MR. MILLER:  Good afternoon, Your Honor, Simon Miller from the law firm of Blank Rome, LLP representing Frederick Oberlander, one of the respondents.  With me is my partner and colleague Jeffrey Hoffman, who also represents Mr. Oberlander, and Mr. Oberlander is here sitting next to me.

MR. LERNER:  Richard E. Lerner appearing pro se.

THE COURT:  All right.

We have to iron out the procedure as to what we're going to do.  My questions primarily are for you, Mr. Beys, which are these, I think the respondents raise a good point that the orders to show cause that you have submitted, including the one that you submitted I think last night or the supplement you submitted last night ask for both criminal and civil contempt and if there's going to be a criminal contempt, we have to decide who's going to prosecute it.  If there's going to be a civil contempt, you can prosecute it but then they have a good point that while they're under a specter of criminal contempt, it kind of handcuffs them in defending the civil contempt.  Now, all of your papers ask me to make a referral for the criminal contempt which feels like a road we have been down before.  So, when you ask me to make that kind of referral, what specifically do you have in mind?

MR. BEYS:  Judge, we've taken our guidance from Your Honor and from what Your Honor has said, so starting with the transcript of February 27th of 2012, Your Honor was the one

who said it doesn't really work as a civil contempt if they've done what we've alleged they've done, and we think the record is very full on this, that it ought to be a criminal matter. Your Honor referred it to the Northern District. The Northern District had a very limited mandate, as they told Your Honor, only the New York Times article of February 2012.

Your Honor called us back in October and it was our sense when Your Honor asked for a charging instrument that Your Honor was still deciding between civil or criminal. It would be our preference, given what has happened here over the last four years, to see this be prosecuted by a prosecutor but we're not in a position to make that happen. All we can do is make a presentation to you and you decide.

Obviously if the criminal piece runs its course, that is to say if there is a broader mandate and that too runs its course, yes, we would like to seek money damages for the civil contempt.

THE COURT: All right. Well, when I said in February that I didn't think civil contempt was likely to furnish a remedy here, what I meant was that most of the things you're complaining about had already happened, so it wasn't like I could impose an injunction fining the defendants $10,000 a day until they stopped doing what they were doing because in fact they had already done what they had done. There might have been a risk of ongoing further violations and

5

I know, according to your allegations, there in fact have been further violations, but my comment was not meant to foreclose you from the ordinary civil remedies that would be available which, as far as I know, the only one that would be applicable would be attorney's fees at this point.

Now, you've mentioned just now that there are damages that Mr. Sater has incurred and I, frankly, don't know if those would be recoverable as a civil contempt.  I suppose theoretically I can't think of a reason why they wouldn't be. So, I don't want you to think that you should go that way.  I mean we may have a miscommunication when you say to me that you're taking the lead from me when, frankly, I'm taking the lead from you because you're the complainant and you have to tell me what it is you want.

Now, one other point I want to make about that is I don't think I did or could refer the criminal contempt to the Northern District.  I think what happened was I referred it to the Eastern District.  The Eastern District, for reasons that I've never been able to understand, recused itself and they referred it to a co-equal branch of the Justice Department, the Northern District.  As to the scope of the Northern District inquiry, I think at that time it investigated what it knew of at that time.  More allegations were subsequently raised and I'm not exactly sure of what they went into but what I do know at this point is they don't seem much

interested in prosecuting it either.

MR. BEYS:  I would just correct that, Your Honor.

THE COURT:  Okay.

MR. BEYS:  They too are standing by for your call. The conflict that may have existed three and a half years ago, EOUSA at least found the conflict, doesn't exist anymore. It's three and a half years later.  That's my opinion, that's my statement, but I don't believe the conflict is there.  In anticipation of today's hearing and the uncertainty whether this would be civil, criminal, quasi-criminal, I spoke to Mr. McGovern, Chief of the Criminal Division.  I can't refer it to that office.  He's saying we're not going show up because you say so, Mr. Beys, but we're standing by if the judge picks up the phone to us.

So, to the extent it hasn't been clear up until now, let me make it plain, Your Honor, we are asking the Court for a criminal referral here to the Eastern District to have them prosecuted for criminal contempt of court.

THE COURT:  All right.  And you're confident that if I do that, I am not going to get the renvoi, that is to say the Eastern District will again say, oh, we've got this conflict, we'll send it over to the Northern District or maybe this time they pick the Southern District; you don't think that's going to happen?

MR. BEYS:  Judge, it's just my opinion, I don't

think it's going to happen.  I think the conduct here has been egregious enough and a very important Eastern District cooperator was compromised because of the conduct of these people but I can't say that for certain, I'm an officer of the court, I can't make a guarantee one way or the other.

THE COURT:  Well, I am just wondering if your conversation with Mr. McGovern covered that possibility.

MR. BEYS:  It covered it and he just accepted at face value what I said which is that the conflict was three and a half years ago and it's gone.  The conflict was based on the government being adverse to the respondents in civil appellate litigation.  That was three and a half years ago. It's not a conflict forever.  As Your Honor puts it, and I agree with Your Honor, it may not have been a conflict then.

THE COURT:  Okay.  All right.

Let me hear from respondents, just in case you have anything to add.  You may be passive players at this point just waiting to see what I do here.

MR. HOFFMAN:  Well, on one issue, Your Honor, I'd like to speak and it is this, I was representing Mr. Oberlander during the investigatory stage, I had many conversations with Mr. Green who was the Northern District prosecutor.  In fact, I went up there on a number of occasions and met with him.  Throughout those proceedings counsel continued to send them additional materials and additional

matters that they thought were a basis for contempt and the last time we were here, and I wasn't -- I was here, I just wasn't on the record because I hadn't at that time been fully retained for this, Your Honor indicated -- I hate that word, Your Honor said that you had gotten a phone call from the Northern District and it was your belief that they were not interested in going forward.

We've sort of all been on tenterhooks and maybe we should have just picked up the phone but we don't feel comfortable doing that with a federal judge, because we at this moment in time still don't know if that proceeding is over and if it is, we would love to know that and then we can know what we're going to do moving forward from this point.

THE COURT:  All right.  Well, what you say is I think largely correct.  I didn't have a definition rejection from the Northern District but I had indications that they were not going to indict, or if it were a misdemeanor I guess it would be an information, but I don't have a disposition and also it is true that while additional matters were referred to them, I don't know which ones they looked into and which ones they didn't.

MR. WOLF:  Your Honor, may I speak to that?

THE COURT:  Yes.

MR. WOLF:  I don't want to interrupt the Court.

THE COURT:  That's all right.

9

MR. WOLF:  I also spoke to Mr. Green and in fact I was the one forwarding most of that additional information.

THE COURT:  Mr. Green is the Northern District?

MR. WOLF:  The Northern District Assistant U.S. Attorney.

THE COURT:  Okay.

MR. WOLF:  I had conversations with him and I'll state to the Court and as an officer of the court, he told me straight up when I was sending additional information that their investigation was narrowly proscribed only to the New York Times article because I was engaging him on what was clearly subsequent egregious conduct which I believe clearly merited criminal investigation, if not criminal prosecution, and he made that crystal clear to me that it was -- especially because the conduct did not occur in their district that they were particularly limited to the mandate of this Court or the instruction at the time and their investigation and the determination of whether or not the matter would merit prosecution was limited to the New York Times article.

THE COURT:  I wish you had come to me then and said you need to expand your referral because things have happened, maybe you did, I don't know, the history has been so long and, frankly, that's my hesitation, I won't say reluctance because I'm not reluctant, but I'm a little hesitant to re-refer it to the Eastern District because it has the risk of starting this

10

all over again and winding us up back where we are, but I hear from Mr. Beys that he thinks that's not likely to happen, although he can't rule it out.

MR. WOLF: Your Honor, may I just say this as well, I respectfully request on our client's behalf, and I don't think there's any question that, respectfully, that a criminal investigation here is merited, if not criminal prosecution is merited, what we submitted last night, and it's not meant to take anyone by surprise but certainly we wanted to bring it to the Court's attention.

THE COURT: I've read it. You need not make the record on that. It is on the docket.

MR. WOLF: It is on the docket. That presentence report is --

THE COURT: I guess you're going to say it anyway. Pretend I'm not here.

MR. WOLF: -- and they deserve all the due process rights that all criminal defendants should have or those accused and we agree with Your Honor, they shouldn't be handicapped in a civil proceeding when there's a criminal investigation of the very conduct that's at issue. We're confident, although cannot be guaranteed, that the Eastern District will very much entertain a referral by this Court for the conduct which, of course, belongs in this district as to their cooperator but the conduct occurred here and it is

appropriate and we have no reason to believe it won't be considered and entertained by the Eastern District and, frankly, that they'll take appropriate action which we have confidence in.

THE COURT:  Yes.

MR. HOFFMAN:  If I may, Your Honor, because --

THE COURT:  What do you want to achieve here? Obviously you want your client exonerated.

MR. HOFFMAN:  We want to go home.

THE COURT:  We're going to have a procedure before we do that, so what's your proposal for a procedure?

MR. HOFFMAN:  I would respectfully propose the following; first, perhaps we should get some resolution in the form of a report to the Court, for example, from the Northern District so we can know what they looked at and what the determination was; secondly, assuming we can get that, we're not but we would like -- we'd ask the Court to ask for that and since that was a three plus year investigation, my guess is it won't take them too long to put together a few page report saying here's what we investigated, here's our determination, and then I think that would end, unless the Court takes a different position on those issues, that would end that situation.

Then I would ask that we be allowed to respond not only as we have to what we've already put in an answer to or a

12

response to on the order to show cause but to what was received late last night and when I say late last night, I didn't get it at all, my colleague got it and got it in the midst of preparing for a bankruptcy matter that he was in court on this morning, so I would ask the Court to give us an opportunity, and I think there's no objection from Mr. Wolf if my earlier conversation with him, if I understood it correctly, to respond to that and then our hope would be that as a result of those responses, the Court would obviously either ask for an evidentiary -- not ask for, order an evidentiary proceeding on any of those issues you think would be necessary and at the end of the day not refer it for criminal prosecution.

THE COURT:  Well, I see.  So, you don't want it referred for criminal prosecution, okay.  So, the movant does and the respondents don't.  And you think we should proceed civilly?

MR. HOFFMAN:  Correct, because I don't think that there is -- well, first, I don't think there's sufficient evidence for it to go criminally and then, secondly, we should proceed civilly.  Obviously our position is that there isn't sufficient evidence civilly either but, yes, that would be my request.

MR. LERNER:  Your Honor, what I would request is I submitted that the papers were not properly served upon me and

13

therefore I'm not properly before the Court, I'd request that the proceedings against me be dismissed at this juncture.

THE COURT:  Well, I'm holding the service issue in abeyance pending a decision on what we do.  No doubt, if I choose to proceed civilly, the complainant will serve you again until it gets it right.  Ultimately, Mr. Lerner, you're going to be here.  I'm not going to hold you in contempt today, so whether you were served properly or not really doesn't matter in the long run.  You know, one of the things I was thinking, because I was reading between the lines in the comprehensive order to show cause and particularly the filing last night, what Mr. Beys has just now indicated which is despite his view I guess concurrent with what he thought my view was that this should be a criminal prosecution, and I have to tell the respondents I think there is probable cause to proceed with a criminal prosecution at least, I was thinking if the Eastern District is out and the Northern District is out, then I do have the power to appoint a private prosecutor but what I've just heard about the conversation with Mr. McGovern indicates to me that I ought to re-refer it to the Eastern District.

I see no point in chasing down the Northern District for a report or an explanation.  So much more has happened than the original referral to them that I think it is clear I'd have to expand their mandate and I don't want to do that,

14

it's basically starting them from a different point and, frankly, I'm not so confident having waited three years to hear something that I'm going to hear something more.

So, I will make another referral to the Eastern District of all allegations raised to date and I'm going to try to expand that referral prospectively, I don't know if I can do that but we'll worry about that when it happens, so that if there are any other alleged violations of the injunctions that are in place from either Judge Glasser or myself or from the Second Circuit or from any other judge relating to this matter, that will be within the purview of the referral.  I am also going to urge the U.S. Attorney for the Eastern District to proceed with all due haste with this prosecution if there is going to be a prosecution because the matter has taken an intolerably long time and I'm not sure it's optimal for the defendants to have this hanging over them for this long.

So, we're going to turn up the screws to put more pressure on establishing what procedure is going to be used to hear these issues.

Yes.

MR. HOFFMAN:  May I ask Your Honor that before you do that, we have the opportunity to both respond to last night's papers and to argue before Your Honor once we have responded, we can do it in short order, I'm not asking that

15

this take a long time, as to why there is not probable cause.

THE COURT: Well, you can file whatever you want. In terms of responding to what was filed last night, I think now is not the time. Clearly if those charges are heard criminally or civilly, you're going to have a chance to put in a response. If you want to put it in, put it in, I'm not stopping you. But I've read the response to the order to show cause that the respondents have put in and maybe probable cause is the wrong word, let me say sufficient reason or good cause to make the referral. What has been put in before me, and I'm really not even focusing on last night, does not persuade me that the referral is inappropriate. On the contrary, the papers persuade me that the referral is appropriate. So, I'm going to go ahead and make it. I'm not stopping you from putting in anything you want but it will be the U.S. Attorney that's looking at it next, not me. If we were proceeding civilly, it would be me but we're going to give the criminal process one last chance because I do feel, as I said in February, that the horse is out of the barn for the most part, whatever damage is alleged to have been done having been done and the nature of the alleged damage rises to the level where my preference is and has always been that we proceed criminally. All right. That's what I'm going to do.

Mr. Beys, what is your view -- wait, let me hear from the respondents.

16

Yes, go ahead.

MR. HOFFMAN:  The only other thing I was going to ask Your Honor is in the last go round Your Honor had said you were triggering Rule 42 and I assume that under Rule 42 you're ending that, you're not going to proceed on your own with any order to show cause on that matter.

THE COURT:  I'm not.  I'm not necessarily finally ending it but I'm not doing it now.  I am referring it to the U.S. Attorney to see if they're going to hand down an information or an indictment, so we need not worry about Rule 42 at this point.  If we do, you'll get notice obviously.

MR. HOFFMAN:  Okay.

THE COURT:  Mr. Lerner, something else?

MR. LERNER:  In filing the papers, the petitioners made no showing as to why these proceedings should be sealed. They failed to make the requisite showing.  I'd request that they be unsealed immediately, that everything on this docket be unsealed in light of the fact that there's been no proper showing by the petitioners.

THE COURT:  Do you have a response to that?

MR. BEYS:  Judge, I don't have a response to that. I know the courtroom is not sealed today.  There have been five years of sealing litigation.  I don't think it should be done on the spot like that, I think it should be briefed.  I'm not even sure what is or is not under seal on this docket,

12-MC-557.  It is my recollection that it is all unsealed.

THE COURT:  I'm not sure.

MR. BEYS:  I'm not sure either.  That's something that should not be done --

THE COURT:  File a formal motion, Mr. Lerner, and I'll certainly consider it.

MR. WOLF:  Your Honor, I would illuminate the obvious on at least one filing, one of our exhibits has the presentence report attached to it under seal.  That's clearly a document that should never be unsealed in this proceeding or any proceeding.  The respondents know that better than anybody.

THE COURT:  This much I recall, it arises out of a PSR which is automatically sealed by law, by the rules it's sealed.  If Mr. Lerner can show cause, although it does strike me, Mr. Lerner, my initial impression is there's some bootstrapping going on, the stuff is already out there because allegedly the respondents put it out there, therefore, the respondents say there's no reason to seal it.  I'm not sure that flies but I'll be glad to consider a written motion.

MR. SIMON:  Your Honor, a slightly related matter so that's why I raise it now, regardless of sealing or not sealing, and I would state that the record does appear to be sealed in the sense that even I as counsel, I can't access anything on the docket.

THE COURT:  Maybe you just need to get authorized because you weren't in at the beginning.

MR. SIMON:  Yes, that's what I thought.  I've tried that.  I gather Mr. Wolf has the same issue.  Up until this point I haven't -- my client can access them but there's a bigger issue and that is this order to show cause does not appear on the Court's docket, so I would just ask that at least the order to show cause itself appear on the docket.  I think that's a minor issue, nothing to do with sealing or not sealing.  It's just it doesn't even show up there.

THE COURT:  I can't imagine why that is.

MR. MILLER:  I gather, Your Honor -- well, maybe I shouldn't speculate.

THE COURT:  I file everything, some things under seal, some things not, everything gets filed.

MR. MILLER:  All I can say --

THE COURT:  Maybe you just can't see it.  Talk to my clerk.  Obviously the respondent's counsel and the movant's counsel has to get access to the docket, okay, unless somebody makes a particular motion about a particular document, but obviously we can fix that and I think when we do, you'll see that the order to show cause was filed.  If it wasn't, we'll get it filed.

MR. MILLER:  Thank you very much.  That's fine.

MR. LERNER:  Your Honor.

19

THE COURT:  Yes, Mr. Lerner.

MR. LERNER:  You indicated you would be making a referral based in part on what you received last night to which we have yet to respond.  I would simply request that Your Honor withhold such referral until we've had an opportunity to respond in as much as we may well demonstrate that the allegations therein are utterly without basis.

THE COURT:  But I'm not referring that particular matter.  What I'm referring is whether the defendants have engaged in conduct that is contumacious in relation to the injunctions that have been entered and prior sealing orders of the Court.  How far that goes, I am going to leave up to the U.S. Attorney in his investigation.  So, your pitch is not to me, it's to him.  All right.  Exclusive of that document, I'd still be making this referral of the broad issue that I just articulated.  So, whether he wants to take that up or doesn't take that up, that's not my decision, that's going to be his decision.

MR. HOFFMAN:  So, our request would be that if Your Honor is making a referral, and I heard what you just said, that it be more specific, that it be this order, whatever it is, order A and violation of that order, order B and violation of that order, so we would know specifically what the referral is, what they're investigating and then we can as well contribute to their investigation in the hopes of showing --

20

THE COURT:  I think it is pretty clear what they're going to investigate.  It is all the matters in the order to show cause and it probably includes the matter last night but the determination of which matters of those they want to investigate and which ones they don't, that's up to them.  I don't think I need to detail for them every allegation of a violation of the Federal Rules of Criminal Procedure or sealing orders of the Court, but I will do this, I'm going to ask the movant's attorneys to settle a proposed referral order on seven days' notice.  So, promptly please get me a proposed order of referral.

And then I will take your own proposed order of referral, how you think it is wrong, you can either comment on it, I prefer that you submit your own.  And then I will either choose one of the two or modify both and come up with my own but I'll have both parties' proposed scope of referrals in those orders.

MR. HOFFMAN:  Thank you.

THE COURT:  Seven days' notice and I'm really not going to extend that because I've got to get this case moving.

MR. WOLF:  May I say this though, can we have a date certain in which both parties will submit their orders?

THE COURT:  Yes, they're submitting theirs seven days after yours, you're submitting yours within a week.

MR. WOLF:  Thank you.

21

THE COURT:  Okay.  Anything else?

MR. BEYS:  No, Your Honor.  Thank you.

THE COURT:  Okay.  Thank you, all.

MR. HOFFMAN:  Thank you.

(Time noted:  2:55 p.m.)

(End of proceedings.)