UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                :

JOHN DOE,                           :

              Movant,             :

                                  :    **MEMORANDUM & ORDER**

        -against-             :

                                  :    12-mc-0557 (BMC)

RICHARD ROE; RICHARD E. LERNER;   :
WILSON, ELSER, MOSKOWITZ, EDELMAN   :
& DICKER LLP; and JODY KRISS,      :

                                  :

            Respondent.         :

                                  :

UNITED STATES OF AMERICA and      :
FREDERICK M. OBERLANDER,        :

                                  :

          Interested Parties.     :

                                  :
------------------------------------------------------------- X

**COGAN,** District Judge.

Before me is movant Doe's [122] motion and [146] supplemental motion for contempt and request for an evidentiary hearing as to respondent Kriss, for allegedly violating court orders by retaining and disseminating information sealed. For the reasons below, movant's motions are denied.

## BACKGROUND

This case is rooted in a 1998 criminal matter in which movant Doe pleaded guilty, pursuant to a cooperation agreement with the government, to an Information charging him with participating in a racketeering enterprise in violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act. The Court in that matter sealed the case and its docket sheet, including the transcripts, cooperation agreement, and presentence investigation report ("PSR" and, collectively, "Sealed and Confidential Materials").

In 2010, a civil action was commenced in the Southern District of New York ("SDNY") by respondent Jody Kriss ("Kriss"), who was represented by attorney and respondent Fred Oberlander ("Oberlander").  Annexed to Kriss' civil complaint were several sealed documents from the 1998 criminal action involving movant, including movant's 2004 PSR and other Sealed and Confidential Materials.  That civil action in turn provoked a proceeding in the Eastern District of New York ("EDNY") before Judge Glasser, whereby movant moved to enjoin dissemination of those documents and maintain their confidentiality.  Oberlander was the respondent in that case, represented by attorney and now-respondent Richard Lerner ("Lerner").

The proceeding before Judge Glasser has led to various court orders involving the Sealed and Confidential Materials from the 1998 criminal case, and those Orders are the subject of my mandate and the current motion before me.  Judge Glasser first denied Oberlander's motion to unseal the documents, and issued a temporary restraining order ("TRO") in May 2010 to enjoin Oberlander and his clients from disseminating the Sealed and Confidential Materials, or information contained therein, from Doe's criminal case.  On June 21, 2010, Judge Glasser issued a permanent injunction that the "information contained in that [PSR] is not to be disseminated . . . The order with respect to PSRs is not directed to any individual, it is directed to the presentence report itself" ("June 2010 Order").  Judge Glasser also directed Oberlander to return the PSR to the U.S. Attorney's Office, and extended the TRO with respect to the other documents.

In July 2010, Judge Glasser reaffirmed his June 21, 2010 Order regarding the permanent injunction against dissemination of the PSR and extended the TRO with respect to the other documents for another ten days ("July 2010 Order").  He also ordered that the permanent injunction and TRO should cover all copies of the documents, and that all original and copies of

2

such documents were to be returned or destroyed until Oberlander could show there was some need to maintain the documents or keep them.  Oberlander appealed the permanent injunction and the extended TRO.

In February 2011, the Second Circuit temporarily enjoined all parties and all persons acting in concert from "publicly distributing or revealing in any way, to any person or in any court proceeding or any forum . . . any documents or contents thereof subject to sealing orders" in relevant dockets.  At that time, the Second Circuit designated me as Special Master with the limited mandate "to implement[] and oversee[] compliance with [the Second Circuit's] orders and the orders previously entered by Judge Glasser."

Oberlander thereafter requested, under the above-captioned docket number, a clarification following the Second Circuit's injunction that he was permitted to disseminate certain information in the sealed documents that were allegedly public knowledge.  At a hearing in April 2011 on Oberlander's clarification request, I learned that Oberlander had not destroyed or returned certain electronic and paper copies of the original PSR and other sealed documents.  I ordered Oberlander at the hearing to delete from his hard drive the documents subject to Judge Glasser's Orders and to return any photocopies of the documents in his possession.  By subsequent sealed written order ("April 2011 Order"), I reaffirmed my oral ruling, and also stated that it was "plainly the intent of Judge Glasser to have those documents destroyed or returned."

In May 2011, in response to Oberlander's request to release certain information contained in Sealed and Confidential Materials, I ordered that Oberlander could not disclose statements that combine public and sealed information, noting that it seemed "obvious that [Oberlander] is seeking to fatally undermine the purpose of the injunctions by publicizing information that

3

would render them ineffective."  Oberlander appealed my April 2011 and May 2011 Orders, as did respondent Kriss.

By Summary Order dated December 20, 2011, the Second Circuit affirmed my May 2011 Order and stated that Oberlander waived the opportunity to challenge my April Orders.  In addition, the Circuit affirmed Judge Glasser's permanent injunction against "dissemination of the PSR" ("Second Circuit Order").  In doing so, the Court stated that its "legal conclusions apply to all appellants, though our order refers principally to Oberlander."[1]

On February 10, 2012, Doe moved by an Order to Show Cause ("OSC") for findings of civil contempt against Oberlander and Lerner for violating the Second Circuit Order.  The basis for the OSC was that Oberlander and Lerner had allegedly participated in an article published in the *New York Times* on February 6, 2012 entitled, "By Revealing Man's Past, Lawyer Tests Court Secrecy."  It revealed Oberlander's true name and identity and showed Oberlander and Lerner, noted to be Oberlander's attorney, together in a photograph.  Doe alleged that both Oberlander and Lerner disclosed sealed information to the journalists.  This OSC was later supplemented with evidence that the respondents had also disclosed sealed information to *The Miami Herald* and *The Daily Beast*.

Following a hearing on Doe's motion, in an Order dated July 16, 2015, I referred the allegations to the U.S. Attorney's Office ("USAO") for EDNY for the purpose of allowing them to consider whether proceedings should be commenced against respondents Oberlander and Lerner for criminal contempt of court.  I stated that the referral "shall be understood to encompass any violation of an injunction or order issued in this or the related criminal or civil

---

[1] In 2013, Judge Glasser unsealed some of the documents, but ruled that the PSR and information sourced from the PSR would remain sealed and, if necessary, redacted from other documents.

4

proceedings, alleged to date or subsequently discovered, concerning the disclosure of information damaging to movant."

On August 25, 2015, Doe moved for an OSC as to why an order should not be issued holding Kriss in civil contempt and referring him to the USAO for criminal investigation. Doe bases his current motion for contempt on Kriss' return of Sealed and Confidential Materials, which occurred in May 2015 in accordance with an Order in his SDNY civil action. Doe argues that, because Kriss maintained copies of Sealed and Confidential Materials until May 2015, Kriss therefore violated Judge Glasser's June 2010 and July 2010 Orders, my April Orders, and the Second Circuit Order. Following a hearing on Doe's motion as to Kriss, Doe requested and was granted leave to file a supplement to his motion. Doe's supplement to his motion alleges that the actions of Oberlander and Lerner were done on behalf of Kriss for his benefit. The supplement to Doe's motion also requests an evidentiary hearing as to a *pro se* letter dated May 16, 2011, filed with the Second Circuit, which Doe alleges was written by Kriss.

I assume the parties' familiarity with the remaining facts and procedural history of this case.

## DISCUSSION

### I.      Interpretation of Orders

The Orders that comprise the subject of Doe's current motions are Judge Glasser's June 2011 and July 2011 Orders, the Second Circuit Order, and my April 2011 oral and written Orders. These Orders concern two separate directives: first, the injunction against dissemination of the PSR and, second, the return of Sealed and Confidential Materials. There is no doubt from the language of any of the Orders, beginning with Judge Glasser's, that the injunction applied to the PSR document itself and, therefore, applied to anyone in possession of it.

As to the latter directive, to return or destroy the documents, these Orders were not as clear.  For example, Judge Glasser directed Oberlander in June 2010 to return the PSR to the USAO immediately, stating, "I'll direct the presentence report to be returned.  To the extent you have it in your possession, return it immediately. . . ."  Judge Glasser's July 2010 Order reaffirmed his June 2010 Order and stated that all original and copies of the Sealed and Confidential Materials should be returned or destroyed until Oberlander could show there was some need to maintain the documents or keep them.  Similarly, I orally ordered Oberlander to delete from his hard drive the documents subject to Judge Glasser's Orders; my sealed written Order of April 2011 denied reconsideration of my oral ruling.  Finally, the Second Circuit affirmed Judge Glasser's permanent injunction, noting that all legal conclusions applied to all appellants.  None of these Orders expressly requires Kriss or anyone else in possession of the PSR or other Sealed and Confidential Materials to return or destroy all copies.  It should, however, be clear now to anyone in possession of the PSR or information contained therein and with knowledge of these proceedings or this Order that they are required to return or destroy these documents.

## II.       Civil Contempt

A court's inherent power to hold a party in civil contempt may be exercised only when the moving party proves (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply.  See King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995).  "It need not be established that the violation was willful."  Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Technologies, Inc., 369 F.3d 645, 655 (2d Cir. 2004); see also EEOC v. Local 638, 753 F.2d 1172, 1178 (2d Cir. 1985).

6

As a threshold issue here, Kriss cannot be held in civil contempt if his compliance is "factually impossible."  See Badgley v. Santacroce, 800 F.2d 33, 36 (2d Cir. 1986).  The purpose of holding a party in civil contempt is remedial, designed to coerce a reluctant party to obey a court's directive.  See Upjohn Co. v. Medtron Labs., Inc., 894 F. Supp. 126, 133 (S.D.N.Y. 1995) (citing Badgley).  Kriss argues that there is no evidence that he is not currently in compliance with Court Orders, and his counsel affirmed at the most recent motion hearing that "[e]very piece of material that could be remotely related was turned over" in May 2015.  Therefore, Kriss cannot be held in civil contempt now for violating previous Orders, as compliance now would be impossible.  See Badgley, 800 F.2d at 36 (noting examples of impossibility, e.g., contempt for failing to produce documents when documents not in individual's possession, or failing to testify at grand jury when grand jury term has expired).  I decline to hold Kriss in civil contempt, as there is nothing left to coerce him into doing.

Even if that were not the case, Kriss could not be held in civil contempt for failing to return or destroy the Sealed and Confidential Materials because the Orders were not "clear and unambiguous" in terms of who was required to return or destroy those documents.  A clear and unambiguous order is one that leaves "no uncertainty in the minds of those to whom it is addressed," and those addressed "must be able to ascertain from the four corners of the order precisely what acts are forbidden," King, 65 F.3d at 1058 (quotations and citations omitted).  This standard is a stringent one.  See, e.g., Gucci Am., Inc. v. Weixing Li, 768 F.3d 122 (2d Cir. 2014) (reversing contempt finding that new defendants had disobeyed Order requiring compliance with subpoena, but new defendants were not clearly and unambiguously included in definition of "defendants" in subpoena); Liberty Propane L.P. v. Feheley, 522 F. App'x 38 (2d

7

Cir. 2013) (vacating sanctions based on finding of contempt for failure to produce specific documents, where Orders did not expressly require that specific action).

The OSC that Doe originally submitted  alleged that Kriss had continued to violate Court Orders by retaining copies of the PSR, until he returned them in May 2015, when multiple Orders required the return or destruction of those documents; it did not accuse Kriss of disseminating the Sealed and Confidential Materials.  None of Judge Glasser's Orders clearly require that every person return and/or destroy documents in his possession.  Judge Glasser expressly enjoined the *dissemination* of the PSR and it expressly applied to anyone in possession of the information – but the requirement to return and/or destroy those documents was not "clear and unambiguous."  The Second Circuit upheld this Order and noted its application to everyone. My April 2011 Orders were unambiguously directed at respondent Oberlander.[2]  While it would have been prudent for Oberlander to counsel Kriss that he should also return and/or destroy any documents in his possession, Kriss cannot be held in civil contempt for past violations of an Order to which he was not clearly and unambiguously subject.  Doe's motion to hold Kriss in civil contempt for violation of those Orders is denied.

## III.        Criminal Contempt Referral

Having found that Kriss should not be held in criminal contempt, the question remains as to whether I should refer this matter to the U.S. Attorney's Office to determine whether Kriss should be held in criminal contempt.  "Refusal to obey a court order may subject a person to both civil and criminal contempt for the same acts."  In re Grand Jury Witness, 835 F.2d 437, 440-41

---

[2] The parties dispute whether Kriss is subject to some or all of the Orders he is alleged to have violated.  Kriss was unable to view my sealed April 2011 Order in the 98-cr-1101 case, as he was not a party, and Kriss was not added as a case participant to the 12-mc-557 docket until September 17, 2015.  He therefore would not have had access to those Orders.  More importantly, the language of the Judge Glasser's Orders do not unambiguously apply to Kriss, and the language of that Order is controlling.  Neither my, nor the Second Circuit's, Orders clear up the ambiguity present in Judge Glasser's Orders.

(2d Cir. 1987) (citing <u>Yates v. United States</u>, 355 U.S. 66, 78 S. Ct. 128 (1957)). Unlike holding a party in civil contempt, criminal contempt sanctions may be imposed only if it is proven beyond a reasonable doubt that the contemnor willfully violated the specific and definite terms of a court order. <u>See</u> <u>United States v. Twentieth Century Fox Film Corp.</u>, 882 F.2d 656, 659 (2d Cir. 1989). Although a court must exercise the "least possible power adequate to the end proposed" when seeking future compliance with a court order, <u>Shillitani v. United States</u>, 384 U.S. 364, 371, 86 S. Ct. 1531, 1536 (1966), it need not consider the effectiveness of a civil contempt remedy where the court is taking cognizance of past violations. <u>See</u> <u>Universal City Studios, Inc. v. N.Y. Broadway Int'l Corp.</u>, 705 F.2d 94, 96 n. 1 (2d Cir. 1983) (stating that the determination that civil contempt remedies are ineffective applies "when a court is endeavoring to secure future compliance with a court order, not when a court is taking cognizance of past violations") (internal citations omitted).

I need not determine whether these proceedings are meant to ensure compliance with the permanent injunction, or to punish past noncompliance. Although civil contempt and criminal contempt do not necessarily serve the same aim, a party cannot be held in contempt of a Court Order where that Order is vague. Civil contempt requires the Order which the party allegedly violates to be "clear and unambiguous"; criminal contempt requires the Order to be "specific and definite." In this case, having already held that the Orders at issue are not clear and unambiguous as to their application to Kriss in returning and/or destroying the sealed and confidential material, I also find the terms of the Order were not "specific and definite" as to who must return or destroy the Sealed and Confidential Materials. There is, therefore, no basis upon which Kriss could be held in contempt for failing to comply.

9

Doe attempts to circumvent this problem, in his supplemental brief following a hearing on his original motion, by claiming that Kriss was involved in the misconduct by Oberlander and Lerner.  According to Doe, "[t]he truth is that Jody Kriss and his prior counsel are a team, and Kriss is the captain."  Doe argues that Kriss was the person who first learned that Bernstein, the ex-employee of Bayrock, was in possession of confidential materials, and it was Kriss who put Bernstein in contact with Oberlander, offering Bernstein a portion of whatever proceeds Kriss recovered.  Doe alleges in his supplemental brief that every action undertaken by Oberlander and Lerner, including the threats to disseminate, and the actual dissemination of Sealed and Confidential Materials, was done on behalf of and for the benefit of Kriss.

Conspicuously missing from Doe's supplemental brief, however, is any evidence of such conduct by Kriss.  All Doe manages to proffer is that Oberlander was Kriss' attorney in the SDNY action, and Oberlander attempted to shake down Doe via a settlement.  Contrary to Doe's allegation, the fact that Oberlander was Kriss' lawyer does not show "in and of itself" any wrongdoing by Kriss.  That he used his position as Kriss' attorney while "threatening to disseminate, and actually disseminating" Sealed and Confidential Materials, or referring to himself as Kriss' "partner," does not implicate Kriss as a willful actor.

A principal is responsible for the conduct of its agent where the agency relationship is such that the agent acts, in a sense, as the embodiment of the principal. See Twentieth Century Fox Film Corporation, 882 F.2d at 660 (corporation's criminal contempt conviction upheld where its employee, acting within the scope of his authority, failed to comply with the law and a consent decree).  But an agency relationship alone does not lead to vicarious liability absent evidence of willfulness by the principal.  See N. Am. Coal Corp. v. Local Union 2262, United Mine Workers of Am., 497 F.2d 459, 465 (6th Cir. 1974) ("[T]here is simply no such thing as

vicarious liability of an individual for criminal contempt. Aside from regulatory offenses, intent is an element of every crime."). To hold so here would be to travel a dangerous path, particularly concerning legal representation and contingency arrangements, whereby a client could be vicariously liable for the misconduct of his attorney without any knowledge or authorization of that misconduct. At the very least, there must be some evidence that an attorney was explicitly acting within the scope of the agency relationship when he chose to cross the line between zealous advocacy and contempt of court.

Here, there is no evidence that Kriss was at all involved in – much less the moving force behind – the potentially contemptuous actions of Oberlander or Lerner. The actions taken by Kriss in turning over the documents, in the face of an unambiguous SDNY Order to do so, do not show any willfulness in violating a specific and definite term of any previous Order. Nor does the mere fact that Kriss hired Oberlander as his attorney satisfy the *mens rea* required for criminal contempt. Conveniently-timed and unsubstantiated accusations do not amount to contempt. Doe's motion to refer this matter to the USAO to determine whether Kriss should be held in criminal contempt is therefore denied.

## IV. Evidentiary Hearing

Finally, Doe's motion for an evidentiary hearing is denied. A hearing would serve the limited purpose of determining (though likely without any degree of certainty) whether Kriss wrote the letter to the Second Circuit or otherwise authorized its submission, which in turn could potentially establish what Kriss knew and when. But that letter is irrelevant to the contempt issue before me. Kriss' subjective understanding of whether the Orders applied to him is immaterial to whether the Orders themselves were "clear and unambiguous" under civil contempt standards or contained "specific and definite terms" under criminal contempt

11

standards.  Further, to the extent that Doe argues the Second Circuit letter evidences willfulness, the letter states that the author believed the Order applied to Oberlander and Lerner only, but that the author had nonetheless observed all of the Court's Orders; even if Kriss was involved in the writing of this letter, the letter itself undermines a finding of willfulness for criminal contempt.[3] An evidentiary hearing is not warranted.

### CONCLUSION

Doe has provided no evidence or legal support for his theory of Kriss' contempt of Court Orders, and he shall not expend this court's or the USAO's resources to further his fishing expedition.  Doe's [122] and [146] motions are DENIED.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       January 6, 2016

---

[3] Doe argues that the court should hold this hearing to determine authorship of the Second Circuit letter such that it may determine Kriss' knowledge and involvement in the letter and, depending on the outcome of that hearing, "consider expanding" Oberlander's and Lerner's criminal referral to the USAO or "consider a criminal referral of Kriss for perjury."  Despite what Doe may believe, my limited Second Circuit mandate is to ensure compliance with its and Judge Glasser's Orders, not to ferret out every conceivable wrongdoing Doe believes has been committed against him or the court in the course of this matter.  If the USAO uncovers further misconduct by Oberlander or Lerner, or evidence suggesting that Kriss was involved, it is capable of expanding its own criminal investigation; there is no basis for me doing so on Doe's motion.