UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
                                                          :
                                                          :
                                                          :          **ORDER TO SHOW CAUSE**
IN RE MOTION FOR CIVIL CONTEMPT            :
BY JOHN DOE                                        :          12-mc-0557 (BMC)
                                                          :
                                                          :
                                                          :
--------------------------------------------------------- X

**COGAN,** District Judge.

After further consideration of proposed intervenor The Associated Press's motion to unseal certain filings in the above-captioned docket, the Court will consider the parties' positions as to unsealing all documents in the docket to the public. In light of the below considerations, the Court orders the Government to show cause by April 18, 2016, why the documents filed in this action should not be unsealed.

John Doe ("Doe") first moved on February 10, 2012, to hold Respondents[1] in contempt for violating the Second Circuit's February 14, 2011 Court Order. The motion alleged that Respondents disclosed to journalists sealed information regarding Doe's cooperation with the Government in various criminal matters. On February 27, 2012, I referred the allegations to the U.S. Attorney's Office for the Eastern District of New York ("EDNY") for it to determine whether to pursue charges for criminal contempt. At a status conference on March 5, 2012, EDNY explained that the Government had not yet made a decision with respect to the proper disposition; pending the Government's decision as to whether it would prosecute Respondents for criminal contempt, I stayed Doe's motion as to civil contempt. At some point, EDNY apparently moved to be recused on the basis of a perceived conflict, and the Executive Office of

---

[1] In an abundance of caution, the identities of the two respondents in this action will remain confidential for the purposes of this Order and be referred to only as "Respondents."

the U.S. Attorney's Office ("Executive Office") disqualified EDNY and referred the matter to

the U.S. Attorney's Office for the Northern District of New York ("NDNY").  On August 23,

2012, I granted NDNY access to the documents filed in the docket to assist in their investigation.

The Court held a status conference in October 2014, at which time I granted Doe leave to file a

consolidated motion for Order to Show Cause against Respondents.  On March 20, 2015, Doe

filed an omnibus motion to hold Respondents in contempt, which alleged every basis on which to

hold them in contempt to date, most of which occurred after the first Government prosecution

referral.

In an Order dated July 16, 2015, I referred the allegations in the omnibus motion to the

U.S. Attorney's office for EDNY,[2] so that EDNY could consider whether proceedings should be

commenced against Respondents for criminal contempt of court.  I stated that the referral "shall

be understood to encompass any violation of an injunction or order issued in this or the related

criminal or civil proceedings, alleged to date or subsequently discovered, concerning the

disclosure of information damaging to movant."  At the time I made the referral, it had been

nearly three and a half years since the first referral, and based on the representations of Doe's

lawyer in open court, I understood that the conflict originally cited by EDNY, whatever it was,

had been resolved or rendered moot.  As of December 2016, however, I was advised by Doe's

lawyer that EDNY had again transferred the 2015 referral to NDNY, via the Executive Office,

again citing an unspecified conflict of interest.

Setting aside the issue of respondents' contempt, The Associated Press's motion to unseal

raises the issue of whether the First Amendment mandates unsealing all of the documents in the

---

[2] At a hearing in October 2014, there was concern that NDNY believed its mandate extended only through the period of an alleged disclosure to *The New York Times*.  I therefore granted leave to Doe to file a motion to address every alleged disclosure over the course of the action.  At the time of the June 2015 hearing on Doe's omnibus motion, this concern was reiterated and Doe requested a referral to EDNY because Doe was a cooperator for that branch of the U.S. Attorney's Office.

docket, or whether the public's right of access must yield to other compelling interests. Although the docket sheet is unsealed and accessible by the public, the documents remain under seal and available only to case participants.  Since the initiation of this action, however, it appears that certain information has been disclosed to the public, such as Doe's and Respondents' identities, Doe's proffer agreements, and the existence of Doe's cooperation agreements.  Judge Glasser previously unsealed certain documents in the related criminal docket on March 12, 2013, but found that the PSR, information sourced from the PSR, and the details of the cooperation agreement must remain sealed.

In this action, Doe alleges that respondents have disobeyed Court Orders and disseminated sealed information exposing Doe's identity as an informant, and details of his cooperation with the government.  The documents in this docket contain those allegations and, by extension, sealed information allegedly disseminated.

It seems to me that the Government has a unique interest in keeping documents that relate to cooperation agreements under seal.  The confidentiality of documents that relate to the identity and cooperation of individuals is, at times, essential to preserving the informant's safety and the Government's ability to secure cooperation from other potential cooperators.  One would think that if word gets around that the Government will take no action to protect the disclosure of the identity and particulars of a cooperating witness, including criminal history that may not otherwise be public, defense lawyers in other cases would have to advise their clients, in considering whether to become cooperating witnesses, that there is no guaranty that the Government will take steps to ensure that their cooperation remains confidential.

It also seems to me that maintaining the integrity of government investigative and prosecutorial activity is no less important a consideration once an investigation ends.  If the

details of an individual's cooperation were to be explicitly revealed, it could hinder the Government's efforts to obtain future cooperation from others.  That is, if informants in future cases anticipate that their cooperation "will likely become a matter of public knowledge, valuable cooperation might cease."  United States v. Amodeo, 71 F.3d 1044, 1049 (2d. Cir. 1995).

One would think that the desire to ensure that further informants cooperate in government investigations should also motivate the Government to take swift action against individuals who seek to expose the identity of informants, their proffered criminal history, and the details of their cooperation with the Government.  Individuals may be more likely to leak or otherwise disseminate confidential information if they know that they will suffer no consequences at the hands of the Government.  Potential informants, by extension, may be disincentivized from cooperating – and why should they cooperate, when the Government's promises of protecting confidentiality ring hollow? Yet despite these motivations, at no time has either NDNY or EDNY initiated criminal contempt proceedings against Respondents, or even made a decision whether they are going to. If the Government concludes that the Respondents' actions do not warrant prosecution, that is its prerogative, but to reach no decision at all over a period of years is in effect a decision to leave the cooperator exposed.

Over the course of the four years that the action has been pending, EDNY has twice referred the contempt investigation to NDNY due to an alleged conflict of interest.  The details of this conflict were not disclosed, but the Court has difficulty understanding what potential conflict arose between the parties in this action and the EDNY branch of the U.S. Attorney's Office.  In fact, the interests of Doe and EDNY appear to be precisely aligned – EDNY should have an interest in protecting its cooperators, and Doe has an interest, as one of those

4

cooperators, in protecting himself. Even amid allegations of multiple disclosures by Respondents, neither EDNY nor NDNY has sought to protect Doe, once his cooperation was obtained.

Doe, who entered into a cooperation agreement with the Government under the condition that it would be confidential, has been left to protect his own interests. Regardless of whether Doe was or is currently in physical danger due to the disclosure and details of his cooperation with the Government, the Government appears to take lightly the risk of harm created by failing to protect Doe. Whatever damage Doe has suffered as a result of the alleged dissemination, the Government has done little to signal to future informants and cooperators that the same fate (or worse) will not befall them. It is hard to fathom how the Government expects to receive continued assistance from informants when the Government's inaction here demonstrates only that, once assistance is procured, the informant will be hung out to dry, left to fend for himself. Although that assessment is, again, within the Government's prerogative, it seems more than passing strange that the Government declines to exercise its prerogative one way or the other.

Absent some response by the Government, it is not incumbent on this Court to protect the interests of investigations by the U.S. Attorney's office, or to continue sealing information from the public where the Government appears indifferent as to its disclosure. If the Government would like the documents in this docket, and all the information contained in them, to remain sealed, the Government should speak and assert its position as to whether the public's right to access each document in the record is outweighed by a compelling need for secrecy. If, in contrast, it prefers to take "no position," as is again its prerogative, then it should publicly state that "no position" and the Court will rule on the pending disclosure motion on the basis that the Government has disclaimed any interest in the matter.

The Government is therefore ORDERED TO SHOW CAUSE by April 18, 2016, why the documents in this action should not be unsealed and made available to the public.  Obviously, if the Government asserts a "no interest" position, that will affect the Court's determination of whether the purely private interest of John Doe is sufficient to overcome the qualified right of access of the public and press to court proceedings under the First Amendment and the common law.   The Clerk is directed to unseal this document only, and not merely its docket entry, such that this Order is accessible to the public.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      March 3, 2016