UNITED STATES DISTRICT COURT  NO. 12-MC-557
EASTERN DISTRICT OF NEW YORK  NO. 16-MC-706

IN RE UNSEALING 12-MC-557  RESPONSE

RICHARD E. LERNER

## NATURE OF THE CASE

Richard E. Lerner *pro se*, by leave of court responds to motions filed by the intervenors the Associated Press and Brian Vodicka to unseal the documents filed on docket 12 MC 557 and respond to the government's filings of April 25, May 3, and May 5, 2016 and Sater's filing of May 6, 2016.

# CONTENTS

**NATURE OF THE CASE** ................................................................................................. I

**INTRODUCTION** ......................................................................................................... 1

    THIS PROCEEDING WILL DETERMINE HOW MUCH OF WHAT WENT ON HERE THE PUBLIC MAY KNOW. ..................................................................................................................... 1

    THERE ARE TWO WAYS THE PUBLIC CAN FIND OUT, BY ACCESS TO THE COURT OR HEARING IT FROM US.................................................................................................................. 1

    CLARIFICATION OF DECRETAL SCOPE IS NECESSARY ............................................................. 2

        Sealing orders are not gag orders, unless they are. ...................................................... 2

    ORGANATION OF THIS DOCUMENT ................................................................................. 3

        A note of caution about "details of cooperation." ......................................................... 3

**ARGUMENT FOR UNSEALING** ...................................................................................... 4

    SEALING HAS BEEN UNCONSTITUTIONAL *AB INITIO* ............................................................ 4

        The First Amendment provided a right of access. ......................................................... 4

        The First Amendment imposes a burden to justify sealing such ................................... 4

        These requirements were repudiated from the beginning. ......................................... 5

    RETROACTIVE CURE IS NOT PERMISSIBLE SO UNSEALING MUST BE BLANKET WITHOUT REGARD TO NATURE OR CONTENT THE DOCUMENTS ..................................................................... 5

    IN ANY EVENT, ATTEMPTS TO JUSTIFY SEALING *NUNC PRO TUNC VEL FUTURO* WILL ALMOST CERTAINLY PROVE ENTIRELY FUTILE ................................................................................ 6

        Virtually all the information under seal is already public. ............................................ 6

        For information not public, constitutional fact-finding will be necessary for adjudication of "experience and logic" and "helpful in understanding," then "compelling need," "no alternative," "least restrictive," and "effective." ....................................................................... 6

THERE ARE TWO POTENTIAL PROBLEMS WHICH MUST BE IMMEDIATELY RESOLVED AT THE HEARING ................................................................................................................ 7

    Nothing sealed discloses non-public detail of Sater's cooperation. ............................. 7

    The court seems to have made up its mind that they're right....................................... 8

THE MARCH 14 ORDER PORTRAYS THE COURT'S CONCERN FOR SATER'S SAFETY AND THE HARM THAT WOULD ENSUE IF ANYONE LEARNED HIS NAME, CRIMINAL HISTORY, OR COOPERATION ................................................................................................................ 10

THE REALITY IS SOMETHING DIFFERENT ............................................................................ 10

    The government was so "concerned" with secrecy it made records exposing sater as a convicted cooperator filed to the public and ensured his co-defendants knew he was one of the informants. ............................... 10

    The government says in open court it never hid his conviction................................. 11

    Sater confirms it was never hidden and was always public fact. ............................... 11

    And Sater confirms that his cooperation was revealed. ............................................. 11

    The Attorney General of the United States, then United States Attorney responsible for most of this, admits that there has been no evidence of any risk to Sater or to ability to recruit cooperators. ................................................... 11

ARGUMENT *RE* POSSIBLE RELIEF ....................................................................................... 12

    THE COURT MAY HAVE MADE THE CASE ITS OWN ........................................................... 12

    MY CIVIL RIGHTS ARE AT STAKE, TOO................................................................................. 13

        Allegations by Sater that Oberlander and Lerner that Attorney Gerald Shargell Was Used as a Conduit to Leak Information to Sater's Co-Conspirators Must be Unsealed. ............................................................................. 13

## INTRODUCTION

### THIS PROCEEDING WILL DETERMINE HOW MUCH OF WHAT WENT ON HERE THE PUBLIC MAY KNOW.

Familiarity with the procedural and factual history is assumed. The Associated Press and Brian Vodicka have intervened for the limited purpose of moving to unseal the documents filed on this docket. The AP argues that there is a First Amendment right of access to them. I concur, and adopt their arguments in full, but augment them to establish, first, that maintenance of this case under blanket seal for so long renders it constitutionally impermissible to cure retroactively, so unsealing must be immediate without individual consideration; and second, to show that the constitutional fact-finding which will be required to support any sealing if there is individual consideration is formidable and doomed to fail for reasons known to me and the court but not yet the AP.

For reasons that will be immediately clear, this may or may not be purely an unsealing case; that scope depends, in part, on whether the court intends to leave anything under seal, and if so what.

### THERE ARE TWO WAYS THE PUBLIC CAN FIND OUT, BY ACCESS TO THE COURT OR HEARING IT FROM US

Mr. Vodicka is an individual member of the public, and his reasons for wanting to unseal are his own.

The AP however has a special charge and may be presumed to want unsealing so they may report what they learn as they wish. Since its reach is such that on any given day more than half the population of the world reads an AP story, it seems clear that for all practical purposes they *are* the public.

But they don't know what's under seal. I do. As a case participant I have standing to move to unseal, too. But I also have my own First Amendment (and Fifth, and Sixth) right(s) to *tell* what I know and they are not co-extensive with, but far broader than, the already-broad First Amendment rights that govern the public's access

So the AP can obtain the information one of two ways, by access to the court files or by learning it from me. Naturally, I can only tell them what is lawful for me to tell them. Accordingly, I will need resolution of the following issue.

## CLARIFICATION OF DECRETAL SCOPE IS NECESSARY

### Sealing orders are not gag orders, unless they are.

A LEXIS search will turn up myriad federal cases which say that a sealing order is not a protective order, that when an attorney filed a document under seal, it merely protected the court file from public access, but did not prevent parties from disseminating it, that only a protective or anti-dissemination order does.[1]

Rather than have problems down the road, specificity is necessary because we have noticed in all our related cases no one has ever held that disseminating a document under seal is prohibited absent express decretal bar.

Therefore, I must have decretal clarification.

So my first request is to respectfully ask the court to issue decretal language for anything that is to stay sealed making clear what if any restrictions are placed on my extra-judicial dissemination of sealed documents or their content, both with and without attribution to their provenance here, keeping in mind these categorical distinctions of potential disparate constitutional import:

---

[1] See e.g. *United States v. Dougherty*, 627 Fed. Appx. 97 at n. 7 (CA3 2015):

> [W]e have discussed the difference between sealing orders and protective orders. See e.g., *United States v. Wecht*, 484 F.3d 194, 212 (3d Cir. 2012) ("[T]he sealing order prevented direct public access to the documents while the protective order prohibited defense counsel from disseminating the information to the public."); see also id. at 211 (explaining that "under seal" means "the defense and public would not be able to view the filed papers or learn their contents" from the docket, but that the defendant still "could have disseminated the information to the public" absent a "protective order"). The 2006 Impoundment Order was a sealing order, as it was entered to allow materials to be filed with the court without making them available to the public because reasons existed to overcome the public's presumptive right of access to the court and its files. *United States v. Martin*, 746 F.2d 964, 968 (3d Cir. 1984). It did not restrict how those lawfully in possession of the documents could use them.

(1) Information that is public, or publicly available, elsewhere.

(2) Information that is not, but that I have the lawful right to disseminate other than by reason of anything occurring here.

(3) Information that I obtained extra-judicially.

(4) Information that I obtained judicially, but passively, that is, information forced upon us, such as that given us in a case, like this one, where we were sued and haled into court, as opposed to a case started by us.

(5) All other information.

## ORGANIZATION OF THIS DOCUMENT

I first argue that unsealing is mandated, either the entire docket immediately because of the years-long insult of its improper concealment, or most all of it upon application of the requisite constitutional fact-finding because nothing on it justifies maintained restriction.

I then summarize the potential requirement for secondary analysis under First, Fifth, and Sixth amendment expression, due process, and open trial principles, if the court thinks it may enjoin me from telling what I know about anything that remains sealed.

### A note of caution about "details of cooperation."

Every document the EDNY wants maintained under seal, and every document Sater wants, are said to reveal details of his cooperation. This is not true. With one exception in one line of one letter written by Sater in October 2012 no non-public details of his cooperation are in any document we know of. To be clear, I refute as factually false every assertion made by the government or Mr. Sater that runs to a basis for continued sealing, including without limitation the presence of risk to him, the presence of risk to his family, the presence of risk to recruiting cooperators, the presence of risk to national security, and, significantly, the presence of any details of his cooperation except for one sentence in a letter written by Mr. Sater on or about October 4, 2012.

## ARGUMENT FOR UNSEALING

### SEALING HAS BEEN UNCONSTITUTIONAL *AB INITIO*

**The First Amendment provid<u>ed</u> a right of access.**

In 1984 the Second Circuit held that the First Amendment provides a presumptive right of access not only to criminal but also to civil trials and to their related proceedings and records.[2] Thirty years later, in 2013 that court held that, lest there be any doubt, the First Amendment provides a presumptive right of access not only to criminal, but also to civil, contempt proceedings.[3]

When there is a constitutional right of access to proceedings there is such right of access to documents filed in them, to the extent either:

- **Experience and logic** show there has been or should be, or
- **The document explains** or helps understand what's going on.[4]

**The First Amendment imposes a burden to justify sealing such.**

The proponent of sealing (whether the court, or one or more parties) bears the burden of establishing that this right may be defeated, and records properly sealed.[5] To meet this burden, the proponent must establish four elements:

- **Compelling Need:** the proponent of sealing must demonstrate a substantial probability of harm to a compelling interest.
- **No Alternatives:** the proponent must demonstrate that no alternative will adequately protect the alleged interest.
- **Narrow Tailoring:** the proponent must demonstrate that the proposed restriction on the right of access is narrowly tailored.
- **Effectiveness:** the proponent must demonstrate that the proposed restriction will be effective, not futile, in preventing the harm.

---

[2] *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F2d 16, 22 (CA2 1984).

[3] *Newsday LLC v. County of Nassau*, 730 F.3d 156, 164 (CA2 2013).

[4] *Id* at 164-165.

[5] We incorporate the Memorandum submitted by the AP on 2/25/2016, ECF 1-1 on 16-MC-706, ca. pp. 6 *et seq*.

For each factor, the proponent must make factually specific showings at a clear-and-convincing level that support sealing and the Court must make specific findings regarding each of these factors. Broad and general findings by the court are not sufficient to justify closure.

**These requirements were repudiated from the beginning.**

The underlying contempt proceedings began February 10, 2012 on Felix Sater's criminal docket "owned" by Judge Glasser, 98-CR-1101. While on that docket, all submissions were "sealed" in the sense that they were kept from public access because this court said it had no wish to make particularized findings when it could just take advantage of the blanket sealing order Judge Glasser said he never issued[6] and which, even if he did, has never been found.

On August 25, 2012, Judge Glasser formally unsealed that docket, making official what had already been widely reported in the media (and a matter of public record), that Sater had been convicted of racketeering, become a cooperator, and, been sentenced.

This court then ordered the contempt proceedings moved to their present docket, 12-MC-557. In October 2012, it issued its own blanket sealing order without public notice, hearings, findings, or requisite procedure to seal that to which a constitutional right of access exists.

## RETROACTIVE CURE IS NOT PERMISSIBLE SO UNSEALING MUST BE BLANKET WITHOUT REGARD TO NATURE OR CONTENT THE DOCUMENTS

Since the sealing was unlawful, even as a matter of procedure, it is circuit law that, since those requisite findings were never made at the time of sealing, this defect may not be retroactively cured and so they must be unsealed now.[7] Of course, this remedy will not consider the content or nature of any documents.

---

[6] Comment of Judge Glasser on Tr. of June 14, 2010 hearings.

[7] *Press-Enterprise v. Superior Ct.,* 464 U.S. 501, 510 (1984); *ABC v. Stewart*, 360 F.3d 90, 102 (CA2 2004), quoting and adopting *US. V. Antar*, 38 F.3d 1348, 1361 (CA3 1994) (*contemporaneously defective sealing not retroactively curable*)

## IN ANY EVENT, ATTEMPTS TO JUSTIFY SEALING *NUNC PRO TUNC VEL FUTURO* WILL ALMOST CERTAINLY PROVE ENTIRELY FUTILE

In contrast, this traditional remedy will require document by document review, at least as to documents whose unsealing is in dispute. This requires analysis of the methods and means that will be employed in the requisite constitutional fact-finding, except for the documents which are, or which contain information which is, entirely public or facially unobjectionable.

**Virtually all the information under seal is already public.**

*News articles and part of the Congressional Record are sealed.*

*Ab initio*, newspaper and magazine articles, web pages, and the like have been filed on this docket, with other material self-evidently in the public domain, such as portions of the Congressional Record. All of it is under seal unlawfully because, as the AP points out, a court can't seal a document absent a showing it will be effective, not futile, in preventing a near-certain harm and, by definition, sealing that which is "out there" in the public is futile *per se*.[8]

*A public court order on Lexis and Westlaw is under seal.*

A Summary Order of the Second Circuit dated February 14, 2010 is under seal here, several times as it was submitted as an exhibit attached to several docket submissions. It's not clear why anyone bothered to submit it, as it has been on Westlaw, Lexis, and everywhere else ever since then. Still, it's under seal here.

**For information not public, constitutional fact-finding will be necessary for adjudication of "experience and logic" and "helpful in understanding," then "compelling need," "no alternative," "least restrictive," and "effective."**

By definition, facts which determine constitutional rights are, not surprisingly, "constitutional facts," which means, *inter alia*, that the court must take care to make a record capable of *de novo* appellate review, which, should it occur, will not afford the findings of this court the usual and customary deference.

---

[8] Something this court has already agreed it lacks authority to do.

Professor Faigman describes a taxonomy of constitutional facts:[9]

- **Doctrinal:** Facts, usually historical, typically used to interpret the constitution, such as questions of original intent, which are often fact-intensive.

- **Reviewable:** Facts transcending a particular case, used to *formulate* tests, such as support for the experience and logic test, rather than apply them.

- **Case-specific:** Facts used to resolve application of those rules in individual cases, such as, here, whether there are no less restrictive alternatives.

There can be no question that unsealing issues require case-specific adjudication; the entirety of the thirty-five year history of decisional law beginning with *Richmond*[10] dictates this in those precise terms. And that means full adversarial due process evidentiary hearings, even if accelerated, with particular care to build a record capable of de novo appellate review, for there is no traditional deference in the review of constitutional fact-finding.

## THERE ARE TWO POTENTIAL PROBLEMS WHICH MUST BE IMMEDIATELY RESOLVED AT THE HEARING

### Nothing sealed discloses non-public details of Sater's cooperation.

So here we have a problem: So far as we know, we know everything that has been filed on this docket and, with one exception, a line or two in a letter Sater wrote through counsel in 2012, *not one word in one document anywhere at any time has ever divulged the details of his cooperation*. Yet the EDNY and Sater submissions list all kinds of documents they say reveal details of his cooperation, and other than mention that he cooperated against his former partners-in-crime in U.S. v. Coppa which is now public information, there's nothing.

This is easy enough to explain: They're wrong.

---

[9] Faigman, *Constitutional Fictions: A Unified Theory of Constitutional Facts*, Oxford Univ. Press 2008, ch. 3 *et seq.*
[10] *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980).

Naturally how to prove that in public should be interesting, but that burden is on them, not on me, to prove that it does list details. But certainly, even if some detail is in there somewhere, it can be redacted without taking down the rest of the document.

Nor is this at all far-fetched; it's quite real. For one example only, the AP has noticed that ECF 165 on 98-CR-1101, a letter written by former counsels, refers to a letter from Sater, by his counsel, complaining that our disclosures of Sater's criminal past triggered threats against him and Lauria by one Daniel Persico, a Columbo family mobster whom they informed on.

It didn't get there by accident. It got there because it was filed before the new 12-MC-557 docket was created and it was unsealed as a result of months-long proceedings attended by AUSA's from the EDNY and Sater's current counsel.

Besides the fact that it is ridiculous for the EDNY to claim it "discloses details of cooperation" when they explain how the unsealing before Glasser went to great pains *not* to do that, and they're barred by collateral estoppel from doing so, *it discloses no such thing*. it discloses that they informed on Persico, but they disclosed that already, as did the government, in open court in 2001; in Lauria's book admitting his cooperation and informing on Persico in 2003; in Lauria's public sentencing transcripts, in which Persico is discussed in detail; and in Lauria's pending lawsuit against Kriss in New York Supreme Court, *infra*, where he has admitted that he told Persico 15 years ago that he had informed on him.

### The court seems to have made up its mind that they're right.

On March 14, 2016, this court issued a public order entreating the government to explain why the court couldn't seal everything "related to cooperation," in a "cooperator exception" to the First Amendment. The answer is self-evident, as a matter of constitutional fact-finding, but the problem runs beyond that.

The order is problematic, first, because anyone reading it would likely believe it, as its written by a sitting federal judge, and its suggestion that we violated court orders to make public Mr. Sater's conviction, the fact of his cooperation, *and the details of it*, endangering him and law enforcement. The order is problematic because, second, the number of persons who read it, or parts of it, is probably into the millions. And the order is problematic because, third, it's unfair.

The court warns of the grave risk if persons like us make public the otherwise secret criminal histories of cooperators.

Yet on February 25, 2016, a Deputy Assistant Attorney General filed papers in the Court of Federal Claims in Washington, D.C., where our clients are suing the government for hiding Sater's conviction and with it their chose in action to sue for restitution[11], representing to the court that our clients cannot claim they were defrauded *because since 2000 the government has not hidden Sater's conviction.*

Why? The government published his conviction in a press release on March 2, 2000, bearing the signature of Attorney General, Lynch, and in September 2000 it was put in the Congressional Record. The government's court papers even embed a clickable link so anyone who wants can download and read it on government servers.

And on April 15, 2016, Sater filed papers in the SDNY, where our former client Jody Kriss is suing him for defrauding him (Kriss) by failing to disclose his conviction to Kriss in 2003[12], and in those papers *Sater* says that Kriss cannot claim that he was defrauded because even then anyone could have found the press release, which Sater attached, and learned of his conviction, which Sater correctly refers to as having been, ever since March 2, 2000, a *public fact*.

And Mr. Sater has filed papers arguing that anyone who knew of his conviction would understand that he had been a cooperator. And the government made his cooperation public fact too, back in 2000.

---

[11] *Gottdiener v. United States*, (2015) (Ct. Claims).

[12] Kriss v. Bayrock, 10-cv-3959 (2010) (EDNY) (Schofield, J.).

## THE MARCH 14 ORDER PORTRAYS THE COURT'S CONCERN FOR SATER'S SAFETY AND THE HARM THAT WOULD ENSUE IF ANYONE LEARNED HIS NAME, CRIMINAL HISTORY, OR COOPERATION

> *[T]he Government has a unique interest in keeping documents that relate to cooperation agreements under seal. The confidentiality of documents that relate to the identity and cooperation of individuals is, at times, essential to preserving the informant's safety and the Government's ability to secure cooperation from other potential cooperators…if…the Government will take no action to protect the disclosure of the identity and particulars of a cooperating witness, including criminal history that may not otherwise be public…*
>
> *Even amid allegations of multiple disclosures by Respondents, neither EDNY nor NDNY has sought to protect Doe, once his cooperation was obtained.*
>
> *Regardless of whether Doe was or is currently in physical danger due to the disclosure and details of his cooperation with the Government, the Government appears to take lightly the risk of harm created by failing to protect Doe. Whatever damage Doe has suffered as a result of the alleged dissemination, the Government has done little to signal to future informants and cooperators that the same fate (or worse) will not befall them. It is hard to fathom how the Government expects to receive continued assistance from informants when the Government's inaction here demonstrates only that, once assistance is procured, the informant will be hung out to dry…,*
>
> -- The Hon. Brian M. Cogan, U.S.D.J. March 2016

## THE REALITY IS SOMETHING DIFFERENT

> **The government was so "concerned" with secrecy it made records exposing sater as a convicted cooperator filed to the public and ensured his co-defendants knew he was one of the informants.**
>
> *Klotsman, Lauria and* **Sater** *have previously pleaded guilty to RICO charges in connection with their activities at White Rock and State Street.*
>
> -- U.S. Attorney Lynch, March 2000 public press release

| | |
|---|---|
| *Counsel:* | *He went to Russia on behalf of the FBI in this case to bring Mr. Felix* **Sater**, *an unindicted co-conspirator and cooperator with the government, an individual who is going to testify…* |
| *AUSA:* | *It is simply not true that the government sent Mr. Ray to Russia to bring Mr.* **Sater** *back.* |

-- Colloquy, open court, *U.S. v. Coppa*, defendants present, transcript public, January 2001

*We are providing…recorded conversations involving…Felix **Sater**, who[] will be called by the government as cooperating witness[]. You were provided…materials relating to another cooperating witness, Salvatore Lauria.*

        --Jencks letter in *U.S. v. Coppa* publicly filed and docketed November 2001

*Salvatore Lauria and Felix **Sater**…pled guilty before your honor pursuant to cooperation agreements.*

        -- U.S. Attorney Vinegrad, April 2002, public on PACER March 2009

*Your honor, we'd like to tell you the details of **Sater's** cooperation…[ narration of details]…For his cooperation, the government asks a downward departure…*

        -- Sentencing of Sater in open court (paraphrased) October 2009

### The government says in open court it never hid his conviction.

*[T]his press release was also published in a 2000 Congressional Hearing…[T]hat Mr. Sater's conviction was made public in 2000, undermines the allegations in the complaint that his conviction was kept hidden.*

        -- Dep. Ass't. Attorney General Mizer, Februray 2016, publicly filed

### Sater confirms it was never hidden and was always public fact.

*Plaintiffs [alleging concealment] failed to plead how with diligence they could not have discovered the public fact, announced in press release, of Sater's conviction.*

        -- Sater, through counsel April 2016, publicly filed

### And Sater confirms that his cooperation was revealed.

*Disclosure of Sater's conviction would have revealed his cooperation.*

        -- Liston, cousel for Sater, August 2013, publicly filed

### The Attorney General of the United States, then United States Attorney responsible for most of this, admits that there has been no evidence of any risk to Sater or to ability to recruit cooperators.

*The government has no information that any person has sought to harm [Sater] or his family since the press release was issued, nor that the government's ability to secure cooperation has been negatively affected.*

  -- U.S. Attorney Lynch, March 2011 letter to court, public on PACER March 2013

## ARGUMENT *RE* POSSIBLE RELIEF

### THE COURT MAY HAVE MADE THE CASE ITS OWN

In Roman times, there was a phrase, *iudex litem suam facit*, which translates roughly as, "A judge who makes the case his own."

Over its near millennial history, its application changed, but it was always understood to mean a judge who appears to have lost judicial detachment and objectivity and become too involved.

The provable reality does not comport with what those I've heard from have gleaned from your order. And with the prospect of contempt hanging over me if I defend myself by telling the truth and revealing what's gone on here, this is most unfair.

Thus in a way, your honor has become part of the problem.

For example, by complaining about the four years the government has taken in investigation without resolution, you have elevated what would otherwise have been pedestrian notices from AUSA Green in the NDNY into materially significant documents that help explain the case, as they document the continuing slippage and reasons for it, not to mention what must be a historic first, to be investigated for having committed the crime of appealing to the Supreme Court and having government investigators go there to interview.

So as to the NDNY's requests to keep those status updates sealed, no, no chance, because they run deeply to what tens of millions of persons now want to know, that's to your order and the AP, namely what was the government doing all this time?

Similarly, your honor's order makes comments about the risk to recruitment efforts and the like, and suggestions about the harm that disclosure caused Sater, when not only is there no evidence of any of that, to say nothing of the reality that the government and Sater now claim that it was never secret anyway, and Loretta Lynch sends letters to court representing that no, there has been no threat and no loss of ability to recruit.

(Those of course are hearsay; presumably we will have to subpoena her or take her deposition to corroborate what she said.)

I simply and respectfully wish to point all this out to the court because, in closing, there are a few points I must make.

## MY CIVIL RIGHTS ARE AT STAKE, TOO

As I noted at the beginning of this document, I noted that I had obvious First, Fifth, and Sixth Amendment rights to tell, or have witnessed, what's gone on here. Until and unless the question of what if anything is to remain sealed, I see no need to clutter this with constitutional argument that may be unnecessary. However…

But I wish to remind the court that



Case 1:12-mc-00055-BMC Document 177*SEALED 05/06/16 Page 17 of 17 PageID #: 3660

