1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN RE MOTION FOR CIVIL       )
CONTEMPT BY JOHN DOE         )       12-MC-00557 (BMC)
                            )
                            )
                            )       United States Courthouse
                            )       Brooklyn, New York
                            )
                            )       FRIDAY, FEBRUARY 12, 2016
                            )
                            )
_____)

TRANSCRIPT OF CIVIL CAUSE FOR CONTEMPT BY JOHN DOE
BEFORE THE HONORABLE BRIAN M. COGAN
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

FOR THE MOVANT:        BEYS, STEIN & MOBARGHA, LLP
                       BY:  MICHAEL P. BEYS, ESQ.
                       405 Lexington Avenue, 7th Floor
                       New York, New York 10174

                       MOSES & SINGER
                       BY:  ROBERT BARNES MCFARLANE, ESQ.
                            ROBERT S. WOLF, ESQ.
                       405 Lexington Avenue
                       New York, New York 10174


FOR THE RESPONDENT:    FREDERICK MARTIN OBERLANDER
RICHARD ROE            BY:  FREDERICK M. OBERLANDER, ESQ.
                       POST OFFICE BOX 1870
                       28 Sycamore Lane
                       Montauk, New York 11954

                       BLANK ROME LLP
                       BY:  JEFFREY C. HOFFMAN, ESQ.
                       CHRYSLER BUILDING
                       405 Lexington Avenue
                       New York, New York 10174

INTERESTED PARTY:      FREDERICK MARTIN OBERLANDER, ESQ.

NICOLE CANALES, CSR, RPR

2

(APPEARANCES CONTINUED)


FOR THE RESPONDENT:    PRO SE
RICHARD E. LERNER      RICHARD E. LERNER
                       1375 Broadway, 3rd Floor
                       New York, New York 10018



THE COURT REPORTER:    NICOLE CANALES, CSR, RPR
                       225 Cadman Plaza East
                       Brooklyn, New York 11201
                       cnlsnic@aol.com


Proceedings recorded by mechanical stenography, transcript
produced by computer-assisted transcript.

Proceedings                                     3

THE CLERK:  In Re Motion for Civil Contempt by John Doe, Docket Number 12MC557.  Counsel, please state your appearances.

MR. BEYS:  Good morning, your Honor.  Michael Beys, with Beys Stein & Mobargha, for the movant, John Doe, who is Felix Sater.

MR. WOLF:  Robert Wolf and Robert McFarlane from Moses and Singer.

MR. HOFFMAN:  Jeff Hoffman, from Blank Rome, for Mr. Oberlander.

MR. OBERLANDER:  Mr. Oberlander.

MR. LERNER:  Pro se respondent, Richard Lerner.

THE COURT:  Have a seat.  This is going to be a short conference.  I called it because I think I have allowed this matter to develop without my active intervention almost as long as I can allow it to have done that.  Now, I understand it's not the movant's fault; it is really the government's fault.  Nevertheless, it's the movant's motion, and I need to reach a resolution.

So here's the way I see it:  I'm going to give the movant 60 days to either get a definitive answer from the government as to whether its going to prosecute criminally or decide that it wants to prosecute civilly or -- frankly, civilly, I'm not sure -- I guess there would be a further order and attorney's fees as possible -- as part of a civil

NICOLE CANALES, CSR, RPR

Proceedings                                    4

contempt proceeding. If the government says we're not going to, then it will be up to the movant to tell me, okay, appoint someone as a private prosecutor, if the movant wants to do that, and we'll have to talk about how that gets paid for.

If the government says we're still deciding, and the movant, at that time, doesn't want to proceed civilly, then I'm probably going to deny the motion without prejudice, just because I can't have it hanging around forever. That won't stop the government from investigating. The government will investigate whatever it wants to investigate and do whatever it wants to do, but my end needs to be wrapped up.

MR. BEYS: Your Honor, we do have some news from the Northern District, which Mr. Wolf can speak to in a moment, but I'm only concerned by your statement that it would be a with prejudice denial.

THE COURT: No, I said "without." If I said "with," I misspoke. I meant to say "without."

MR. BEYS: Your Honor, I just want to be clear that our position has been we wanted to proceed with civil proceedings three years ago, but we've been waiting for the government as well. Mr. Oberlander and Mr. Lerner indicated in 2012 that they would take the Fifth, but we're ready to go. We're here today with case law on attorney's fees, aiding and abetting liability, because we would also like to sort of talk again about Mr. Kriss' potential liability here, civil

NICOLE CANALES, CSR, RPR

liability here, Wilson, Elser. We've put this on hold for a long time, but it hasn't been our delay. With that, I ask Mr. Wolf to --

THE COURT: As I said, I'm not blaming you for the delay. The delay has been my desire to wait for the government to make a decision, but it has literally been years, and I don't have a decision.

So what do you have to tell me about that?

MR. WOLF: In preparation for today's appearance, and pursuant to your Honor's indication that you wanted a status as to what's going on with the criminal investigation, I have direct communications, both myself with Steven Green, who is the assistant U.S. attorney in charge of this investigation in the Northern District, as well as a colleague who is working with us, who also spoke to Mr. Green yesterday.

Mr. Green confirmed directly to me and in writing, in fact, that the Northern District's investigation is active. Certainly, discovery investigation is consistent with your Honor's order, the last order I think you signed last July. The Northern District didn't get this back to them until, I believe, end of November, early December, because, as your Honor recalls, the referral was to the Eastern District, who then promptly communicated with the executive office of the U.S. attorneys for the whole country, because of the, quote unquote, "conflict" three years ago that landed in the

Proceedings                                           6

Northern District.

THE COURT:  The alleged conflict, which I've never understood, but that's beside the point.

MR. WOLF:  Us equally.  I still don't understand it, but I don't control it.  And the executive office again reached out to Northern District and requested, and they agreed to take this second criminal referral.  So it's active.  I understand the FBI is also working with the Northern District, and their jurisdiction includes now the Eastern District as the scope of their investigation is -- of what's going on, so that is the status as of yesterday.

We're happy to come back in 60 days.  It's our intention -- if push comes to shove, we'll look to move forward.  Whether there's a stay, at that point, from the respondents, that will be up to them, but we do want to move forward.  There's certainly significant damages we feel that are appropriate here that the Court could impose, or compensatory towards legal fees, in particular, of the movant.

THE COURT:  Okay.  Anything that respondents want to add?

MR. HOFFMAN:  If I may, your Honor, first, I'd like to explain to the Court that I spoke with McGovern, who is, I believe, in charge of Criminal Division in the Eastern District, not long after your Honor made the order referring the matter to him; and his position was that he had never

taken the position that the Eastern District was going to now take the matter from -- if your Honor ordered it to do so.  I said, well, I had thought that's what you had said previously, and it was represented to the court.  And he said I didn't do that; I've never said that.  He said as far as I'm concerned, but I will check with Washington.  The same reasons that it was referred previously, it would be referred again, but things could change.

He got back to me in the not too distant future from that and explained that, in fact, he understood Washington was sending it to the Northern District.  I've been in touch with Mr. Green up there, who handled the first investigation, and he asked me for a whole bunch of documents for some reason he wasn't able to get.  So I supplied him all of those documents, and I said to him we really can't live for another three-and-a-half years the way we did before; it's not fair to the clients.  He said I will work on this as quickly as possible.  I don't want to make any other representation of what he said, because I didn't memorize it, and so I don't have it that clear.

We received -- and I just spoke to counsel about this -- a subpoena for some documents.  I'm totally confused about the dockets in this case, I must admit.  But we received a subpoena in the Oberlander matter, turn over certain records.  It's due on Monday, which obviously is the holiday,

Proceedings                                              8

but we just discussed that, and I think that's going to be withdrawn. So I just wanted to make sure that there was no slipup, so that we can discuss other things. Otherwise, we would have asked the Court to quash it, because the Court stayed this matter, and, obviously, there shouldn't be any activity.

Thirdly, my client has asked me, and I asked the Court, if he can briefly address you. He asked me if he could address you. I insisted it be briefly. And in view of the fact that he is an attorney and -- maybe I'll put it this way: He is the easiest client I have ever had. I would ask your Honor to give him a minute or two to just --

THE COURT: I'm not going to do that. There really is a rule that prohibits hybrid representation. He can be pro se, or he can have a lawyer, but he can't do both. So I'm sure you can convey whatever it is he needs you to convey.

MR. HOFFMAN: Another matter is that there were representations made to this Court in the Kriss matter concerning the relationship between Mr. Kriss and Mr. Oberlander. It has come to our attention that those representations were inaccurate. I don't want to say they were intentionally false or untruthful, so I will say that they were factually inaccurate, and I think we have an obligation to the Court to make the Court aware of that by producing documentary evidence that would show that those

NICOLE CANALES, CSR, RPR

Proceedings                                    9

factual inaccuracies --

THE COURT:  But in what context?  I have denied the Kriss motion, so what would be the reason for attacking the Kriss motion on the representations made in it?  What's the procedure vehicle?

MR. HOFFMAN:  I'm sorry.  When you say you denied the Kriss motion --

THE COURT:  As I recall correctly, the movants had moved to hold Kriss in contempt of violating the order, and I ruled against that motion, did I not?

MR. BEYS:  I don't think so, your Honor.  I think you expressed that you were leaning -- that you were not particularly persuaded by it, but you gave us an additional period of 21 days to submit a supplement, which is sub judice.

THE COURT:  I see.  Well, in that case, if you want to be heard further on it, by all means, put in something extra.  You want to wait until they put in whatever they're going to put in and then respond?

MR. HOFFMAN:  Have you already put it in?

MR. BEYS:  Yes, we submitted this --

THE COURT:  It's sub judice?

MR. BEYS:  It's sub judice.

THE COURT:  And I have not decided it?

MR. BEYS:  No.

MR. WOLF:  Your Honor, when we were in front of

your Honor, and the motion was being discussed, and Jody Kriss had submitted an affidavit -- that's the affidavit that Mr. Hoffman's referring to -- your Honor did indicate at the hearing -- and I have the transcript -- that the authority hearing would likely be appropriate for Kriss to testify as to what was in his affidavit, so that we could, of course, challenge that, which we, of course, intend to do.  And to that end, that's why we served subpoenas detract (sic) from his affidavit as to communications he said he never had, to justify why he wasn't in contempt of court.

THE COURT:  Let me tell you what I think happened. Hang on.  I just want to check this out.

(Pause in proceedings.)

THE COURT:  We've been so careful to seal this case that I sealed the decision on the motion concerning Kriss, which I ruled on, on January 6th, denying it.  Obviously, everyone should have gotten a copy, but I guess because the docket is sealed no one got a copy.  That's what I'm looking at on the receipt here.  We will arrange for it to be generated so that you get a copy.  And once that's done, then there's no occasion for you to correct the representations that you think were inaccurate.

MR. HOFFMAN:  Let me address that first.  Our concern was that there were representations made to this Court that were inaccurate, and it was --

Proceedings                                    11

THE COURT:  What's the difference, though?  What's the difference?  The motion was denied.  I found no facts based upon those representations.

MR. HOFFMAN:  In the sense of a fraud on the court, that was our concern.

THE COURT:  If a tree falls in the forest and there's no one there, no one's heard it.  I have denied the motion.  I have found no facts based on those representations.

MR. WOLF:  I think what Mr. Hoffman is saying, there are facts that would support the motion that he wasn't ignorant of the orders saying return or destroy the presentence report, because his position under oath in the affidavit he submitted to the court was that he'd never been told by his lawyers, or he didn't recall, and he was totally innocent of any contempt, because he was clueless.  Even though he was the plaintiff, and he submitted something to the 2nd Circuit, which he blamed on his lawyers, he didn't know anything; it was all the lawyer's doing, on their own.  What Mr. Hoffman's saying is that he purged himself in that affidavit.

MR. HOFFMAN:  If I may, your Honor, what I'm saying, actually, is, you're right, we have no posture vis-a-vis the motion and it's been denied, our position was if we become aware of the fact that a lawyer tells the Court something that the lawyer knows is untrue, then we have an obligation to make

NICOLE CANALES, CSR, RPR

Proceedings                                    12

the Court aware of that, and we were going to submit these in camera to the Court on those -- on that issue alone, but if the Court feels that's not necessary or appropriate, then having said that to the Court, we've -- you know, our obligation, I think, is taken care of.

MR. WOLF: Could I add one thing about the subpoenas, because Mr. Hoffman mentioned it?

THE COURT: No, I'm not there yet.

MR. WOLF: Okay.

THE COURT: I understand why Mr. Oberlander and Mr. Lerner didn't get the order denying the motion to hold Kriss in contempt; because they weren't the movants on that motion. I don't understand -- I understand it was a mistake that Mr. Sater's lawyers didn't get a copy of that order. I can't think of a reason why the respondents here before me today should not also get a copy of that order. And once they do, if they feel an obligation still to make a disclosure to the Court, then I guess I would hear them on that. But I think the first thing that happens is I have to get a copy of that decision to Mr. Sater's lawyers.

Then I have to decide if it should go to the respondents who are here today, Mr. Oberlander and Mr. Lerner, and then I will hear from Mr. Oberlander's lawyer and Mr. Lerner, if he wants to be heard, as to whether there's a need to put in anything else. I'm not going to decide that

Proceedings                                                    13

today, because it's all new to me, and so I don't know that there's any need, and you all know don't know, if there's any need, based on what this decision had. Okay.

MR. HOFFMAN: Two other very quick matters.

THE COURT: Well, no, now, let me get to the point about the subpoena. What about the subpoenas do I need to know?

MR. WOLF: Your Honor, based upon what was said on the record by the Court, and it was in our motion papers and our reply, when Jody Kriss was denying any knowledge about the orders that he was accused of being in contempt of, your Honor said what if we have a hearing where Mr. Kriss testifies about what he knew and when he knew it. Pursuant to that, and pursuant to Jody Kriss' affidavit saying I had no communications with my lawyers, they never told me about these orders, which is where your Honor was going in that hearing; that it didn't look like there was anything direct, I served subpoenas on Jody Kriss, Mr. Oberlander's counsel, and Mr. Lerner, asking for all of the communications between them and Jody Kriss.

And, literally, I tracked the affidavit as to what he alleged never occurred, because, indeed, if there are communications that show that Jody Kriss was lying in his affidavit, let alone that he would likely reconsider whether he was in contempt, you would probably consider more just that

Proceedings                                    14

he purged himself to the Court. And sounds like there is right now a very live situation and colorable situation at hand that he did purger himself to the Court, submit a false affidavit, and, frankly, defrauded the Court into a position that he was completely innocent.

THE COURT: Sounds like there may be grounds to reargue the decision denying the motion, but since you haven't seen the order, we don't really know yet, so we will get you the order. I'll determine whether to get it to the respondents here. I think I probably will; that's my inclination.

MR. WOLF: Your Honor, I don't think we have any objection.

THE COURT: Well, you may not. I have to think about it carefully. And, then, if there's further proceedings, you can move to reargue, and that motion can be supported by whatever evidence these respondents want to give you or feel obligated to give the Court. But we're all shooting in the dark here, because I'm the only one that knows what I wrote, and I, frankly, don't remember it well enough to tell you that, yes, this was the lynchpin of the decision, so we definitely have to reargue it. So let's break this discussion on that topic and wait until you have all seen the opinion, or those of you who are going to see it have seen it, and then we'll decide where we go from here.

NICOLE CANALES, CSR, RPR

Proceedings                                          15

MR. WOLF:  Just so the record is clear, I didn't agree to withdraw the subpoena, as Mr. Hoffman said, but in light of what's being discussed today, pending discussion -- pending receipt of the decision, pending discussions with counsel, I won't take any action to look to enforce those subpoenas.

THE COURT:  The subpoenas are on hold until further notice.

MR. WOLF:  Thank you, your Honor.

THE COURT:  Something else?

MR. BEYS:  No.  Thank you.

MR. HOFFMAN:  Your Honor, one of the things that you said at the beginning, I believe, was that you were going to give 60 days to see what happened, in essence, with the Northern District, and if nothing has happened, then you would ask the movants whether or not they wanted the Court to appoint a private prosecutor.

THE COURT:  No, I didn't say that.  What I said was if the government denies -- I need a denial from the government to raise the issue of whether a private prosecutor is appropriate.

MR. HOFFMAN:  That was the correction I was going to make, but I don't have to because I misheard it.

THE COURT:  I misspoke.  I know the rules.

MR. HOFFMAN:  Can I have one second, your Honor?

NICOLE CANALES, CSR, RPR

Proceedings                                    16

THE COURT:  Absolutely.

(Pause in proceedings.)

MR. HOFFMAN:  Obviously, I would point out to the Court that if we don't -- if the Court determines not to send us a copy of the order, then we wouldn't be in position to submit any papers.

THE COURT:  Understood.

MR. HOFFMAN:  Lastly, and I'm not asking for a ruling on this, at this moment, I'm just throwing it out there, and I don't know how much the Court is aware of what's been happening overall in the matter.  But suffice it to say that almost everything other than the presentence report that has been bandied about in all of these proceedings is basically -- not basically, is now public.  The AP has everything on their websites, etcetera, etcetera, etcetera.

And we find ourselves in a position that with all this material being public, everyone else but us can use it in any way they want because your Honor had sealed the docket saying all this public material -- you're not saying it that way, but the essence is all this public material is on a sealed docket so the people -- Mr. Oberlander, for example -- that are concerned with that, can't use it, while the rest of the world can do whatever they want -- excuse me.  With all of the other -- I'm reading into, obviously --

THE COURT:  I get the point.

NICOLE CANALES, CSR, RPR

Proceedings                                                17

MR. HOFFMAN:  -- what it means.  So I would ask the Court to consider unsealing the docket, other than the PSR, because there's no reason for it to be sealed.

THE COURT:  Okay.  That, to me, would be bootstrapping.  If it is, in fact, the case that your clients were in contempt, your client was in contempt, of an injunctive order prohibiting dissemination, he then allows dissemination, which engenders all this publicity, and then says, oh, look, there's all this publicity, I should be able to do it too, that would be bootstrapping, and a way of circumventing the injunction, which I found your client attempted to do previously, and I'm not going to allow that.

MR. HOFFMAN:  Maybe I'm not making myself clear. I'm talking about two things.  One, you may not be aware of is that Mr. Sater filed a lawsuit in Israel with a complaint and a few minor redactions to it publicly.  After six months of those proceedings, he said I made a mistake; I shouldn't have been public, even though I made redactions that obviously show there were things I didn't want public.  The supreme court of Israel determined that is to stay public, and that's where everything was picked up by the AP and other news media, but I'm not referring to past activities.

What I'm saying is now, in going forward, Mr. Oberlander could be -- I don't think he is, but our concern is that the Court might think that he's -- he would be

Proceedings                                      18

acting improperly if, other than the PSR, he used any of these materials in any way, shape, or form, because today the Court may consider them under seal. And all I'm saying is that -- not the past. Our arguments in the past --

THE COURT: I understand. You're asking me for prospective permission to use certain information because Mr. Sater's the one who made it public in Israel; I've got that. However, I don't know anything about Israel. If you want a motion for that kind of determination, file it. By all means, file it, and I'll be glad to consider it.

MR. WOLF: Just so the record is clear, I won't get into that. What was filed in Israel has got nothing to do with the case.

THE COURT: That's why I'm not making any rulings today, because I don't know anything about it. Anything else?

MR. HOFFMAN: Literally, last but not least, my client is concerned that what I said to the Court -- which I don't think I did, but if I did, I say it's not our position that if anything is technically under seal pursuant to these documents, etcetera, that he can't disseminate it. And the issue there is -- a sealing order is an order to the clerk not to let anybody see certain documents unless the Court changes that. There's a whole area of law as to that's not a gag order. That's not an order saying you can't disseminate, etcetera. All I'm saying is, for the record, if I said that,

NICOLE CANALES, CSR, RPR

Proceedings                                    19

that's not what I meant.

THE COURT:  I have heard what you just said.

MR. HOFFMAN:  Thank you.

THE COURT:  I'm setting a date of April 19th for a hearing.

I'm sorry.  Mr. Lerner, was there something else?

MR. LERNER:  In my view, the issue isn't bootstrapping, but whether the public has a right of access --

THE COURT:  File a motion, and I will consider it.

I'm setting a date of April 19th at 10:00 a.m., for a hearing on the movant's motion for civil contempt.  We're going to go forward with that, unless the movant tells me it has withdrawn there or unless I have a definitive indication that the matter's going to be prosecuted criminally.  Anybody have a problem with that date?

MR. BEYS:  No problem, your Honor.  I would just like to clarify when we say hearing, testimony under oath?

THE COURT:  If you need it.  It's your motion; you have to decide what to do in order to prove it.  I will hear witnesses if you think it is necessary.

MR. BEYS:  Your Honor would so order subpoenas that we issue?

THE COURT:  I will.

MR. BEYS:  Thank you.

MR. HOFFMAN:  I believe, your Honor, that we have

NICOLE CANALES, CSR, RPR

Proceedings                                          20

submitted motions to the Court aimed at dismissing that the Court stayed everything, so, obviously, you haven't -- I can't say you haven't considered it, so I don't know what you've done, but my guess is you may not have gone through it and considered it.

THE COURT:  I take your motions to be opposition to the motion for contempt.

MR. HOFFMAN:  Correct.

THE COURT:  Okay.  Well, that's the context in which I'm going to consider them.  I'm going to have a hearing.  At that hearing, I may grant your motions.

MR. HOFFMAN:  I see.  So the hearing is an argument as to whether or not to go forward?

THE COURT:  The hearing will go forward unless I grant your motions and determine that on the papers there's no basis for going forward.

MR. LERNER:  So there will be an evidentiary hearing on the 19th unless you dismiss the case, at that time?

THE COURT:  I am not determining that now; I'm leaving it to the movant to be ready to prove their case if their case goes forward.  I think they're giving you every indication, Mr. Lerner, that they intend to call witnesses. Okay.  Anything else?

MR. BEYS:  No, thank you.

MR. WOLF:  No.

NICOLE CANALES, CSR, RPR

Proceedings                                    21

THE COURT:  Thank you.  We're adjourned.

MR. WOLF:  Your Honor, may we stay for a copy of that decision?

THE COURT:  Yes.  We'll print one out now.

MR. WOLF:  Thank you very much.

MR. HOFFMAN:  And in view of your Honor's order, and the amount of time that has passed, we ask for leave to just renew or amend some of the objections that we already put before the Court.

THE COURT:  When are you going to do that?

MR. HOFFMAN:  Two weeks.

THE COURT:  Fine.

MR. HOFFMAN:  Thanks.  All right.  Thank you all. We're adjourned.

(Proceedings adjourned.)