2012 WL 3041172 (U.S.)                                                                                                          Page 1

Supreme Court of the United States.
Richard ROE, Jane Doe, John Doe II, Petitioners,
v.
UNITED STATES OF AMERICA, Respondent,
v.
John Doe, Respondent.
No. 12-112.
May 10, 2012.

On Petition For A Writ of Certiorari to the United States Court of Appeals for the Second Circuit (Redacted on July 9, 2012)

Petition for a Writ of Certiorari

Richard E. Lerner, Melissa A. Murphy-Petros, Wilson Elser Moskowitz, Edelman & Dicker LLP, Attorneys for Petitioner, "Richard Roe", 150 East 42nd Street, New York, New York 10017, 212-915-5419.

QUESTIONS PRESENTED

1. Respondent Doe pled guilty to racketeering for defrauding investors out of $40,000,000, but as his case was blanket sealed, entirely hidden, the District Court didn't sentence him to restitution, though by law such order was mandatory, and didn't notify his victims, also mandatory. This Court has held that a court acts illegally when it fails to follow mandatory sentencing laws. Does a sealing order justify a court's refusal to sentence or otherwise act according to law?

2. The courts know respondent takes advantage of his sealed case, concealing his conviction from investors and partners in spite of a duty to disclose. Victims of this fraud, including petitioner's clients, have lost up to $500,000,000. Does a court violate the law when it emboldens crime by maintaining seals?

3. Doe's case is not unique; the Eleventh Circuit prohibits sealed dockets, but Second Circuit courts, in conflict, indiscriminately blanket seal entire cases, operating a covert dual justice system, accountable to no one, without public notice, hearing, or evidentiary support. Does this violate the constitution?

4. Petitioner learned this from case documents he received from a whistleblower. They reveal official misconduct, yet he was enjoined from telling anyone, *even Congress*, based on an alleged 12-year-old blanket sealing order no one has seen, to which he is a stranger. The Third and Sixth Circuits, in conflict, hold this unconstitutional. Does a court violate the First Amendment by extending a sealing order into a prior restraint *contra mundum*, enjoining without due process one who lawfully and privately receives a copy of a sealed document from disseminating it?

*ii TABLE OF CONTENTS

QUESTIONS PRESENTED ... i

TABLE OF AUTHORITIES ... vi

DECISIONS BELOW ... 1

JURISDICTION ... 2

CONSTITUTIONAL, STATUTORY, AND REGULATORY PROVISIONS INVOLVED ... 3

STATEMENT OF THE CASE ... 4

I. The Back Story: "White Collar Crime Does Pay" ... 4

II. Respondent Doe's Secret Criminal Case: What the PSR and Other Documents Reveal ... 7

III. Petitioner learns Doe is a secretly convicted RICO felon ... 9

IV. Procedural History ... 11

 A. District Court Proceedings ... 11

 B. Second Circuit Proceedings ... 14

 C. Current Status ... 18

REASONS FOR GRANTING THE WRIT ... 18

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

I. The integrity of the federal court system depends on this Court's confirming that a covert dual justice system of secret criminal trials is illegal and can have no place in American law. ... 18

 A. Secret criminal courts are illegal. In particular, they work a fraud on victims. ... 18

*iii B. This Court should put an end to this by holding unconstitutional *per se,* under its existing jurisprudence, any use of sealing orders that violates the separation of powers and the limits of Article III authority. ... 25

 C. This Court should find an absolute First Amendment right of access to criminal docket sheets, resolving the conflict between the Second and Eleventh Circuits. ... 28

 D. This Court should hold the blanket sealing of criminal cases facially unconstitutional. ... 29

 E. This Court should clarify the requirements of the "strict scrutiny" closure test. ... 30

II. Federal courts may not exempt themselves from the First Amendment on some claim of "judicial privilege." When a stranger to a case lawfully receives copies of sealed documents, whether labeled "PSR" or "XYZ," full prior restraint due process must be provided before he may be enjoined from disseminating them; *New York Times v. United States* applies equally to the dissemination of documents sourced to the judiciary as to the executive or legislative branch. ... 32

 A. If Ellsberg had clerked for a judge ... 32

 B. Petitioner has the same rights as media ... 38

*iv CONCLUSION ... 39

APPENDIX

Constitutional, Statutory and Regulatory Provisions ... 1a

Order of the United States Court of Appeals For the Second Circuit, No. 10-2905, dated January 28, 2011 [REDACTED] ... 29a

Order of the United States Court of Appeals For the Second Circuit, No. 10-2905, dated February 4, 2011 [REDACTED] ... 30a

Order of the United States Court of Appeals For the Second Circuit, No. 11-479, dated February 8, 2011 [REDACTED] ... 33a

Order of the United States Court of Appeals For the Second Circuit, No. 10-2905, dated February 9, 2011 [REDACTED] ... 35a

Order of the United States Court of Appeals For the Second Circuit, No. 10-2905, dated February 10, 2011 [REDACTED] ... 37a

Summary Order of the United States Court of Appeals for the Second Circuit, filed February 14, 2011 ... 43a

Summary Order of the United States Court of Appeals for the Second Circuit, dated June 29, 2011 ... 52a, 73a

*v "Secret Pleas Accepted by U.S. Attorney in City," *New York Times,* dated April 23, 1982 ... 76a

"Audit Criticizes U.S. Prosecutor on Secret Pleas," *New York Times,* dated July 4, 1983 ... 81a

[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] ... 86a

[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] ... 97a

[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] ... 99a

[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] ... 106a

[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] ... 109a

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] ... 118a

[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] ... 131a

Scheduling Order of U.S. District Court, Eastern District of New York, dated January 26, 2012 ... 137a

[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] ... 139a

Transcript of Proceedings, dated February 27, 2012 ... 146a

[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] ... 157a

[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] ... 164a

*vi TABLE OF AUTHORITIES

Cases

18 U.S.C. §1964(d) ... 6

18 U.S.C. 3664(d) ... 7

Bartnicki v. Vopper, 532 U.S. 514 (2001) ... 38

Carroll v. Princess Anne, 393 U.S. 175 (1968) ... 37

Citizens United v. Federal Election Comm'n, 130 S.Ct. 876, 905-06 (2010) ... 38

Dirks v. SEC, 463 U.S. 646 (1983) ... 36

Dolan v. United States, 103 S.Ct. 2553 (2010) ... 22

Gannett v. DePasquale, 443 U.S. 368 (1979) ... 25

Globe Newspapers v. Superior Court, 457 U.S. 596, 608 n.20 (1982) ... 29

Hartford Courant v. Pellegrino, 380 F.3d 83 (2004) ... 28

New York Times v. United States, 403 U.S. 713 (1971) ... 2, 33

[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] ... 4

Press-Enterprise v. Superior Court, 478 U.S. 1 (1986) ... 25

Procter & Gamble v. Bankers Trust, 78 F.3d 219 (6th Cir.1996) ... 38

Richmond Newspapers v. Virginia, 448 U.S. 555 (1980) ... 19

Socialist Party v. Skokie, 432 U.S. 43 (1977) ... 2

[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] ... 4

U.S. v. Eberhard, 525 F.3d 175 (2nd Cir. 2008) ... 9

U.S. v. Smith, 123 F.3d (1997) ... 38

U.S. v. Valenti, 987 F.2d 708 (11th Cir. 1993) ... 28

Statutes

18 U.S.C. §1506 ... 22

18 U.S.C. §1964 ... 6, 21

18 U.S.C. 3663A ... 6, 26

*vii Ex Parte United States, 242 U.S. 27 (1916) ... 22

Other Authorities

"Secret Pleas Accepted by U.S. Attorney in City," New York Times, April 23, 1982 ... 19

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

In Re Oliver, 333 U.S. 257 (1948) ... 19

*Kudzu in the Courthouse: Judgments Made in the Shade,* Smith, 2009 Fed. Cts. L. Rev. 177 ... 19

New Jersey Provincial Charter Ch. 23, July 29, 1674 ... 20

Regulations

28 C.F.R 50.9 ... 36

28 C.F.R. 45.10 ... 36

***1 DECISIONS BELOW**

Two opinions of the Second Circuit have been published, a February 14, 2011 "Summary Order" 414 Fed.Appx. 327, 2011 WL 494282. App. 43a-51a; and a June 29, 2011 "summary order," 428 Fed.Appx. 60, 2011 WL 2559016. App 52-72.[FN1]

> FN1. "App" references the appendix herein; "JA ___" the joint appendix submitted to the Second Circuit; "SA ___" the special appendix filed with the Second Circuit.

All other orders are, or are allegedly, under seal. Those necessary to consideration of this petition are in the appendix.

***2 JURISDICTION**

This appeal is from a permanent prior restraint injunction upheld in a June 29, 2011 Second Circuit order; other orders therein extending and interpreting previous prior restraint orders *pendente lite*,[FN2] App. 52a-75a; and from the Appellate Court's denial of a petition for mandamus.

> FN2. *Socialist Party v. Skokie,* 432 U.S. 43 (1977); *New York Times v. United States,* 403 U.S. 713 (1971).

Petitioner and *pro se* appellants below timely moved for rehearing and rehearing *en banc*, the last was denied on December 12, 2011. By March 9, 2012 letter this Court granted a 60 day enlargement, to May 10, 2012 to file this petition.

Statutory jurisdiction lies in 28 U.S.C. 1254(1).

***3 CONSTITUTIONAL, STATUTORY, AND REGULATORY PROVISIONS INVOLVED**

U.S. Constitution, Article III

U.S. Constitution, Amendment I

U.S. Constitution, Amendment VI

18 U.S.C. § 1506, "Theft or Alteration of Record or Process; False Bail"

18 U.S.C. § 3553(c), "Imposition of a Sentence"

18 U.S.C. § 3663, "Order of Restitution"

18 U.S.C. § 3663A, "Mandatory Restitution to Victims of Certain Crimes"

18 U.S.C. § 3664, "Procedure for Issuance and Enforcement of Order of Restitution"

18 U.S.C. § 3771, "The Crime Victims' Rights Act"

Federal Rule of Criminal Procedure 32, "Sentencing and Judgment"

Federal Rule of Civil Procedure 65(d), "Injunctions and Restraining Order"

28 CFR § 45.10, "Procedures to Promote Compliance with Crime Victims' Rights Obligations"

28 CFR § 50.9, "Policy with Regard to Open Judicial Proceedings"

***4 STATEMENT OF THE CASE**

I. The Back Story: "White Collar Crime Does Pay"

In 1994, Doe, Sal Lauria, and Gene Klotsman acquired a stock brokerage. Backed by organized crime, they acquired large blocks of stock,[FN3] then, "incentivizing" their brokers by beating or threatening to kill

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

any who got out of line, they got customers to buy, the stocks rose, and they sold and pocketed a fortune, the stocks then falling.[FN4] Pump and dump.

> FN3. [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT]
>
> FN4. [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT]

Doe, with a felony conviction for assault with a deadly weapon, was barred from the securities industry, so his ownership interest and control in the brokerage were concealed. App. 97a-98a.

Competitors, also backed by organized crime, started shorting the stocks. According to Lauria, Doe announced he might murder one, Alain Chalem, but did not. Doe's father, a reputed Mogilevich crime boss who would soon be convicted of extortion with the Genovese family, had dinner with Chalem and was heard arguing. The next day Chalem was found dead, shot in the head several times.[FN5]

> FN5. [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT]

**\*5** Victim losses were $40,000,000 to $80,000,000 when in 1998, Doe forgot to pay rent on a locker. App. 73a. The owner broke in, saw weapons and incriminating documents, and called the FBI. App. 73a.

In 1998, Doe, Lauria and Klotsman secretly pled to racketeering and became cooperators. App. 87a, fn. 2, 102a. Their cases were blanket sealed, apparently without sealing orders issued, or anyone requesting one[FN6].

> FN6. As discussed *infra*, District Court Judge Glasser acknowledged on the record several times that he never issued a "formal" sealing order. JA 152-153, 164, 166-167, 167, 235, 697.[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] SA44.

On March 2, 2000, 19 underlings were arrested. The [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] issued a [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] with the [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] announcing the arrests and noting by their true names that Doe, Lauria and Klotsmsan had already pled guilty to racketeering. App. 86a, 87a.

On February 2, 2001, *in open court with co-defendants and counsel present*, Doe's status as a cooperator was openly discussed, his real name used[FN7], App. 102a. The public docket for the case, [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT], shows "3500" letters going to defendants regarding Doe, using his real name and calling him a government witness. So much for any purported secrecy of pleas and cooperation.

> FN7. In spite of this, the government implied in its March 17, 2011 motion to unseal Doe's case that [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] App 118a-129a.

**\*6** In 2002, all 19 pled guilty. Most received a few years' incarceration and restitution of a million dollars or so.

In 2002, Klotsman, who had stopped cooperating, was sentenced[FN8] to 6 years' incarceration, and $40,000,000 of restitution. App. 109a.

> FN8. Doc. 4 Case 02-CR-1313-ILG EDNY.

In 2003, Lauria published his tell-all account, *The Scorpion and the Frog*, describing his and his partners' cooperation. [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT]

Lauria was sentenced in 2004 to racketeering predicated on securities fraud and money laundering[FN9]. Although the guideline was about 17 years, he got probation and a small fine. Fn. 9. Though by his plea he admitted responsibility, as one of the three ring-

leaders, for *all* losses, and the scheme straddled the effective date of the Mandatory Victim Restitution Act, 18 U.S.C. §3663A ("MVRA"), App. 6a, making restitution mandatory, his order of judgment shows no restitution. Fn 9. The statement of reasons is blank. Fn 9. As he was sentenced in secret there is no knowing why.

> FN9. Doc. 15 Case 98-CR-1102-ILG EDNY.

Though he started the fraud in 1994, the four-year statute of limitations for civil RICO claims against him did not begin to run until he was sentenced. 18 U.S.C. §1964(d). His victims had until 2008 to sue, and had the court imposed the mandated order of restitution, they would have been entitled to summary judgment on liability. 18 U.S.C. §3664(1). Instead, due to the blanket sealing, his victims were not aware of any of this

**\*7** Conveniently, Lauria's criminal case remained hidden until April 2009[FN10], when it was unsealed at the request of the government, too late for his victims to easily sue, or seize the $1,500,000 "fee" he had got in 2007 from a real estate developer largely owned and controlled by Doe, where Lauria worked from time to time between 2002 and 2007. App. 160a. Lauria would have had to give that to his victims if he had been ordered to make restitution. 18 U.S.C. §3664(k).

> FN10. See generally Case 98-CR-1102-ILG EDNY

On receiving that fee, he autographed a copy of his book for a friend, inscribing, "White Collar Crime Does Pay." JA 737.

## II. Respondent Doe's Secret Criminal Case: What the PSR and Other Documents Reveal

Doe came up for sentencing in 2004. Though his co-operation agreement [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] of mandatory restitution JA 473, his 2004 Presentence Report, or "PSR," noted DOJ hadn't given the victim list JA 514, required by the MVRA so Probation can contact victims about restitution. 18 U.S.C. 3664(d)(2).

As most of the 19 co-defendants and Klotsman had restitution orders, it cannot be that DOJ and Probation couldn't identify Doe's victims; they were the same, as were the losses.

The PSR also shows the Probation Officer, though charged with warning employers and others of recidivism risk, knew Doe had been working since **\*8** 2002 as a partner at that real estate development firm, yet agreed not to communicate with the firm, thus allowing Doe's prosecution to remain hidden from the firm and his partners[FN11]. JA 515.

> FN11. Doe and Lauria occasionally worked together there. App. 160a. Probation would have to have known, as Lauria was then on probation pursuant to terms which forbid association with felons without permission. fn9.

The Officer also stated in the PSR that Doe self-reported no salary from [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] but he (the Officer) wouldn't verify it JA 537-538, as that might alert the firm to Doe's secret case. JA 537.

At that same time, as alleged in petitioner's RICO complaint, Doe was skimming $[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] per year from the firm, calling the money loans. JA 342. Jane Doe has a recording in which the top officers in the firm admit those loans, some $4,000,000 by 2007, weren't to be repaid, but were to evade taxes. JA 344.

The Probation Officer concluded Doe had a negative net worth of $[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT], JA 540, yet with no income still managed to live in an $[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT]/month house. JA 534. Mere days after the PSR was issued Doe closed on a $[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] home with $[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] cash wired from his firm to the closing attorney; as petitioner's RICO complaint alleges, Doe took a $[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

U.S. SUPREME COURT] mortgage. JA 341. Presumably, he told the bank something different from what he told his Officer; it's not likely a bank would lend $[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] to someone with a negative net worth, no income, and RICO conviction facing a [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT]-year sentence.

The Officer expressly noted that he did not ask what happened to the millions of dollars of crime proceeds Doe had admitted receiving. JA 541.

**\*9** Doe was not sentenced for another 5 years, until October 23, 2009, App. 128a, so as of its October 2004 effective date the Crime Victim Rights Act ("CVRA"), App. 14a, applied to his case. U.S. v. Eberhard, 525 F.3d 175 (2nd Cir. 2008). Apparently none of the rights was provided. For example, DO J and the court were required to notify Doe's victims of the scheduled sentencing, if open, and give them the opportunity to be heard. App. 14a-15a. And by law, sealing or no sealing sentences must be read aloud in open court, 18 U.S.C. §3553(c).

Yet the government says Doe was sentenced in public, though under the name Doe, and has argued that the transcript of his sentencing should remain sealed. App. 128a. The government has also admitted that Doe's sentence failed to include restitution; thus, Doe's victims were deprived their rights under the CVRA and the sentence illegal.

In all, as alleged in petitioner's RICO complaint, Doe took about $[REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] from the firm from [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] through [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT], but his victims have received nothing. JA 299.

### III. Petitioner learns Doe is a secretly convicted RICO felon

As noted, petitioner is a New York attorney who represents Jane Doe and John Doe II, minority partners in the real estate developer Doe largely owned and controlled. The firm's projects include an internationally prominent $450,000,000 New York hotel condominium. Jane Doe is its former Director of Finance.

**\*10** Jane Doe and John Doe II engaged petitioner on suspicion they had been defrauded by other partners, including Doe, who was its Chief Operating Officer and Managing Director. Subsequently, petitioner's clients directed him to sue.

When petitioner began drafting a RICO complaint in 2009, publicly available information showed Doe was "connected to" organized crime. For example, a [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] article, App. 73a, and a [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] article, App. 109a, discussed Doe's involvement in State Street, the aforementioned stock fraud. It was widely believed Doe had been an "unindicted co-conspirator" who avoided prosecution by cooperating. App. 110a.

There was, however, information from which one could infer Doe *had* been prosecuted. For example, Klotsman told the [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] Doe had pled guilty. App. 110. The [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] quoted Doe's lawyer, who didn't deny it, but just challenged anyone to find it. App. 116a.

On March 1, 2010, these suspicions were confirmed when unexpectedly, and without solicitation, petitioner received documents from a whistleblower, a former employee of Doe's firm, who told petitioner he had got them from the firm's files. JA 187-191, 196-198.

The documents were a criminal complaint, JA 590, information, JA 588, proffer, JA 466, and cooperation agreement JA 472-480, all from 1998, and a PSR from 2004 JA 496-544, all from Doe's secret case, 98-CR-1101 E.D.N.Y., identifying Doe by his true name, confirming Doe had pled guilty to racketeering, and had been scheduled for sentencing in 2004.

**\*11** Petitioner, concluding $750,000,000 of the firm's

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

capital, $550,000,000 bank debt, and $200,000,000 equity from development partners had been procured with the fraudulent concealment of Doe's conviction, and that the firm's customers were being defrauded daily by sales of condominiums pursuant to false and misleading offerings, acted quickly.

On May 10, 2010, petitioner filed a civil RICO complaint, 10-CV-3959, S.D.N.Y., charging Doe and others with operating the firm through a pattern of crime, including excerpts from the documents. Within a day [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] had the story and a copy of the complaint with the excerpts online, available for download. App. 164a. Additionally, upon receipt, the firm's general counsel disseminated the complaint to several named defendants and attorneys on May 12. JA 740.

IV. Procedural History

A. District Court Proceedings

*2010 - The TROs and Permanent Injunction*

**Initial TROs.** On May 18, Doe obtained an *ex parte* TRO from the same judge who had secretly prosecuted him, (Glasser, J., E.D.N.Y.), enjoining dissemination of the documents and ordering a hearing to ascertain how petitioner got them.

**Bench Statements.** On July 14, the first of four days of hearings, petitioner asked the court to reveal any order purporting to seal anything, or bind him. JA 147. Judge Glasser admitted "there is no formal **\*12** order" but "from the very first document that was filed, it was filed clearly indicating a sealed case." He admitted he couldn't "find any order signed by me, which directed that this file be sealed," and that there was no indication in the first filing "or in any subsequent document that an application was made or request was made in that document to seal that file." JA 160-167, 697. *Judge Glasser admitted there were no orders ever issued that bound petitioner and* **there were no sealing orders ever issued.** JA 697.

**Hearings.** On June 21, the third day, petitioner testified, explaining how he got the documents and why he had a First Amendment right to use them. He testified that none indicated they had been "sealed" and, in any event, it has been the law for 70 years that orders cannot run *in rem*, but must be expressly directed against a party or privy. JA 232-234,255-258. Judge Glasser agreed that a sealing order is directed only to court personnel. JA 697.

**The Permanent Injunction.** After petitioner testified, Judge Glasser (without notice, other testimony, or argument) permanently enjoined dissemination of the PSR and its contents, essentially ruling a PSR exempt from First Amendment prior restraint considerations. JA 265.

**Hearings (cont'd).** Doe testified last. Consistent with petitioner's testimony that the whistleblower had said he had got the documents from the firm, Doe admitted keeping copies of the documents at his firm, in his desk and "possibly" on its computers JA 277-282, and, importantly, saying nothing of any specific threat to his or his family's safety.

**\*13 Bench Statements.** On July 20, the fourth day, Judge Glasser stated that the whistleblower had not testified, but one could infer that he "may" have stolen the documents. But "[w]hat order of the Court was violated by that event?" JA 698. He could find no theory by which any court order had been violated, or how anything petitioner did could have violated any court order, though he reserved decision. JA 700.

*2011*

**The Mandamus Petition.** In early February, in response to the Second Circuit's demands for a docket from the District Court, petitioner requested Judge Glasser make one and also requested he comply with the CVRA by recognizing his clients as crime victims and dealing with Doe's past victims.

**The Government Moves to Unseal.** On March 17, acknowledging that [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT], the government moved to unseal much of the case. App. 86a-87a, 118a, 120a. [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] See *infra*.

**The Scheduling Order.** Notwithstanding that Judge Glasser acknowledged that he had never issued a

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

"formal" sealing order, and had acknowledged that sealing orders only bind court personnel, Judge Glasser issued a [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT], petitioner had "flouted" an "implicit" sealing order. App. 134a.

*14 B. Second Circuit Proceedings

*2011 - Sealing the Appeal*

**Orders.** In a series of orders, App. 29a-42a, the Second Circuit ordered the government to show cause why the appellate docket should not be unsealed, ordered that oral argument with respect to that motion be conducted in a sealed courtroom, and issued *sua sponte* gag orders barring the petitioner and his clients from revealing any documents or contents thereof filed in related cases in the Eastern or Southern Districts or the Second Circuit. *The court expressly barred the petitioner from reporting to Congress documents showing that the District Court unlawfully failed to impose a congressionally mandated sentence of restitution.* App. 41a.

**The Mandamus.** Meantime, since there was no docket (and there is still none) at the District Court, and Judge Glasser had not taken up petitioner's "demand," petitioner filed a mandamus in the Second Circuit, seeking an order to compel the District Court to publish a docket and begin to comply with the CVRA, for example to direct the District Court to cause the victims of Doe's crimes to be notified of their right to congressionally mandated restitution.

**Argument.** Argument with respect to the government's motion to seal and the mandamus proceeding was held February 14, in a sealed courtroom. JA 39-42.

*The government* said Doe's criminal case had been secret since inception, that while "[t]here have been public accounts [of Doe's prosecution] … they have been lacking in terms of their corroboration and *15 the government seal of approval, if you will. The government feels that is an important difference." JA 1263-1264.

Referring to [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] article, App. 109a, the government acknowledged it reported that Doe had been involved in State Street with Lauria and Klotsman, "[b]ut the [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] itself couldn't find any confirmation of that," JA 1266, so "…the government advocates for a sealing that does not release the real name of Mr. Doe and does not reveal facts that would alert other individuals to his cooperation or conviction." JA 1269.

The government, on questioning by the panel, said it believed there was a serious risk of harm to Doe if any of this got public.

*Petitioner* argued that none of these facts were in the record, so were only argument, and that the First Amendment required the appellate docket be public. JA 1283-1284. The court seemed to concede that *media organizations* could not have been enjoined had they come into possession of the documents at issue, and such appellate proceedings would be open, but petitioners could be gagged because they're not the media:

**Judge Cabranes** asked for assurance from the government that: "[W]e are not talking about preventing a news organization from publishing a matter of public concern or impinging on editorial discretion." JA 1270.

**Judge Pooler** responded to petitioner's First Amendment arguments with: "We are not dealing here with prior restraint *16 of the press or media. That's what the *Pentagon Papers* case was about." JA 1281. "[Newspapers have a special charge in publishing information for citizens. [Petitioner] doesn't have any charge in making this information available to citizens." JA 1284.

**The February 14 order.** The court then issued its summary order, A 43, (1) denying the petition for mandamus and (2) maintaining the appellate case under blanket seal.

*The Mandamus.* Although there was no sealing order in Doe's case, and no notice, hearing, or findings to support sealing, the court found no abuse of discretion in keeping a secret district court docket, *without explanation.* The Second Circuit indicated that it might explain its ruling on a later date. App. 47a. It never has. It has never mentioned the CVRA component of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

the mandamus petition.

*Sealing the Appeal.* The court ordered the seal on the appellate case maintained, applying a balancing test, "In light of the serious, indeed grave, concerns expressed by the United States regarding the possible consequences of unsealing these documents, and the absence of any sufficiently persuasive countervailing considerations expressed by [petitioner]…" App. 48a.

*Prior Restraints Pendente Lite.* The order continued the February 10th injunction, "re-emphasizing that petitioner was not to reveal or distribute **sealed** documents, nor the contents thereof, to any third-parties, including members of the public or the media." App. 48a [emphasis added].

**\*17** *2011 - The Merits Appeal*

**Petitioner's brief** argued that the District Court gag orders were unconstitutional and otherwise contrary to law because (l) the documents were obtained without court process so were outside the jurisdiction of the court; (2) the documents revealed prosecutorial and judicial misconduct, so the information therein concerned core speech; (3) a sealing order had never been issued; (4) even if it had, it couldn't have bound petitioner, a stranger to the case; (5) even if it could bind petitioner, without decretal language enjoining speech, it could not be interpreted to do so; and (6) even if it were so interpreted, there had been no prior restraint due process, no findings at a clear and convincing level of a compelling interest, near certain imminent grave harm, and no other alternative; and (7) any constitutional limit on attorney speech applied only to extra-judicial speech during an ongoing criminal jury trial, certainly not to revealing official misconduct or suing for injuries to his clients.

**The government** argued (l) the whistleblower stole the documents from Doe (though there was no such evidence); (2) petitioner had an obligation as an attorney not to use them; (3) dissemination of the information contained in the documents would pose a grave risk to Doe and national security (again without any evidence, and contrary to the position taken by the government mere days later in its March 17, 2011 motion to unseal the District Court Docket, App. 118a).

**The decision.** As noted, in its June 29th summary order, the Second Circuit continued the **\*18** temporary injunctions, upheld the permanent injunction directing the "return" of the PSR and barred dissemination of the information contained therein, remanding for further proceedings with respect to the non-PSR documents.

C. Current Status

The Second Circuit has yet to issue a decision explaining the denial of the writ as to unsealing the docket for Doe's case and has not yet taken up the writ as to ordering the District Court to comply with the CVRA. The District Court has not yet ruled on the remanded issue of the remaining documents. Pending resolution of all these sealing issues petitioner's civil RICO complaint remains under seal in the S.D.N.Y. and the case is frozen.

REASONS FOR GRANTING THE WRIT

I. The integrity of the federal court system depends on this Court's confirming that a covert dual justice system of secret criminal trials is illegal and can have no place in American law.

A. Secret criminal courts are illegal. In particular, they work a fraud on victims.

Counsel have not cited, and we have been unable to find, a single instance of a criminal trial conducted *in camera* in any federal, state, or municipal court during the history of this country. Nor have we found any record of even one such secret criminal **\*19** trial in England since abolition of the Court of Star Chamber in 1641, and whether that court ever convicted people secretly is in dispute. - *In Re Oliver,* 333 U.S. 257, 266 (1948)

They should have looked in New York. In the thirty years since *Richmond Newspapers v. Virginia,* 448 U.S. 555 (1980), this Court has repeatedly affirmed a First Amendment right of access to criminal proceedings.

In the same thirty years, the courts of the Second Circuit, at least the Eastern and Southern districts, have operated in egregious defiance of it.

In 1982, *The New York Times* described a system of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

secret justice prevalent in the S.D.N.Y., of hidden guilty pleas, and, often, hidden sentencings for cooperators"[FN12]. An ensuing GAO audit ordered by Congress found the problem present nationwide, but some *50 times* as frequent in New York[FN13].

> FN12. "Secret Pleas Accepted by U.S. Attorney in City," *New York Times,* April 23, 1982. App 76a.

> FN13. "Audit Criticizes U.S. Prosecutor on Secret Pleas," *New York Times,* July 4, 1983. App 81a.

Washington may be, now, a close second[FN14].

> FN14. In 2006, a study revealed 469 criminal cases conducted in complete secrecy between 2001 and 2005. And while *In re Sealed Case* first appeared as a case name in 1981, it is now the most common case name on the D.C. Court of Appeals docket. *Kudzu in the Courthouse: Judgments Made in the Shade,* Smith, 2009 Fed. Cts. L. Rev. 177.

Interestingly, the U.S. Attorney at the time denied this was for cooperators' safety, insisting it **\*20** was for the convenience of the government, so their identity would remain secret. No one asked how he thought that might work out for the victims.

One might say that U.S. Attorney operated before victims' rights were elevated, before the first such statute, the Victim Witness Protection Act, took effect in 1983, but for long before the VWPA, courts could order restitution as a condition of probation, and two things may be safely concluded, (1) few if any who got these secret convictions were incarcerated, as that would make the secret hard to keep; and (2) few if any had restitution imposed as a condition, as that too would expose the secret.

Lord Acton observed, "Everything secret degenerates, even the administration of justice," a value similar to that expressed in colonial charters:
That in all publick courts of justice for tryals of causes, civil or criminal, any person or persons, inhabitants of the said Province may freely come into, and attend the said courts, and hear and be present, at all or any such tryals as shall be there had or passed, that *justice may not be done in a corner nor in any covert manner*[FN15].

> FN15. New Jersey Provincial Charter Ch. 23, July 29, 1674.

Now, as this case illustrates, the problem is at scandal level, and the damage done to victims is incalculable. And we are all victims when the integrity of the federal justice system degenerates. And only this Court can stop it.

What would they say, men like John Lilburne, who, tried for treason during the reign of Charles II, **\*21** insisted on his right to a public and open trial - "as an understanding Englishman (who in his actions hates deeds of darkness, holes or corners).... But if I be denied this undoubted privilege, I shall rather die here than proceed any further." - were they to learn that we have a system one of dual justice, where defendants who can *pay* enough will get secret trials, illegal deals, and hidden dockets?

And make no mistake - In the shadow justice system, hidden justice *is* for sale, admission *paid* in the currency of cooperation.

Most of these hidden cases are those of cooperators. Petitioner makes no argument that cooperation and plea bargaining are, or ought to be, unconstitutional or illegal; those are matters of politics, of executive discretion, not relevant here.

But when the government crosses the line into illegality and the courts don't stop it, when sealing orders work injustice to crime victims and embolden the criminal defendant to continue on his path of crime, attention must be paid. Notice must be taken.[FN16]

> FN16. As indicated in a recent [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] article, victims of Doe's concealment fraud would never have invested millions of dollars in the [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT] project if they'd known his background. App. 157a.

For example, in respondent John Doe's case, though

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

his stock swindles ran from 1994 through 1996, pursuant to 18 U.S.C. § 1964(d) his victims were precluded from suing him in civil RICO until he was sentenced in October 2009, when a four-year statute of limitations first began to run. In other words, they can still sue him *now*.

**\*22** 18 U.S.C. §1506, App. 3a, makes it an obstruction of justice to conceal a federal court judgment in such manner that it does not take proper and full effect. It has been in force since 1790. Yet petitioner is barred from taking steps to reveal this, that would give effect to the secret final judgment of conviction rendered against respondent Doe. And the courts below, respondent Doe, and the government are preventing the judgment from taking effect.

For example, if Doe had been ordered as part of his sentence to pay to victims restitution, as the law required that the district court do, 18 U.S.C §3663A, App. 6a, they would be able to use the order to obtain summary judgment of civil RICO liability, 18 USC §3664(1). App. 12a-13a.

How does a district court justify refusing to comply with provisions of mandatory sentencing law? It doesn't. It can't.

This Court so held, unanimously, in *Ex Parte United States,* 242 U.S. 27 (1916): When a federal court refuses to impose a mandatory sentence it violates the law and operates *illegally*. If there were any doubt that this applies to a mandatory sentence of restitution, this Court put that to rest in *Dolan v. United States,* 103 S.Ct. 2553 (2010), noting that when Congress wrote in the mandatory restitution statute that such an order must be imposed at sentencing *notwithstanding any other* provision of law, 18 U.S.C. §3663A, Congress meant what it said.

What about cooperator safety? Every filing by respondent Doe and the government solemnly intones that warning, arguing that the courts must **\*23** hide all this to keep Doe safe. To which the reply must be, where in Article III are the federal courts vested with police powers?

*Ex Parte United States* answers, "Nowhere." *Humanitarian considerations (the health and safety of the defendant) cannot justify a court's defiance of the law,* concluding with the statement: **"Rule made absolute,"** 242 U.S. at 53 [Emphasis added], making it clear: there is *never* any lawful basis for a court to refuse to obey mandatory sentencing law. All courts in the country were thereupon required to comply with mandatory sentencing laws. Some 2000 defendants throughout the country faced sentencing that they thought had been delayed indefinitely after this Court ruled in *Ex Parte United States.*

And what about the current victims, not of the underlying crime, but of its concealment? As the courts below well know from all the submissions, respondent has been a principal at a New York real estate developer, its former Chief Operating Officer and managing director from about 2002 through 2008. JA 298. Even without the submissions the judiciary would have to know, because during that entire time respondent was under a cooperation agreement and the Probation Office knew what he was doing. JA 515.

It is black letter law that when a principal conceals a fraud conviction from his partners and investors, to whom he owes fiduciary duties of self-disclosure, that is constructive fraud. Respondent Doe has been doing that since he pled guilty in 1998. The courts below must know he has been emboldened to continue his frauds, if for no other reason than that his Probation Officer acknowledged **\*24** in the 2004 PSR that Doe's racketeering conviction was being hidden from the firm and his partners, including petitioner's clients. JA 515. The firm's investors, lenders, and insurers have been and continue to be defrauded by this concealment, as petitioner alleged in the civil RICO complaint JA 321. That complaint has been languishing under seal for years because the courts wish to "protect Doe's safety," even though, as argued *infra*, no one has ever produced any evidence that there's even any risk.

Back to the original victims. *Dolan* strongly suggests this Court would hold that sentencing respondent today to that long overdue restitution order would not violate due process. With interest or loss of use, that should be about a $200,000,000 restitution order by now. If that is the case, then every day that the District Court refuses to do so, it violates the law. *Ex Parte United States.*

Finally, how many other defendants have hidden felony convictions? How many licensed professionals are unlawfully maintaining their licenses by failing to disclose a conviction they know is hidden? How many

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

schoolteachers are hiding federal convictions? Doctors? Why is petitioner enjoined from revealing that Doe pled guilty to RICO, and was finally sentenced in October 2009?

The reasons for granting this writ are that there myriad victims, and they are us.

***25** B. This Court should put an end to this by holding unconstitutional *per se,* under its existing jurisprudence, any use of sealing orders that violates the separation of powers and the limits of Article III authority.

A criminal trial comes into existence with at least one aspect, even if merely its existence, presumptively open.

By this Court's precedent, any portion of that trial which is presumptively open at inception can only be closed upon the court's finding that one of two tests have been satisfied, a *compelling interest* test or a *countervailing interest test*[FN17].

> FN17. *Press-Enterprise v. Superior Court,* 478 U.S. 1 (1986). Any proceeding to be sealed is first made subject to an "experience and logic" test; if it passes that test, it enjoys a qualified First Amendment right of access that may only be overridden upon the finding of a compelling interest; if it fails, it enjoys a common law right of access subject to countervailing interests. *Gannett v. DePasquale,* 443 U.S. 368 (1979).

By definition, it can never be a compelling or countervailing interest to a presumption of openness (or to anything else) for a court to seek to operate in violation of the law. No court has a constitutionally cognizable interest in operating illegally, without authority, and so no court has a constitutionally cognizable interest in sealing anything such that to do so would bring about an illegal result.

**Direct Illegality I.** As noted, in *Ex Parte United States,* 242 U.S. 27 (1916), this Court held, unanimously, that a court that fails to follow mandatory sentencing laws violates the separation of **\*26** powers and acts illegally, specifically stating that even considerations of humanity (*e.g.*, the health and safety of a defendant) would not justify a failure to sentence according to law. 242 U.S. at 51.

The obligation to impose a sentence of mandatory restitution, 18 U.S.C. §3663A, is a part of mandatory sentencing law, indeed itself states that the order shall be imposed notwithstanding any other law. *See Dolan, supra.*

Therefore, no order, whether imposed upon satisfaction of a compelling interest or countervailing interest test, which results in a frustration, avoidance, evasion, derogation, or other failure to comply with those laws can be legal.

Whether, and if so to what degree, *Ex Parte United States* applies to other mandatory provisions of sentencing law is to be developed. For example, 18 U.S.C §3553(c) facially requires a statement of reasons be read aloud in open court as part of sentencing. Presumably *United States* is not limited to substantive statutes. Petitioner submits that where Congress has spoken, even if procedurally, in areas which this Court has determined are within Congressional authority to control, by separation of powers sealing may not legally override it.

**Direct Illegality II.** For that matter, nothing in *United States* is married to sentencing law; its logic should apply to anything where Congress has constitutionally restricted what a Court might otherwise have the authority to do.

For example, as noted, n 1790 (one year after the All Writs Act, thus superseding it in the event of any conflict), Congress passed the direct forerunner **\*27** to 18 U.S.C. §1506, App. 3a, which makes it illegal to "take away" or "avoid" any federal court record with the result that a judgment not take effect.

With respect to those rights, to whomsoever applying, created by Congress for which a defendant's final conviction is a condition precedent, no order that frustrates fulfillment of those rights can be legal. The issue is not whether §1506 creates a private right of action for a judicial taking in a situation like the underlying case where the right to sue respondent in civil RICO based on his RICO securities fraud came into existence only upon his final conviction and entry of judgment but is being concealed from his victims; the issue is that it cannot be legal to conceal it.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Indirect Illegality.** Congress has often restricted the equity jurisdiction of the lower courts. It must follow that any sealing order which, facially or as applied, would sufficiently directly cause something to happen which was outside the equity jurisdiction of a court to order directly is also illegal, facially or as applied, without regard to sentencing.

While the precise contours of this concept are outside the scope of this petition, it simply cannot be that a federal court has the equity authority to impose, *or maintain*, a sealing order in the face of actual or chargeable knowledge that the concealment it creates is being used as an instrument of crime or fraud. To sit and do nothing, maintaining a sealing order as is being done here, on respondent's entire criminal case, knowing that he, and others acting in concert with him, are taking advantage of it to continue to defraud others cannot be a lawful action.

**\*28** C. This Court should find an absolute First Amendment right of access to criminal docket sheets, resolving the conflict between the Second and Eleventh Circuits.

This Court has never considered whether such a right of access applies to criminal docket sheets. The first Circuit to take up the issue, the Eleventh, not only found a First Amendment right of access, but found it absolute, not qualified, holding that a sealed proceeding or document not noted on a public docket was an unconstitutional infringement on the public's qualified right of access to criminal proceedings. The right to attend the actual proceedings in question might be qualified, but the right to know they're going on is absolute. U.S. v. Valenti, 987 F.2d 708 (11th Cir. 1993).

But the only other Circuit to fully consider the issue, the Second Circuit - while finding a First Amendment right of access to civil and criminal docket sheets - found the right to be *qualified*, going out of its way to note that in "appropriate" circumstances a docket sheet could be sealed. Hartford Courant v. Pellegrino, 380 F.3d 83 (2004).

Predictably enough, that is the Circuit at the center of most of the secret criminal cases, like this one, as reported by the *New York Times*. App. 76a.

In the Second Circuit, words and practice diverge. In this case, Judge Glasser has never maintained a public docket since 1998. Yet in denying petitioner's petition for a writ of mandamus, which sought an order directing that Judge Glasser be required to make public the docket of Doe's case, the Second Circuit, *without explanation*, found no **\*29** abuse of discretion in Judge Glasser's failure to do so, even in the complete absence of any findings in the record purporting to satisfy the strict-scrutiny test (and, *a fortiori*, in the complete absence of any actual sealing order). App. 47a.

This Court should follow the Eleventh and find an *absolute* First Amendment right of access to docket sheets, that a sealed or incomplete ("dual") docket sheet is facially unconstitutional. Because of this split of authority between the two circuits, this petition should be granted.

D. This Court should hold the blanket sealing of criminal cases facially unconstitutional.

"Blanket sealing" means a sealing order issued at some time which purports to prospectively adjudicate questions of sealing not yet ripe, thus at one fell swoop purports to authorize the automatic (default) sealing of every subsequent proceeding and record in the case, including the docket, if the sealing order is issued at inception.

This Court has strongly suggested, if not held, that "individualized determinations are always required before the right of access may be denied," Globe Newspapers v. Superior Court, 457 U.S. 596, 608 n.20 (1982) (citing Richmond Newspapers v. Virginia, 448 U.S. 555, 581 [1980]). Blanket sealing orders are facially unconstitutional as they would override this requirement, and this Court should hold so explicitly. And the "narrowly tailored" component of the strict scrutiny test must *per se* fail if a court blanket seals, "conveniently" not having to **\*30** redact and decide. This petition should therefore be granted, so this issue may be resolved.

E. This Court should clarify the requirements of the "strict scrutiny" closure test.

In practice, strict scrutiny isn't. As Professor Levine

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

notes in *Toward a New Public Access Doctrine,* 27 Cardozo L. Rev. 1739 (2006): Many courts pay lip service to the strict scrutiny test, but seem to stop before giving any real analysis when they find that the pro-closure interests asserted are compelling. **These courts legitimize closures with unsubstantiated speculation about the harms that public access might cause, making general assumptions** about the effects of pre-trial publicity or the willingness of participants to be candid, for example, **without recognizing that what is true as a statistical matter may not be true of a particular case or individual.** They do not sufficiently explore the measures, short of total closure, that could adequately serve the compelling interests at stake. **The courts seem especially willing to bow to proclosure interests when closure proponents claim that national security is at stake, and in highly controversial and contentious criminal proceedings.** The result is that the proceedings in which the public has the most interest are most often the ones that are closed…

**\*31** This is a problem of unparalleled dimension, at least in the Second Circuit. In just one case, little known outside the criminal bar in that Circuit, in 1995 the appellate court held that a district court judge not only need not give any public notice or hold any hearings before sealing an entire criminal trial, he can do so in an organized-crime case solely upon the defendant's uncorroborated claims that he feels at risk, so long as the government does not object. *Astonishingly, the court noted that the district court was free to consider the absence of any evidence of a threat as proof that the secrecy was working. United States v. Doe,* 63 F.2d 84, 87 (1995). One can only imagine how many closures have been justified in the last twenty years by the Second Circuit's invitation to defendants and the government to collude in such an arrangement. As the *New York Times* articles show, this has been the custom and practice in the Second Circuit for at least thirty years.

**\*32** II. Federal courts may not exempt themselves from the First Amendment on some claim of "judicial privilege." When a stranger to a case lawfully receives copies of sealed documents, whether labeled "PSR" or "XYZ," full prior restraint due process must be provided before he may be enjoined from disseminating them; *New York Times v. United States* applies equally to the dissemination of documents sourced to the judiciary as to the executive or legislative branch.

A. If Ellsberg had clerked for a judge…

*Hypothetical*: A clerk to a federal judge opposes the war in Iraq. Working on a sealed criminal case involving a contractor, he has access to a sentencing memorandum and grand jury minutes. Each reveals the government had early knowledge the war would lead to many times more casualties than admitted.

With the help of a Senator's staff, he makes copies and leaks them to *The New York Times, The Washington Post*, and other newspapers, and mails a copy to an activist attorney. None had any idea until receipt what was coming, though he made clear in each case by cover letter what he had done.

*Question*: Is there some "judicial privilege" found in, or in "penumbras" formed by "emanations" from, the Article III power of a court that it may claim an inherent authority to protect its function and enjoin those recipients from disseminating it absent the *recipients'* proving a compelling need, or must traditional prior restraint due process be followed?

**\*33** Consider first the copies sent to the newspapers. While the individual opinions in *New York Times v. United States,* 403 U.S. 713 (1971), varied, the papers were allowed to publish, immediately. Several comparisons must be made.

First, whatever side of the case, not one Justice cared that they had been stolen:

In resolving that conflict, the attention of every Member of this Court was focused on the character of the stolen document's contents and the consequences of public disclosure. *Although the undisputed fact that the newspaper intended to publish information obtained from stolen documents was noted … **neither the majority nor the dissenters placed any weight on that fact.*** [Emphasis added][FN18].

> FN18. *Bartnicki v. Vopper,* 532 U.S. 514, 528 (2001)

Second, quoting Justice Brennan:
*The entire thrust of the Government's claim … has been that publication of the material sought to be enjoined "could," or "might," or "may" prejudice*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

*the national interest in various ways. But the First Amendment tolerates absolutely no prior judicial restraints of the press predicated upon surmise or conjecture that untoward consequences **may** result … there is a single, extremely narrow class of cases in which the First Amendment's ban on prior judicial restraint may be overridden … such cases may arise only when the Nation "is at* **\*34** *war" … during which times "[n]o one would question but that a government might prevent **actual** obstruction to its recruiting service or the publication of the sailing dates of transports or the number and location of troops." ... in neither of these actions has the Government presented or even alleged that publication of items from or based upon the material at issue **would** cause the happening of an event of that nature ... only governmental allegation and proof that publication **must inevitably, directly, and immediately cause the occurrence of an event kindred to imperiling the safety of a transport already at sea can support even the issuance of an interim restraining order. In no event may mere conclusions be sufficient.*** [Emphasis added]

The Justice states the core tenet of this Court's prior restraint jurisprudence, that at least with core speech, the harm that is said to be threatened must be *imminent* and *catastrophic*, or *clear* and *present*; but whatever words be used to express it, core speech regarding information lawfully obtained may not be enjoined absent some intolerable danger the risk of which is vastly more real than mere conclusion.

This brings the argument full circle. In previous pages, petitioner argued that the misuse of sealing those proceedings and records to which there is a qualified First Amendment right of access can be traced to a "lip service" approach to the "strict scrutiny" component of the *Press-Enterprise II* test.

Concededly, in the jurisprudence of access cases - where a citizen seeks access to governmental **\*35** records - it is not entirely clear that "strict scrutiny" is to be applied with such rigor as in prior restraint cases.

But if nothing else, we see the damage to the country that inevitably results where a cherished value, be it access to courts or freedom of speech, is protected by a standard that can be satisfied by a "hunch" or by "the judge's experience" or, worse, by the uncorroborated expression of a subjective fear of a defendant with Alice in Wonderland logic that the *absence* of any evidence of a threat is itself sufficient.

No Justice of this court would consider the possibility that core speech, truthful speech of public concern revealing, as petitioner would reveal, all that has happened here, and particularly the contents of that PSR[FN19], should be enjoined on Doe's mere assertion that he "feels" at risk, or worse yet, on the District Court's "sense" that there might be such a risk, *a fortiori* in the complete absence of evidence. Yet that's exactly what happened here.

> FN19. No one can doubt the contents of Doe's PSR are core speech. Any discussion of a convicted felon in the context of his crime and sentencing recommendations is core speech, and this PSR (and the other documents) containing evidence of the violation of federal sentencing law is clearly core speech, critical of government misconduct.

An entire criminal case has been hidden for fourteen years. There is no evidence how that came to be, and whatever evidence there is establishes that no test was ever applied.

And what happens? The inevitable in a dual justice system operating in the dark. Illegality. **\*36** Deprivation of victims' rights. Judicial misconduct. Prosecutorial misconduct[FN20].

> FN20. The CFR provisions in the appendix show the prosecutor had an obligation to assure victims' rights were protected, and oppose the secrecy of the proceedings. 28 C.F.R. 45.10 & 28 C.F.R 50.9 App. 22a-28a. The failure of the prosecutor to follow the guidelines makes the information in the documents newsworthy.

Then a whistleblower comes along who gets hold of documents in the files of his employer and releases them. What happens next?

Well, if this is 1982, and it's not the government's own misconduct that's at issue, the whistleblower is called a hero. The Solicitor General files an amicus brief and writes that, while the question whether the whistleblower stole them is irrelevant to petitioner's First

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Amendment rights…

"Evidence of crime is not the private property of anyone. …. Those who discover it and spread the news … are not guilty of … theft. [T]o the contrary, any effort to disseminate such information is encouraged by the law, while efforts to preserve its secrecy are strictly forbidden…. [P]ublic policy favors its unfettered dissemination…."

That's what the Solicitor General wrote in an amicus brief in *Dirks v. SEC,* 463 U.S. 646 (1983), where a former employee of a company running a massive fraud whose officers were involved with organized crime gave documents to a securities analyst to reveal them.

Petitioner expects the same courtesy here.

**\*37** Until then, look at what did happen here. The District Court issued a permanent injunction on anything in the PSR simply because it was a PSR. No application of the compelling interest test[FN21], just a holding that since it's nearly impossible to access a PSR that you don't already have, you can be ordered to keep quiet about it if you already have it.

> FN21. *Carroll v. Princess Anne,* 393 U.S. 175 (1968).

In other words, if you don't have the right to access it, you don't have the right to reveal it, even if it's dropped in your lap and reveals the misconduct of the same court deciding whether to enjoin you.

As to the other documents, yes, the record shows the District Court issued a finding that their dissemination would prove a grave risk to Doe. Based on what? Who knows, because there's no evidence in the record to support that.[FN22] .

> FN22. In fact the government moved to unseal the docket on March 17, 2011 (App. 118a) because [REDACTED IN ACCORDANCE WITH THE JUNE 25, 2012 ORDER OF THE U.S. SUPREME COURT], but it retracted its motion on January 26, 2012. App. 137a. The change of position is newsworthy in itself.

The Second Circuit upheld the permanent injunction on the PSR. On what basis? The court said, not surprisingly, that its precedents hold that there was no *right of access* to a PSR absent a showing of compelling need. So petitioner could be enjoined from disseminating one *he already had* unless he could prove a compelling need?

In the same situation, where both grand jury minutes and a sentencing memorandum had leaked to the public, the Third Circuit pointedly noted that it would not even think to try to enjoin those who **\*38** received it, as the First Amendment protected their right to disseminate it. *U.S. v. Smith,* 123 F.3d (1997). This case at bar presents a split of authority, as well as with the Sixth, see *Procter & Gamble v. Bankers Trust,* 78 F.3d 219 (6th Cir.1996) (where the appellate court recognized a clear distinction between a party's *mis*use of *Rhinehart* material as opposed to a non-party's use).

B. Petitioner has the same rights as media

In *Bartnicki v. Vopper,* 532 U.S. 514 (2001), this Court held that an innocent recipient of an illegally taped cell phone call could not be punished for disseminating its contents, which revealed possible criminal activity in connection with municipal government, *even though the recipient knew the source had made the tape illegally.* As this Court is aware, that statement is true not only of the defendant broadcaster in that case, but also of the defendant "middleman," a citizen who found the tape in his mailbox and then gave it to the broadcaster.

Then how does one explain why the Second Circuit panel seemed so concerned that petitioner is not organized media? One doesn't. This Court has said just recently:
We have consistently rejected the proposition that the institutional press has any constitutional privilege beyond that of other speakers." *Citizens United v. Federal Election Comm'n,* \_\_\_ U.S. \_\_\_, 130 S.Ct. 876, 905-06 (2010).

**\*39** Our hypothetical activist attorney has the same rights as the *New York Times*, with all respect to Judge Pooler, including freedom of the press, as the term refers to freedom of the printing press vs. oral speech, and like any other citizen of this age, petitioner at the press of a button can make his thoughts known to 50,000,000 people within seconds, 10 times the readership of the paper of record. So long as his speech

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

does not interfere with an ongoing criminal jury trial in which he is counsel, whether he expresses it by lawsuit in behalf of his clients victimized personally by the underlying facts, or by speechifying, or by any other way, it is his to express.

CONCLUSION

For all the foregoing reasons, it is most respectfully requested that this petition for a writ of certiorari to the United States Court of Appeals for the Second Circuit be GRANTED.

Roe v. United States of America
2012 WL 3041172 (U.S. ) (Appellate Petition, Motion and Filing )

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.