UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MOTION FOR CIVIL CONTEMPT BY JOHN DOE | Case No. 12 mc 557 (BMC) |

**Order to Show Cause for Finding of Civil Contempt &
Referral for Criminal Investigation**

Richard E. Lerner and Frederick M. Oberlander having moved this Court for the relief set forth below,

NOW, upon the annexed declaration of Richard E. Lerner and Frederick M. Oberlander, dated July 8, 2016, and its attached exhibits, it is hereby:

ORDERED, that Felix Sater, Robert Wolf, Michael Beys, Nader Mobargha, L. Marc Zell,[1] and the law firms Moses & Singer, LLP, Beys, Liston, Mobargha & Berland, LLP, and Zell, Aron & Co. ("contemnors") show cause before the Honorable Brian M. Cogan, United States District Judge, at the United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York 11201, Courtroom 8D, on _____, 2016 at _____, or as soon thereafter as counsel may be heard, why they should not be held in civil contempt pursuant to 18 U.S.C. § 401, for the following misconduct:

---

[1] Mr. L. Marc Zell of Zell, Aron & Co., is Israeli counsel for Felix Sater. and maintains an office at 350 Fifth Avenue, New York, NY. He is admitted to practice before the Second Circuit.

1

On or about May 7, 2015, in knowing and willful violation, or negligent disregard thereof, of the order of the United States Court of Appeals for the Second Circuit, dated February 14, 2011, and one or more sealing orders as set forth more fully in the declaration, the contemnors caused to be publicly docketed in the District Court of Tel Aviv, Israel, a complaint in a matter entitled *Sater v. Tausky*, attaching thereto a document that was theretofore under seal before the Honorable I. Leo Glasser (EDNY), the Second Circuit, and the Honorable Lorna G. Schofield (SDNY) – to wit, the sealed original complaint in the matter of *Kriss v. Bayrock Group et al*, SDNY Docket No. 10-cv-3959 – thereby violating orders that sealed documents not be publicly filed on any public court docket;

On or about May 7, 2015, in knowing and willful violation, or negligent disregard thereof, of the orders of the United States Court of Appeals for the Second Circuit, February 14, 2011, and the Second Circuit's order sealing the transcript of the proceedings of February 14, 2011, and this court's sealing order because that transcript was filed under seal here too, the contemnors caused to be publicly docketed in the District Court of Tel Aviv, Israel, a complaint in a matter entitled *Sater v. Tausky*, which quoted directly from said sealed transcript;

On or about May 7, 2015, in knowing and willful violation, or negligent disregard thereof, of the orders of the United States Court of Appeals for the Second Circuit, dated February 14, 2011, and the Honorable Brian M. Cogan's own order sealing the transcript of the proceedings on April 1, 2011, the contemnors caused to be publicly docketed in the District Court of Tel Aviv, Israel, a complaint in a matter entitled *Sater v. Tausky*, which quoted directly from said sealed transcript.

Sometime prior to August 4, 2015, the date of publication of an article entitled, "Will Donald Trump's Ties to a Criminal Hurt His Campaign?," *Washington Examiner*, Lovelace, August 4, 2015, in knowing and willful violation, or negligent disregard thereof, of the orders of the United States Court of Appeals for the Second Circuit, dated February 14, 2011, contemnor Felix Sater revealed details of his cooperation with the federal government, notwithstanding orders that information regarding his cooperation remain sealed, as reported by Washington Examiner:

> Sater pointed to his work to purchase missiles on the black market, as evidence that he sought to protect the U.S., not harm its citizens. In The Scorpion and the Frog: High Times and High Crimes, Salvatore Lauria, an associate of Sater, wrote that Sater attempted to purchase the weapons from Osama bin Laden, as the New York Times has noted. Sater and Lauria were friends, and worked as partners at White Rock Partners, a brokerage firm.
>
> "I'm not an arms dealer," Sater said. "I wasn't buying missiles for myself. We were trying to get missiles off the black market so they wouldn't be used against U.S. airliners. Buying missiles, in the things that I've done … it's one one-hundredth of the things that I've done, one one-hundredth of one percent."

Prior thereto – on March 20, 2015 – Mr. Sater, through counsel Robert Wolf, moved by order to show cause for contempt against Oberlander and Lerner, maintaining that revealing that Mr. Sater was a cooperator itself constitutes contempt. See e.g., 12-mc-557, ECF 97-1, [¶] 8. Oberlander's plan … has been to systematically and publicly disclose Sater's history and cooperation, which multiple courts have ordered should remain sealed." …. [¶] 28. "The *Newsweek* article mentions Sater by name, [and] refers to him as a cooperator…."

Notwithstanding Sater's position that the fact of his cooperation could not be disseminated whether or not already public per orders, on February 17, 2015, Sater issued a press release on PRNewswire identifying himself as a cooperator.

Sometime prior to May 17, 2016, the date of publication of an article entitled, "Former Mafia-linked Figure Describes Association With Trump," *Washington Post*, Rosalind S. Helderman and Tom Hamburger, in knowing and willful violation, or negligent disregard thereof, of the orders of the United States Court of Appeals for the Second Circuit, dated February 14, 2011, contemnor Robert Wolf revealed details of Felix Sater's cooperation with the federal government, notwithstanding orders that information regarding his cooperation remain sealed, as reported by the Washington Post:

> The lawyer, Robert S. Wolf, did not address Sater's relationship with Trump but stressed Sater's work for the government, saying he saved lives, including by providing "significant intelligence with respect to nuclear weapons in a major country openly hostile to the United States.

On or about March 16, 2014, contemnors Nader Mobargha and Michael Beys electronically filed on the public docket of the New York State Supreme Court, County of New York, the matter of *Salvatore Lauria v. Jody Kriss*, Index No. 152324/14, directly quoting and paraphrasing therein from the sealed complaint in the matter of Kriss v. Bayrock Group referred to above, in knowing and willful violation, or negligent disregard thereof, of the orders of the United States Court of Appeals for the Second Circuit, dated February 10, 2011 and February 14, 2011,

AND IT IS FURTHER:

ORDERED, that personal service of a copy of this order and the annexed declaration with exhibits upon the contemnors on or before _____, 2015, shall be deemed good and sufficient service thereof; and it is

ORDERED, that opposition papers, if any, shall be served by hand or by Federal Express overnight service to Richard E. Lerner, at 122 West 27th Street, 10th Floor, New York, New York 10001, and to Frederick M. Oberlander, in care of Mr.Lerner in such manner as to be received on or before _____, 2016; and it is

ORDERED, that reply papers, if any, shall be served on the contemnors by hand or by Federal Express overnight service, so as to be received on or before _____, 2016.

Dated:      New York, New York
            July ___, 2016

                                        _____
                                        Hon. Brian M. Cogan, U.S.D.J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN RE MOTION FOR CIVIL CONTEMPT
BY JOHN DOE

Case No. 12 mc 557 (BMC)

Declaration in Support of OTSC

Richard E. Lerner and Frederick M. Oberlander[1] declare under penalty of perjury, pursuant to 28 USC 1746, as follows:

1. This declaration is submitted in support of the request for relief which is set forth in the accompanying order to show cause, and is predicated upon personal knowledge, and – it is respectfully submitted – reasonable deductions and inferences that may be drawn from certain documents that have personally been reviewed by the undersigned.

2. Movants assert that that contemnors Felix Sater, Robert Wolf, Michael Beys, Nader Mobargha, L. Marc Zell,[2] and the law firms Moses & Singer, LLP, Beys, Liston, Mobargha & Berland, LLP, and Zell, Aron & Co. have violated the orders referred to herein. The law firms Moses & Singer, LLP, Beys, Liston, Mobargha & Berland, LLP, and Zell, Aron & Co. are each vicariously liable insofar as the persons acting contumaciously above were each of them partners or the equivalent persons in sufficient agency or privity thereto and were committing those contumacious acts in such capacity in furtherance thereof.

---

[1] This motion is not within the scope of Blank Rome's retainer agreement with Mr. Oberlander; therefore, Mr. Oberlander signs this in his pro se capacity.

[2] Mr. L. Marc Zell of Zell, Aron & Co., is Israeli counsel for Felix Sater. and maintains an office at 350 Fifth Avenue, New York, NY. He is admitted to practice before the Second Circuit.

1

3.     Attached hereto as exhibit "1" is the order of the Second Circuit dated February 14, 2011, respectively.

4.     Although we have taken the position that the Second Circuit's order lapsed with the issuance of its final mandate in December 2011, Mr. Sater has taken the opposite position, and this court appears either (1) by its comments that charges of contempt by Mr. Sater for violations of that order for acts after 2011 give cause to believe we have committed criminal contempt, has impliedly concurred; or (2) by its refusal to address the matter specifically, though we have raised it in our own defending papers, has left the matter open.

5.     Therefore, either the circuit court's "temporary" "pendente lite" sealing and gag order(s) remain alive and that is law of the case, though we disagree and have preserved our right to appeal, or the question remains open.

6.     Accordingly, we may appropriately request the court take such action as we herein ask on the assumption that the court shall rule that the orders remain alive, without prejudicing in any way our continued insistence that they are not, but that, inasmuch as the Second Circuit's order(s) were "temporary" and "pendente lite," they obviously expired with the court's issuance of its mandate in December 2011, and its closing of the case.

7.     In any event, in his public order of March 12, 2013, Judge Glasser confirmed that he has been (and from his docket still is) maintaining a copy of *Kriss v. Bayrock Group* complaint, discussed infra, under seal since 2010, since Mr. Sater submitted it to him.

8.     Moreover, Judge Buchwald sealed the *Kriss v. Bayrock Group* complaint on her docket in the Southern District of New York on May 14, 2010, and it remained under seal until formally unsealed by Judge Schofield on May 31, 2016.

9. And, Judge Buchwald issued an order on May 13, 2010 enjoining all who had notice of it from disseminating the complaint. Mr. Sater was served with that order the same day; indeed it was he who had requested it.

10. Finally, the Second Circuit is maintaining under seal a copy of the *Kriss v. Bayrock Group* complaint because it was included in the Joint Appendix prepared for use in the appeal there.

11. Mr. Sater has maintained in his own papers that the dissemination of anything under seal in any of those courts is an act of contempt.

12. Again, whether or not we agree, we are entitled to seek the same relief he has sought, without prejudice or estoppel to us, notwithstanding we disagree with the legal premise on which he has based it, until and unless the court rules that we may not because our initial position was right all along, and that no one may be held in contempt thereof.

\*\*\*

13. On or about March 16, 2014, accused contemnors Nader Mobargha and Michael Beys electronically filed on the public docket of the New York State Supreme Court, County of New York, the matter of *Salvatore Lauria v. Jody Kriss*, Index No. 152324/14, exhibit "2," directly quoting therein, and paraphrasing, from the sealed complaint referred to above, in knowing and willful violation, or negligent disregard thereof, of the orders of the United States Court of Appeals for the Second Circuit, dated February 14, 2011 and the sealing orders referenced above. The quotes and paraphrased information from the then-sealed complaint are highlighted.

\*\*\*

14. Attached hereto as Exhibit "3" is an April 28, 2015 letter (with certified translation), signed by attorney L. Marc Zell, served in behalf of Felix Sater, and warning our client,

3

Rabbi Ervin Tausky, a resident and citizen of Tel Aviv, that if he did not drop his United States lawsuits against Felix Sater that Mr. Sater would sue Mr. Tausky in Israel.

15. Attached as Exhibit "4" is a printout of the Second Circuit's website information regarding Mr. Zell, showing that he is admitted to practice before it. Additionally, the website for Mr. Zell's law firm – Zell, Aron & Co. – shows that it maintains an office in the Empire State Building, 350 Fifth Avenue. See exhibit "5." [3]

16. As Mr. Tausky did not accede to the threats made by Mr. Sater through his counsel Mr. Zell, on May 7, 2015, Mr. Zell filed publicly filed in the District Court of Tel Aviv, Israel, a complaint, with exhibits, a complete set of which is attached as exhibit "6."

17. Attached hereto as exhibit "7" is a certified translation of paragraph 98 thereof, showing that the sealed complaint was, and was intended to be, attached as "exhibit 17."

18. Attached hereto as exhibit "8" is a copy of said "exhibit 17" as filed in Tel Aviv.

19. Attached hereto as exhibit "9" is a copy of the then-sealed complaint as is now unsealed on the docket of Judge Schofield.

20. They are the same, save for certain redactions made by Mr. Sater himself.

---

[3] Even if Mr. Zell were not present in New York at the time of contempts, his minimum contacts are sufficient for jurisdiction over him to be proper due to his violation of the court's orders, aiding and abetting such violations. See *In re Zyprexa Injunction*, 474 F. Supp.2d 385, 418 (EDNY 2007) ("The jurisdiction of a court to enforce its orders extends nationwide. 'Nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order.' *Waffenschmidt v. MacKay*, 763 F.2d 711, 714 (5th Cir.1985); see also *Stiller v. Hardman*, 324 F.2d 626, 628 (2d Cir.1963) ('Violation of an injunctive order is cognizable in the court which issued the injunction, regardless of where the violation occurred.')", *aff'd sub nom Eli Lilly & Co. v. Gottstein*, 617 F. 3d 186 (2d Cir. 2010). While this by itself does not hold true in extra-territoriality that is international, we submit that where an attorney in Israel who may well be a dual citizen with substantial minimum contacts to New York in the practice of law aids and abets the violation of a New York federal district court's order contempt jurisdiction is proper even if he happens to be in Israel at the time.

21. The fact that it was redacted shows that Mr. Sater and Mr. Zell knew – at least such is a fair inference, see next – that it was a sealed document and that they knew and intended that the unredacted portion of the document would become public.

22. Indeed, in the case of *In re Kline*, 298 Kan. 96 (2013), a sitting District Attorney and former Attorney General was disbarred in large part for disseminating sealed information. He claimed that the dissemination had been inadvertent, but the Kansas Supreme Court affirmed, finding the evidence of the redactions themselves sufficient to establish willfulness.

23. Here, by virtue of Sater's and Mr. Zell's redactions, it is a fair inference that they knew that thecomplaint was sealed, and that it would go public in redacted form.

24. Moreover, that the complaint, which had prior thereto been under seal, was specifically identified as exhibit 17 in paragraph 98 of the *Sater v. Tausky* complaint, lends further support to the conclusion that the filing of the complaint there publicly was knowing and willful.

25. Finally, the pattern of filing excerpts from the complaint publicly in New York, supra, followed by filing most of the whole thing publicly in Tel Aviv, should leave no question in the mind of the court that all those disclosures were intentional.

26. Thus, the public filing of that hitherto sealed complaint was done in knowing and willful violation, or negligent disregard thereof, of the orders of the United States Court of Appeals for the Second Circuit, dated February 14, 2011 and the sealing orders referenced

27. Additionally, in the *Sater v. Tausky* complaint, Sater and Zell directly quoted (see exhibit "6," at PDF p.6) from the February 14, 2011 oral argument before the Second Circuit, though the transcript of that argument expressly states it is under seal. The transcript is annexed hereto as exhibit "10." The court will note that the top of every page states "Sealed."

28. Additionally, that same transcript has been filed on this docket under seal.

29. Additionally, Sater and Zell directly quoted (see exhibit 6, at PDF p.13) from the April 1, 2011 transcript of the oral argument of the proceedings before your honor, notwithstanding that this court ordered the transcript sealed. See exhibit "11."

30. Sometime prior to August 4, 2015, the publication date of an article "Will Donald Trump's Ties to a Criminal Hurt His Campaign?," *Washington Examiner*, Lovelace, August 4, 2015, see exhibit "12," in knowing and willful violation, or negligent disregard thereof, of the orders of the United States Court of Appeals for the Second Circuit, dated February 14, 2011, contemnor Felix Sater revealed details of his cooperation with the federal government, notwithstanding his own position that the "multiple courts" have enjoined revealing information regarding his cooperation. As reported by the Washington Examiner:

> Sater pointed to his work to purchase missiles on the black market, as evidence that he sought to protect the U.S., not harm its citizens. In The Scorpion and the Frog: High Times and High Crimes, Salvatore Lauria, an associate of Sater, wrote that Sater attempted to purchase the weapons from Osama bin Laden, as the New York Times has noted. Sater and Lauria were friends, and worked as partners at White Rock Partners, a brokerage firm.
>
> "I'm not an arms dealer," Sater said. "I wasn't buying missiles for myself. We were trying to get missiles off the black market so they wouldn't be used against U.S. airliners. Buying missiles, in the things that I've done … it's one one-hundredth of the things that I've done, one one-hundredth of one percent."

31. Prior thereto – specifically, on March 20, 2015 – Mr. Sater, through counsel Robert Wolf, moved by order to show cause for contempt against Oberlander and Lerner, maintaining that disseminating that Mr. Sater was a cooperator itself constitutes contempt, regardless whether the information is already public. See, *e.g.*, 12-mc-557, ECF 97-1, [¶] 8. Oberlander's plan … has been to systematically and publicly disclose Sater's history and cooperation, which

multiple courts have ordered should remain sealed." …. [¶] 28. "The Newsweek article mentions Sater by name, [and] refers to him as a cooperator…."

32. Notwithstanding the position taken by Mr. Sater that the fact of his cooperation could not be made public due to court orders, on February 17, 2015, Mr. Sater issued a press release on PRNewswire, exhibit "13," in which he identified himself as a cooperator, in knowing and willful violation, or negligent disregard thereof, of the orders of the United States Court of Appeals for the Second Circuit, dated February 14, 2011.

33. Sometime prior to May 17, 2016, the date of publication of an article "Former Mafia-Linked Figure Describes Association With Trump," *Washington Post*, Rosalind S. Helderman and Tom Hamburger, see exhibit "14," in knowing and willful violation, or negligent disregard thereof, of the orders of the United States Court of Appeals for the Second Circuit, February 14, 2011, alleged contemnor Robert Wolf revealed details of Felix Sater's cooperation with the federal government, notwithstanding orders that information regarding his cooperation remain sealed, as reported by the Washington Post:

> The lawyer, Robert S. Wolf, did not address Sater's relationship with Trump but stressed Sater's work for the government, saying he saved lives, including by providing "significant intelligence with respect to nuclear weapons in a major country openly hostile to the United States."

34. On May 31, 2016, in a hearing before Judge Schofield, See Exhibit "15," as highlighted for the court's convenience, Mr. Wolf admitted his involvement in the publication of the complaint in Israel, in active concert with Sater and Zell, having acknowleged that there were back-and-forth communications about the documents to be filed, and depending on the meaning of the word "we" there also implicated Mobargha and Beys.

**Conclusion**

35. The various sealing orders referenced are not addressed to any person. The February 14, 2011 order of the Second Circuit was addressed to all parties and privies, which included Sater and Mobargha and Beys and, though we do not know, Wolf if he was representing Sater in this or a related matter at the time. The order of Judge Buchwald was directly served on Sater and directed to him.

36. We again for the avoidance of ambiguity expect symmetrical treatment. This court has not ruled, certainly not overtly, whether the February 14, 2011 order still exists in force and until and unless it rules that it does not (which is our position) we are entitled to make an alternate pleading for relief that "works" only if it does remain in force, notwithstanding our position that the Second Circuit's "temporary" "pendente lite" order(s) lapsed upon its issuance of its mandate and closing of the appellate case, and we do so without waiver or estoppel.

37. Similarly, the court has not ruled whether that order, or the various sealing orders referred to, prohibit dissemination of documents even when available from public sources, or extra-judicial private sources, so long as they are under seal. Until the court rules, and further says that the orders do not so prohibit, a position with which we agree, we are entitled to argue that, though we believe the orders do not so prohibit dissemination, so long as this court is entertaining Sater's motions for contempt predicated on the theory that they do prohibit dissemination, we may seek the same relief without prejudice to our right to maintain our position as to those orders.

WHEREFORE, it is respectfully requested that the relief set forth in the accompanying order to show cause be granted, and contemnors Felix Sater, Robert Wolf, Nader Mobargha, Michael Beys, and L. Marc Zell, and the law firms Moses & Singer, LLP, Beys, Liston, Mobargha & Berland, LLP, and Zell, Aron & Co. show cause why they should not be held in civil contempt for intentional and/or negligent violations of the aforementioned court orders.

Dated: New York, New York
      July 8, 2016

/s/ Richard E. Lerner

Dated: Montauk, New York
      July 8, 2016

/s/ Frederick M. Oberlander